UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EVOLUTIONARY INTELLIGENCE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SPRINT NEXTEL CORPORATION, SPRINT COMMUNICATIONS COMPANY L.P., SPRINT SPECTRUM L.P., SPRINT SOLUTIONS INC.,<br><br>Defendants. | Case No. C-13-4513-RMW<br><br>**ORDER CONDITIONALLY GRANTING MOTION TO STAY PENDING *INTER PARTES* REVIEW**<br><br>**[Re: Docket No. 89]** |

Defendants Sprint Nextel Corp., Sprint Communications Co. L.P., Sprint Spectrum L.P., and Sprint Solutions Inc. (collectively, "Sprint") move to stay the case pending *inter partes* review ("IPR") of U.S. Patent No. 7,010,536 (the "'536 Patent") and U.S. Patent No. 7,702,682 (the "'682 Patent"). Dkt. No. 89. For the following reasons, the court conditionally GRANTS the motion.

## I.  BACKGROUND

In October 2012, Evolutionary Intelligence, LLC ("Evolutionary Intelligence") filed complaints alleging infringement of the '536 Patent and '682 Patent in the Eastern District of Texas against nine groups of defendants, including Sprint.[1] Evolutionary asserts that Sprint infringes

---

[1] The nine cases are *Evolutionary Intelligence LLC v. Apple, Inc.*, C-12-00783 (E.D. Tex. Oct. 17, 2012); *Evolutionary Intelligence LLC v. Facebook, Inc.*, C-12-00784 (E.D. Tex. Oct. 17, 2012); *Evolutionary Intelligence LLC v. Foursquare Labs, Inc.*, C-12-00785 (E.D. Tex. Oct. 17, 2012); *Evolutionary Intelligence LLC v. Groupon, Inc.*, C-12-00787 (E.D. Tex. Oct. 17, 2012);

1  claims 1-12 and 14-16 of the '536 patent and claims 1-11 and 14-23 of the '682 patent. Dkt. No. 89
2  ("Motion to Stay") at 2. From July to September 2013, the nine actions were transferred to this
3  district. This action was transferred in September, and an October 8 order denied relating the nine
4  actions. *Evolutionary Intelligence, LLC v. Yelp, Inc.,* No. 4:13-cv-03587-DMR, Dkt. No. 82 (N.D.
5  Cal. Oct. 8, 2013).

6  On October 22 and 23, 2013, several companies filed eight petitions for *inter partes* review
7  with the U.S. Patent and Trademark Office ("PTO"), combining to seek review of all the claims in
8  the patents-in-suit. Dkt. No. 90, Declaration of Beth Larigan, Exhs. 3-10. Any decision to institute
9  proceedings on the petitions or deny review will likely issue by April 2014. 35 U.S.C. 314(b). A
10 final determination will likely issue by April 2015, or at least by October 2015. 35 U.S.C.
11 316(a)(11). The following chart summarizes the petitions.

| Case Number | Patent and Claims | Entity |
|---|---|---|
| IPR2014-00082 | '536 patent claims 1, 3-15 | Apple |
| IPR2014-00083 | '536 patent claims 1, 3-15 | Apple |
| IPR2014-00085 | '536 patent claims 2-14 and 16 | Apple |
| IPR2014-00086 | '536 patent claims 2-14 and 16 | Apple |
| IPR2014-00092 | '536 patent claims 1-16 (all claims) | Yelp and Twitter |
| IPR2014-00093 | '536 patent claims 15 and 16 | Facebook |
| IPR2014-00079 | '682 patent claims 1-23 (all claims) | Apple |
| IPR2014-00080 | '682 patent claims 1-23 (all claims) | Apple |

Pursuant to the Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, § 6(a), 125 Stat. 284, 299-304 (2011), codified at 35 U.S.C. §§ 311-319 (2013), the IPR proceeding replaces the old *inter partes* reexamination ("reexamination") proceeding. "The purpose of this reform was to

---

*Evolutionary Intelligence LLC v. LivingSocial, Inc.*, C-12-00789 (E.D. Tex. Oct. 17, 2012);
*Evolutionary Intelligence LLC v. Millenial Media, Inc.*, C-6:12-00790 (E.D. Tex. Oct. 17, 2012);
*Evolutionary Intelligence LLC v. Sprint Nextel Corp.*, C-12-00791 (E.D. Tex. Oct. 17, 2012);
*Evolutionary Intelligence LLC v. Twitter, Inc.*, C-12-00792 (E.D. Tex. Oct. 17, 2012); *Evolutionary Intelligence LLC v. Yelp, Inc.*, C-12-00794 (E.D. Tex. Oct. 17, 2012).

ORDER GRANTING MOTION TO STAY
Case No. C-13-4513-RMW                                      - 2 -
RDS

1  'convert [ ] inter partes reexamination from an examinational to an adjudicative proceeding.'"
2  *Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318, 1326 (Fed. Cir. 2013 (quoting H.R. Rep. No. 112-98,
3  pt. 1, at 46-47 (2011)). An IPR petitioner may challenge patent validity under 35 U.S.C. §§ 102 or
4  103 "only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b).
5  To initiate an IPR, the petitioner must show "that the information presented in the petition filed . . .
6  and any response . . . shows that there is a reasonable likelihood that the petitioner would prevail
7  with respect to at least 1 of the claims challenged in the petition." *Id.* § 314(a) (by contrast, the old
8  reexamination proceeding required a showing of a "substantial new question of patentability.").
9  Following a petition, the PTO has three months from the date the patent holder files a response, or
10 the date that the response was due if no response is filed, to decide whether to institute the IPR. 35
11 U.S.C. § 314(b).

12      The AIA requires a final determination by the PTO in an IPR proceeding within one year,
13 which may be extended up to six months based upon a showing of good cause. *Id.* § 316(a)(11).
14 "For comparison, the old reexamination proceeding averaged over thirty-seven months in the
15 second quarter of fiscal year 2013." *Pi-Net Int'l, Inc. v. Focus Business Bank*, C-12-4958 PSG, 2013
16 WL 4475940, at *2 (N.D. Cal. Aug. 16, 2013). In the *Pi-Net* case, the court noted that such a
17 "promise" of shorter proceedings may convince even "skeptical" judges to exercise their inherent
18 discretion to stay cases pending IPR proceedings at the PTO. *Id.* at *1.

19      In the instant case, Sprint brings the present motion to stay the case pending *inter partes*
20 review.[2] *See* Dkt. No. 89. Evolutionary Intelligence opposes the motion, *see* Dkt. No. 106, and

---

[2] All eight other defendants in the Evolutionary Intelligence cases have filed motions to stay pending *inter partes* review. Courts in this district have already granted seven of the eight motions, with one of the motions to stay still outstanding. *See Evolutionary Intelligence LLC v. Twitter, Inc.*, C-13-04207 JSW (N.D. Cal. Feb. 25, 2014), Dkt. No. 111 (stayed until conclusion of IPR proceedings); *Evolutionary Intelligence LLC v. Facebook, Inc.*, C-13-04202 SI (Jan. 23, 2014), Dkt. No. 148 (stayed until conclusion of IPR proceedings); *Evolutionary Intelligence LLC v. Groupon, Inc.*, C-13-04204 SI (N.D. Cal. Jan. 23, 2014), Dkt. No. 104 (stayed until conclusion of IPR proceedings); *Evolutionary Intelligence LLC v. LivingSocial, Inc.*, C-13-04205 WHO (N.D. Cal. Jan. 17, 2014), Dkt. No. 96 (stayed until conclusion of IPR proceedings); *Evolutionary Intelligence LLC v. Foursquare Labs, Inc.*, C-13-04203 MMC (N.D. Cal. Jan. 10, 2014), Dkt. No. 99 (stayed until conclusion of IPR proceedings); *Evolutionary Intelligence LLC v. Apple, Inc.*, C-13-04201 WHA (N.D. Cal. Jan. 9, 2014), Dkt. No. 123 (case partially stayed pending PTAB's decision on whether to institute proceedings on Apple's petitions); *Evolutionary Intelligence LLC v. Yelp, Inc.*, C-13-cv-03587 DMR (N.D. Cal. Dec. 18, 2013), Dkt. No. 108 (motion to stay granted); *Evolutionary Intelligence, LLC vs. Millennial Media, Inc.*, C-13-04206 EJD (N.D. Cal. Jan. 31,

Sprint filed a reply, *see* Dkt. No. 108. The court held oral argument on the motion on February 28, 2014.

## II.  ANALYSIS

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citation omitted). This inherent power to stay a case pending the PTO's review of a patent "*resides with the Court* to prevent costly pretrial maneuvering which attempts to *circumvent* the reexamination procedure." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) (quoting H.R. Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4 (1980)) (emphasis in original). A stay may be "particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were cancelled in the reexamination, would eliminate the need to try the infringement issue." *In re Cygnus Telecomms. Tech., LLC Patent Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005). The burden is on the party seeking the stay to persuade the court that a stay is appropriate. *Nken v. Holder*, 556 U.S. 418, 433-34 (2009).

In determining whether to grant a stay pending reexamination, courts consider: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006); *accord Pi-Net*, 2013 WL 4475940, at *3.

### A.  Stage of the Litigation

The first issue to be considered in determining whether to grant a stay pending *inter partes* review is whether discovery is complete and whether a trial date has been set. As mentioned above, this case was recently transferred to this district from the Eastern District of Texas. Before the transfer, Evolutionary Intelligence identified its asserted claims and served preliminary infringement contentions. Dkt. No. 50. Sprint served its invalidity contentions, and the parties exchanged initial disclosures. Dkt. Nos. 65, 66, 73. The parties dispute whether Sprint has sufficiently responded to

---

2014), Dkt. No. 113 (motion to stay filed on Jan. 31, 2014, with hearing scheduled for Mar. 7, 2014).

ORDER GRANTING MOTION TO STAY
Case No. C-13-4513-RMW
RDS
- 4 -

Evolutionary Intelligence's initial interrogatories, but this dispute only highlights the fact that the case is still in its infancy. Little discovery has actually taken place, no trial date has been set, and no deadlines other than initial disclosures and infringement and invalidity contentions have passed under the Texas court's scheduling order before the case was transferred. Dkt. No. 57. Besides its argument that Sprint has attempted to delay discovery by failing to properly respond to Evolutionary Intelligence's interrogatories, Evolutionary Intelligence does not appear to seriously dispute that the stage of the case factor weighs in favor of a stay. This court has previously found in another case that the stage of the case factor was neutral when the parties had "spent significant time and resources on discovery," including taking a deposition. *Software Rights Archive, LLC v. Facebook, Inc.*, ("*SRA*") C-12-3970 RMW, 2013 WL 5225522, at *3 (N.D. Cal. Sept. 17, 2013). Clearly, this case is not nearly so advanced. "When, as here, there has been no material progress in the litigation, courts in this district strongly favor granting stays pending *inter partes* [review]." *Pragmatus AV, LLC v. Facebook, Inc.*, C-11-02168 EJD, 2011 WL 4802958, at *3 (N.D. Cal. Oct. 11, 2011) (granting stay where plaintiff had served infringement contentions and written discovery); *see also Ho Keung Tse v. Apple Inc.*, C-06-06573 SBA, 2007 WL 2904279, at *2 (N.D. Cal. Oct. 4, 2007) ("A stay is particularly appropriate for cases in the initial stages of litigation or in which there has been little discovery."). Accordingly, this factor weighs in favor of a stay.

**B. Simplification of the Case**

Defendants argue that a stay would simplify the issues before the court because the entire infringement dispute will become moot if the PTO invalidates the claims in the IPR proceeding. The parties cite statistics showing that: (1) the PTO has granted 81% of IPR petitions (and another 10% settled before the PTO decided on the petition), *A Look at 1st Year Stats on* Inter Partes *Review*, LAW360 (Oct. 15, 2013), *available at* http://www.law360.com/articles/475994/a-look-at-1st-year-stats-on-inter-partes-review; and (2) in the context of the old *inter partes* reexamination proceeding, 42% of *inter partes* reexaminations (from 1999 through September 13, 2013) resulted in all claims being cancelled or disclaimed, Dkt. No. 106-10, McCrary Decl. Exh. G. These figures indicate that there is a high likelihood that at least one of the eight IPR petitions will simplify the issues for trial.

Moreover, statutory estoppel simplifies the issues by preventing parties from relitigating the same validity issues before the PTO and the court. *See* 35 U.S.C. § 315(e)(2). Although Sprint would not be subject to statutory estoppel because it is not one of the IPR petitioners, as explained the below, the court will condition the stay upon Sprint's agreement to be bound by estoppel.

Evolutionary Intelligence argues that it is unlikely that the IPR will eliminate the need for litigation entirely. Evolutionary Intelligence is correct that IPR proceedings are limited to just patents or printed publications under 35 U.S.C. §§ 102 and 103, but these are often major issues in patent litigation. Further, this limitation of IPR proceedings has not stopped this court from granting a motion to stay in the past. *SRA*, C-12-3970 RMW, 2013 WL 5225522, at *5 (N.D. Cal. Sept. 17, 2013). Sprint need not show that the IPR will likely eliminate the need for litigation entirely—here it is likely that the IPR will simplify the case, which has long been the standard for weighing this factor in favor of a stay.

In sum, while there is no guarantee that an IPR will eliminate all the claims at issue, the higher standard to initiate an IPR ("reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition" as opposed to "substantial new question of patentability") raises at least some likelihood that certain challenged claims will be struck down or amended if the PTO grants the petitions. In addition, the limited statistics available to the court indicate that the PTO will probably grant one of the IPR petitions, at least with respect to some of the asserted claims. The IPR proceedings will likely simplify the issues for trial, and thus this factor also favors granting a stay.

**C.  Undue Prejudice**

Evolutionary Intelligence argues that a stay would unduly prejudice it because the IPR petitioners delayed until the very last day. However, the IPR petitioners filed the petitions properly within the statutory time frame. Under these facts, this delay was not unreasonable, and Evolutionary Intelligence does not point to any tangible undue prejudice resulting from the IPR petitioners exercising their statutory rights. This argument thus does not support a finding of undue prejudice. *See SRA*, 2013 WL 5225522, at *6 ("Although defendants did wait nearly a year to file

the IPR petitions, they properly filed the petitions within the statutory time frame, and the delay was not unreasonable under the facts here.").

Evolutionary Intelligence also asserts that a stay would cause the spoliation of critical evidence regarding Sprint's software. In particular, Evolutionary Intelligence argues that a stay risks losing evidence in the form of Sprint's source code, corresponding databases, and the testimony of Sprint's software developers. But Evolutionary Intelligence's claims amount to nothing more than speculation, which is insufficient to find undue prejudice. *See SRA*, 2013 WL 5225522, at *5. Moreover, Evolutionary Intelligence has made this spoliation argument before, and it has been rejected. *See, e.g.*, *Evolutionary Intelligence LLC v. Apple, Inc.*, C-13-04201 WHA (N.D. Cal. Jan. 9, 2014), Dkt. No. 123, at 5. The court assumes that Sprint will act ethically. Sprint assures that its source code and database schemas have been preserved and will be available for Evolutionary Intelligence's inspection at the appropriate time and pending the entry of a suitable protective order. The court has no reason to disbelieve Sprint's representations, and refuses to find undue prejudice to Evolutionary Intelligence based on a speculative fear of spoliation.

More importantly, because Evolutionary Intelligence and Sprint are not competitors (Evolutionary Intelligence does not market any products or services practicing the patents-in-suit), Evolutionary Intelligence does not risk irreparable harm by defendants' continued use of the accused technology and can be fully restored to the *status quo ante* with monetary relief. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1339-41 (Fed. Cir. 2012). This factor strongly favors granting the stay. *See, e.g.*, *Convergence Techs. (USA), LLC v. Microloops Corp.*, C-10-02051 EJD, 2012 WL 1232187, at *2-3 (N.D. Cal. Apr. 12, 2012) (granting stay, in part, because plaintiff did not practice the asserted patent and was not in direct competition with defendant); *Agavo Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc*, C-10-2863, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011) ("Unlike patent infringement actions involving non-practicing entities, infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages.").

**D. Summary**

As all three factors support a stay, the court concludes that a stay is appropriate in this case. A stay effectuates the intent of the AIA by allowing the agency with expertise to have the first crack at cancelling any claims that should not have issued in the patents-in suit before costly litigation continues. *See* H.R. Rep. 112-98 (part I), at 39-40 (2011) (The AIA is aimed at "providing a more efficient system for challenging patents that should not have issued; and *reducing unwarranted litigation costs* and inconsistent damage awards.") (emphasis added).

### E. Statutory Estoppel

One of the reasons IPR proceedings typically simplify the case is that IPR petitioners are subject to statutory estoppel provisions preventing them from relitigating invalidity arguments that were raised or could have been raised in the IPR. 35 U.S.C. § 315(e)(2). Here, because Sprint is not one of the IPR petitioners, Sprint would not be precluded under 35 U.S.C. § 315(e)(2) from reasserting invalidity contentions rejected by the PTO. To prevent Sprint and the IPR petitioners from "tak[ing] multiple bites at the invalidity apple," *Pi-Net*, C-12-4958 PSG, 2013 WL 4475940, at *5 (N.D. Cal. Aug. 16, 2013), the court must condition its stay of this case on Sprint's agreement to be bound by some estoppel. *See PersonalWeb Technologies, LLC v. Facebook, Inc.*, C-13-01356 EJD, 2014 WL 116340, at *6 (N.D. Cal. Jan. 13, 2014); *Evolutionary Intelligence LLC v. Yelp Inc.*, C-13-03587 DMR, 2013 WL 6672451, at *7 (N.D. Cal. Dec. 18, 2013).

The question remains whether Sprint should be precluded from raising any argument that was actually raised in the IPR proceedings, or whether the estoppel should also extend—like the statutory estoppel—to any argument that could have been raised in the IPR proceedings. Another court in this district has examined this exact issue, and while it originally required the accused infringers to agree to the full estoppel provisions, *Pi-Net*, 2013 WL 4475940, at *5, upon reconsideration it granted a stay only upon the condition that the accused infringers are estopped from relitigating any invalidity issue that was actually raised in the IPR, *Pi-Net Int'l, Inc. v. Focus Bus. Bank*, C-12-4958 PSG, 2013 WL 5513333, at *2 (N.D. Cal. Oct. 3, 2013). In *Pi-Net*, the court's holding turned on the defendants' level of involvement in the IPR proceedings. If Sprint and IPR petitioners communicate on strategy, Sprint should be bound by the full statutory estoppel provision. If, however, Sprint has no input on the IPR strategy, it should not be precluded from

raising arguments that could have been raised in the IPR proceedings. *Id*. At the hearing, Sprint represented to the court that it did not assist the IPR petitioners with any prior art search, that it took no part in drafting the IPR petitions, and that it is not in communication with the IPR petitioners concerning the IPR.

Although it did not address the issue of statutory estoppel in its briefing, Sprint at the hearing cited to Patent and Trademark Office Trial Practice Guide, 77 Fed. Reg. 48756, 48760 (Aug. 14, 2012), as support for its position that it should not be bound by any estoppel. In that document, the Patent and Trademark Office explains that statutory estoppel "seeks to protect patent owners from harassment via successive petitions by the same or related parties, to prevent parties from having a 'second bite at the apple,' and to protect the integrity of both the USPTO and Federal Courts by assuring that all issues are promptly raised and vetted." 77 Fed. Reg. 48756 at 48759. In general, the passage cited by Sprint is concerned with how to determine whether a party is a "real party in interest" or is "privy" to the IPR—requirements for applying statutory estoppel under 35 U.S.C. § 315(e)(2). Here, the court recognizes that Sprint is neither a real party in interest in nor privy to the IPR, and thus § 315(e)(2) does not apply. Still, the court finds that requiring Sprint to submit to a weaker estoppel foreclosing it from relitigating claims made and finally determined in the IPR proceedings is necessary to effect the PTO's interest in protecting the integrity of PTO proceedings and in preventing parties from having a "second bite at the apple." 77 Fed. Reg. at 48759. The court thus conditions the stay on Sprint's agreement to be estopped only from asserting any invalidity contention that was actually raised and finally adjudicated in the IPR proceedings.

### III.  ORDER

For the foregoing reasons, Sprint's motion to stay the case pending *inter partes* review is GRANTED on the condition that Sprint agrees to be bound by estoppel precluding Sprint from asserting in this action that a patent claim is invalid on any ground that was raised and finally adjudicated in the IPR proceedings. This language intends to parallel the statutory estoppel provision in 35 U.S.C. § 315(e)(2), except that this order does not preclude Sprint from raising arguments that could have been raised in the IPR but were not actually raised by the IPR petitioners. Sprint must indicate to the court within four days of this order whether or not it agrees to be bound

by such estoppel. The stay continues until the PTO has issued its final decisions on all of the IPR petitions challenging the patents-in-suit, or further order of the court, whichever occurs first. The court orders the parties to file a joint status report regarding the PTO's decision on whether or not to grant each IPR petition within seven days of the PTO's decision on the petition. The court further orders the parties to file a joint status report forwarding the PTO's final decisions on any granted IPR petitions within seven days of the conclusion of all of any IPR proceedings.

Dated: February 28, 2014



RONALD M. WHYTE
United States District Judge