1  PATRICK E. KING (CA Bar No. 211975)
   pking@stblaw.com
2  JEFFREY E. DANLEY (CA Bar No. 238316)
   jdanley@stblaw.com
3  SIMPSON THACHER & BARTLETT LLP
   2475 Hanover Street
4  Palo Alto, California 94304
   Telephone: (650) 251-5000
5  Facsimile:  (650) 251-5002

6  *Attorneys for Defendant Apple Inc.*

7  [See signature block for list of additional counsel]

8

9              UNITED STATES DISTRICT COURT

10        FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                 SAN JOSE DIVISION

12

13  EVOLUTIONARY INTELLIGENCE, LLC,          Case No. 13-cv-04513-RMW

                        Plaintiff,           **DEFENDANTS' NOTICE OF**
14                                           **MOTION, MOTION TO DISMISS,**
                            v.               **MOTION FOR JUDGMENT ON THE**
15                                           **PLEADINGS AND MEMORANDUM**
                                             **OF POINTS AND AUTHORITIES IN**
16  SPRINT NEXTEL CORPORATION, *et al.*,     **SUPPORT THEREOF**

                        Defendants.          Date:    August 21, 2015
17                                           Time:    9:00 a.m.
18                                           Judge:   Honorable Ronald M. Whyte
                                             Room:    Courtroom 6, 4th Floor
19
                                             [Filed concurrently herewith: Declaration
20                                           of Patrick E. King; [Proposed] Order]

21  ──────────────────────────────

22  EVOLUTIONARY INTELLIGENCE, LLC,          Case No. 13-cv-04201-RMW

                        Plaintiff,
23
                            v.               Related with 13-cv-04513-RMW
24
    APPLE INC.,
25
                        Defendant.
26

27

28

| | |
|---|---|
| EVOLUTIONARY INTELLIGENCE, LLC, | Case No. 13-cv-04202-RMW |
| Plaintiff, | |
| v. | Related with 13-cv-04513-RMW |
| FACEBOOK, INC., | |
| Defendant. | |

| | |
|---|---|
| EVOLUTIONARY INTELLIGENCE, LLC, | Case No. 13-cv-04203-RMW |
| Plaintiff, | |
| v. | Related with 13-cv-04513-RMW |
| FOURSQUARE LABS, INC., | |
| Defendant. | |

| | |
|---|---|
| EVOLUTIONARY INTELLIGENCE, LLC, | Case No. 13-cv-04204-RMW |
| Plaintiff, | |
| v. | Related with 13-cv-04513-RMW |
| GROUPON, INC., | |
| Defendant. | |

| | |
|---|---|
| EVOLUTIONARY INTELLIGENCE, LLC, | Case No. 13-cv-04205-RMW |
| Plaintiff, | |
| v. | Related with 13-cv-04513-RMW |
| LIVINGSOCIAL, INC., | |
| Defendant. | |

| | |
|---|---|
| EVOLUTIONARY INTELLIGENCE, LLC, | Case No. 13-cv-04206-RMW |
| Plaintiff, | |
| v. | Related with 13-cv-04513-RMW |
| MILLENNIAL MEDIA, INC., | |
| Defendant. | |

EVOLUTIONARY INTELLIGENCE, LLC,

                    Plaintiff,

          v.

TWITTER, INC.,

                    Defendant.

Case No. 13-cv-04207-RMW

Related with 13-cv-04513-RMW

EVOLUTIONARY INTELLIGENCE, LLC,

                    Plaintiff,

          v.

YELP, INC.,

                    Defendant.

Case No. 13-cv-03587-RMW

Related with 13-cv-04513-RMW

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................................ 1

ISSUE TO BE DECIDED ................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 2

I.      INTRODUCTION .................................................................................................... 2

II.     THE ASSERTED PATENTS ................................................................................... 3

       A.      Background on the Patents ........................................................................... 3

       B.      Details of U.S. Patent No. 7,702,682 ......................................................... 4

       C.      Details of U.S. Patent No. 7,010,536 ......................................................... 6

III.    LEGAL STANDARDS ............................................................................................ 8

       A.      Motions under Federal Rules of Civil Procedure 12(b)(6) and 12(c) ........ 8

       B.      Ineligible Subject Matter under 35 U.S.C. § 101 ..................................... 10

IV.    ARGUMENT ......................................................................................................... 12

       A.      The '682 Patent Claims Unpatentable Subject Matter Under Section 101 ............ 12

             1.      Step 1: The '682 Patent Claims an Abstract Idea ......................... 12

             2.      Step 2: The Claims of the '682 Patent Contain No "Inventive Concept" ... 12

             3.      The Dependent Claims of the '682 Patent Add Only Trivial Limitations Insufficient to Confer Patentability ............................................. 15

       B.      The '536 Patent Claims Unpatentable Subject Matter Under Section 101 ............ 16

             1.      Step 1: The '536 Patent Claims an Abstract Idea ......................... 16

             2.      Step 2: The Claims of the '536 Patent Contain No "Inventive Concept" ... 19

             3.      The Dependent Claims of the '536 Patent Add Only Trivial Limitations Insufficient to Confer Patentability ............................................. 22

V.     CONCLUSION ...................................................................................................... 22

# **TABLE OF AUTHORITIES**

## **CASES**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014) ................................................................................ passim

*Applied Materials, Inc. v. Adv. Semiconductor Materials Am., Inc.,*
    No. C-92-20643 RMW, 1994 U.S. Dist. LEXIS 17569 (N.D. Cal. 1994) ............................... 9

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................ 8

*Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.),*
    687 F.3d 1266 (Fed. Cir. 2012) ...................................................................... 10

*Bascom Research, LLC v. LinkedIn, Inc.,*
    No. 12-CV-06293-SI, 2015 WL 149480 (N.D. Cal. Jan. 5, 2015) ............................ 14, 15, 19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 570 (2007) ............................................................................ 8

*Bilski v. Kappos,*
    561 U.S. 593 (2010) ............................................................................ 9, 11, 12

*buySAFE, Inc. v. Google, Inc.,*
    765 F.3d 1350 (Fed. Cir. 2014) ...................................................................... 9

*Chavez v. United States,*
    683 F.3d 1102 (9th Cir. 2012) ...................................................................... 1, 8

*Cogent Medicine, Inc., v. Elsevier Inc.,*
    No. C-13-4479-RMW, 2014 WL 4966326 (N.D. Cal. Sept. 30, 2014) ..................... 10, 12, 15

*Compression Tech. Solutions LLC v. EMC Corp.,*
    No. C–12–01746 RMW, 2013 WL 2368039 (N.D. Cal. May 29, 2013) ................... 14, 17, 18

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Assoc.,*
    776 F.3d 1343 (Fed. Cir. 2014) ................................................................ passim

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.,*
    558 F. App'x 988 (Fed. Cir. 2014) .............................................................. 16, 19

*CyberSource Corp. v. Retail Decisions, Inc.,*
    654 F.3d 1366 (Fed. Cir. 2011) ...................................................................... 14

*DDR Holdings, LLC v. Hotels.com, L.P.,*
    773 F.3d 1245 (Fed. Cir. 2014) ...................................................................... 21

*DealerTrack, Inc. v. Huber,*
    674 F.3d 1315, 1333 (Fed. Cir. 2012) .............................................................. 11

*Diamond v. Chakrabarty,*
   447 U.S. 303 (1980) ........................................................................................... 10

*Digitech Image Techs., LLC v. Electronics for Imaging, Inc.,*
   758 F.3d 1344 (Fed. Cir. 2014) ................................................................... 10, 19

*Gametek LLC v. Zynga, Inc.,*
   No. CV 13-2546 RS, 2014 WL 1665090 (N.D. Cal. Apr. 25, 2014) ...................... 9

*Gottschalk v. Benson,*
   409 U.S. 63 (1972) ............................................................................................. 17

*Hewlett Packard Co. v. ServiceNow, Inc.,*
   No. 14-CV-00570-BLF, 2015 WL 1133244 (N.D. Cal. Mar. 10, 2015) ......... 21, 22

*In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig.,*
   774 F.3d 755, 759 (Fed. Cir. 2014) ..................................................................... 9

*Intellectual Ventures II LLC v. JP Morgan Chase & Co.,*
   No. 13-cv-3777 (AKH), 2015 U.S. Dist. LEXIS 56092 (S.D.N.Y. Apr. 28,
   2015) ................................................................................................................. 18

*Jericho Sys. Corp. v. Axiomatics, Inc. et al.,*
   No. 3:14-CV-2281-K, 2015 WL 2165931 (N.D. Tex. May 7, 2015) ..................... 21

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
   132 S. Ct. 1289 (2012) .................................................................... 10, 11, 12, 19

*Moore v. Kroger Co.,*
   No. C-13-04171 DMR, 2014 WL 825428 (N.D. Cal. Feb. 28, 2014) ..................... 9

*MyMedicalRecords, Inc. v. Walgreen Co.,*
   No. 2:13-CV-00631-ODW (SHx), 2014 WL 7339201 (C.D. Cal. Dec. 23, 2014) ............... 21

*New.Net, Inc. v. Lavasoft,*
   356 F. Supp. 2d 1090 (C.D. Cal. 2004) ................................................................ 8

*Open Text S.A. v. Alfresco Software Ltd.,*
   No. 13-CV-04843-JD, 2014 WL 4684429, at *4 (N.D. Cal. Sept. 19, 2014) ....................... 21

*Open Text S.A. v. Box, Inc.,*
   No. 13-CV-04910-JD, 2015 WL 269036 (N.D. Cal. Jan. 20, 2015) ..................... 20

*Planet Bingo, LLC v. VKGS LLC,*
   576 Fed App'x 1005 (Fed. Cir. 2014) ................................................................. 14

*Rohm v. Homer,*
   367 F. Supp. 2d 1278 (N.D. Cal. 2005) ................................................................ 8

*Shortridge v. Found. Constr. Payroll Serv., LLC,*
   No. 14-CV-04850-JCS, 2015 WL 1739256 (N.D. Cal. Apr. 14, 2015) ................ 1, 8, 9, 18

*State Street Bank & Trust Co. v. Signature Fin. Group, Inc.,*
   149 F.3d 1368 (Fed. Cir. 1998) ......................................................................... 11

*Ultramercial v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ........................................................................................ passim

## **STATUTES**

35 U.S.C. § 101 ................................................................................................................... passim

## **RULES**

Federal Rule of Civil Procedure 12(b)(6) .......................................................................... 1, 3, 8, 9

Federal Rule of Civil Procedure 12(c) ............................................................................... 1, 3, 8, 9

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 21, 2015, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6, Fourth Floor, 280 South 1st Street, San Jose, California, before the Honorable Ronald M. Whyte: (1) Defendants Groupon and Twitter will and hereby do move the Court under Federal Rule of Civil Procedure 12(b)(6) for an order to dismiss for failure to state a claim, and (2) Defendants Apple, Facebook, Foursquare, LivingSocial, Millennial Media, Sprint, and Yelp will and hereby do move the Court under Federal Rule of Civil Procedure 12(c) for an order granting judgment on the pleadings, in favor of Defendants and against Plaintiff Evolutionary Intelligence, LLC ("Evo Intel" or "Plaintiff") as to all claims for relief on the basis that Defendants are entitled to judgment as a matter of law.[1]

Defendants respectfully request that the Court grant the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and dismiss these cases with prejudice on the ground the patents-in-suit are invalid under 35 U.S.C. § 101 for failing to claim patent-eligible subject matter. This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, other materials in the record, argument of counsel, and such other matters as the Court may consider. A proposed order is submitted with this Motion.

## ISSUE TO BE DECIDED

Whether Evo Intel's patent infringement Complaints should be dismissed because the patents-in-suit are invalid under 35 U.S.C. § 101 for failing to recite patent-eligible subject matter.

---

[1] Defendants Groupon and Twitter have not yet filed Answers because they filed motions to dismiss that are still pending. *See Groupon* Dkt. Nos. 18, 27 & 28 (13-cv-04204-RMW); *Twitter* Dkt. Nos. 10, 23 & 25 (13-cv-04207-RMW). Accordingly, they bring this motion under Rule 12(b)(6). The remaining Defendants have all filed answers, and therefore bring this motion under Rule 12(c). Under Ninth Circuit law, the standards for addressing motions under Rule 12(b)(6) and 12(c) are the same. *Shortridge v. Found. Constr. Payroll Serv., LLC*, No. 14-CV-04850-JCS, 2015 WL 1739256, at *6 (N.D. Cal. Apr. 14, 2015) (citing *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   <u>INTRODUCTION</u>

Evo Intel has sued nine very different companies in these related cases, accusing a diverse array of technology of infringing two related patents, which purport to cover a number of well-known and widely used concepts related to information and data management.   Specifically, the '682 patent seeks to claim concepts related to searching data using historical information, while the '536 patent seeks to claim concepts of organizing and managing information in containers based upon rules of time and place.  Since the Supreme Court's *Alice* decision, the Federal Circuit and district courts alike have routinely rejected such claims under Section 101.

For as long as people have been collecting and sharing information, they have sought ways to store and organize information in "containers" (books, boxes, and files) and have created rules governing how the containers and their contents can be accessed and used.   Rules governing such containers have commonly used both time ("archive on December 31") and place ("reference material—not available for checkout") information.   People have long used such rules to manage interactions with and between these information containers.   For example, the Dewey Decimal System numbers books to keep biographies from being shelved with fiction; time-stamps on sales data allow the creation of monthly revenue reports; and address information permits assembly of employee records by city of residence.   Information containers have also long included data about the container's history.   Library books have cards or stamps showing check-out and due dates; files have access logs recording by whom and when they were accessed; and intra-office communications have routing slips reflecting their prior circulation.

The asserted patents seek to preempt these age-old methods of categorizing data.   Evo Intel's patents claim nothing more than organizing information into labeled containers, managing them according to certain rules and instructions, and searching their history, like numerous other patents whose claims have already been invalidated.   Evo Intel's patents purport to implement these well-known abstract ideas using generic computer components and common programming functions.   Modern electronics undoubtedly provide useful tools for managing information containers digitally using widely known concepts, and processors provide a fast and efficient tool

1    for managing and searching information stored in logical containers.    But courts have repeatedly

2    emphasized that an abstract idea is not transformed into a patentable claim simply by implementing

3    it on a computer using conventional components and programming tools.

4           In fact, the prosecution history makes patent ineligibility obvious.  During prosecution of

5    the '682 patent, the patentee persuaded the examiner to withdraw a rejection under Section 101 by

6    amending claims to recite that they are "computer-implemented" and agreeing to an Examiner's

7    amendment that searching be performed "using the computer."  *See infra* Section IV.A.1.  The

8    Supreme Court and the Federal Circuit have since made it abundantly clear that unpatentable

9    subject matter is not transformed into a patentable claim simply by implementing it on a computer

10   or adorning it with conventional components.  A patent must do more than simply state an abstract

11   idea while adding the words "apply it with a computer."  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,

12   134 S. Ct. 2347, 2358 (2014).

13          Under the controlling authority, Evo Intel's patents fail to claim patent-eligible subject

14   matter under 35 U.S.C. § 101.   Defendants, therefore, respectfully request dismissal and judgment

15   under Federal Rules of Civil Procedure 12(b)(6) and 12(c).

16   **II.       THE ASSERTED PATENTS**

17          **A.       Background on the Patents**

18          The patents at issue, U.S. Patent Nos. 7,010,536 (the "'536 patent") and 7,702,682 (the

19   "'682 patent"), are both titled "System and Method for Creating and Manipulating Information

20   Containers with Dynamic Registers."  *See* Declaration of Patrick E. King ("King Decl.") Ex. A

21   ('536 patent) at 1; *id.* Ex. B ('682 patent) at 1.[2]  The '682 patent issued on April 20, 2010, and is a

22   continuation of the '536 patent, which issued on March 7, 2006.  '682 patent at 1; '536 patent at 1.

23   Both patents share the same specification, claim priority to the same provisional application (No.

24   60/073,209 filed Jan. 30, 1998), identify the same sole inventor (Michael De Angelo), and are now

25   allegedly owned by Evo Intel.  '682 patent at 1; '536 patent at 1; *Sprint* Dkt. No. 1 (Complaint) ¶¶

26   12 & 17.

27   _____

[2]       The patents at issue also were attached as exhibits to the Complaints.

28

The common specification explains that the patents are directed to a "means to create and manipulate information containers." '682 patent at 1:28.[3]  Evo Intel characterizes the patents as containing three "broad" categories of independent claims: (1) methods of tracking searches, (2) time-based information containers, and (3) location-based information containers.  *Sprint* Dkt. No. 167 at 2:16-18 (Evo Intel Br. ISO Lifting the Stays Pending *Inter Partes* Review).  According to the specification, these containers store not only information on various types of computer and digital networks, but also physical, published, and "other" media.  '682 patent at 3:13-15.  The containers include various types of "registers" to, for example, identify the container or contents, provide rules of interaction between containers, and record the history of the container.  *Id.* at 13:4-10.  The containers also have "gateways" to "control[] the interaction of the container with other containers, systems or processes."  '536 patent at claims 1-2 & 15-16.  In addition, the patents state that "[t]he present invention also includes a search interface or browser" to allow a "user to submit, record and access search streams or phrases generated historically by himself, other users, or the system."  '682 patent at 6:10-14.

The specification describes a preferred embodiment implemented with "an input device 24, an output device 16, a processor 18, a memory unit 22, a data storage device 20, and a communication device 26 operating on a network 201."  '682 patent at 7:35-38 & Fig. 1; *see also id.* at 7:38-8:44 (describing those components).

**B.      Details of U.S. Patent No. 7,702,682**

The '682 patent contains seven independent claims (1 and 18-23) and sixteen dependent claims.  Claim 1 is representative:

| Claim Limitation | Step |
|---|---|
| 1. A computer-implemented method comprising: | |
| receiving a search query; | *Receiving search query* |
| searching, using the computer, first container registers | *Searching historical data* |

---

[3]      For simplicity, since the patents-in-suit have a common specification, all references to the specification will cite the column and line numbers in the '682 patent.  References to the claims will cite the appropriate patent number.

| Claim Limitation | Step |
|---|---|
| encapsulated and logically defined in a plurality of containers to identify identified containers responsive to the search query, the container registers having defined therein data comprising historical data associated with interactions of the identified containers with other containers from the plurality of containers, wherein searching the first container registers comprises searching the historical data; | |
| encapsulating the identified containers in a new container; | *Encapsulating search results (i.e., identified information containers) in a new container* |
| updating second container registers of the identified containers with data associated with interactions of the identified containers with the new container; and | *Updating data registers* |
| providing a list characterizing the identified containers. | *Providing a list of search results* |

'682 patent at Claim 1 (emphasis added).  The other independent claims are nearly identical to Claim 1.[4]

Dependent Claims 2-17 add conventional components or processes related to the idea of searching historical data encompassed by Claim 1:

| Claim Limitation | Claim Number(s) |
|---|---|
| Data trees with parent-child relationships | Claim 2 |
| Identification of the historical data being used | Claims 3 and 5 |
| Data storage within containers | Claims 4, 11, 12, and 14 |
| Searching a listing of results (similar to Claim 1) | Claim 6 |
| Listing the title and description of search results | Claim 7 |
| Setting restriction parameters on a search | Claims 8 and 9 |
| Encapsulating the search query in a container | Claim 10 |

---

[4]     Claims 19 and 21 merely restate Claim 1 as a computer program and searching apparatus, respectively.  Claim 23 substitutes "search query templates" for the "containers" in Claim 1.  Claim 18 refers to "polling" gateways rather than "searching" containers, but states that "polling … comprises searching."  Claims 20 and 22 similarly restate Claim 18 as a computer program and searching apparatus, respectively.  *Id.* at 31:7-32:61.

| Claim Limitation | Claim Number(s) |
|---|---|
| Aggregating register contents | Claim 13 |
| Data management | Claims 15-17 |

'682 patent at Claims 2-17.  None of the claims of the '682 patent describes what is searched or how the search results are used.  *See id.* at Claims 1-23.  Instead, they are directed simply to "searching" in the abstract.

During prosecution of the '682 patent, the examiner rejected the method claims as unpatentable under Section 101.  King Decl. Ex. C at 105-06 (excerpts of '682 file history).  Relying upon Patent Office guidance in effect at that time, the patentee overcame this rejection by amending the claims to recite that the methods are "computer-implemented" and agreeing to an examiner's amendment that searches be performed "using the computer."  *Id.* at 125-34; *Id.* at 150-53.  Following these amendments, the examiner allowed the claims.

**C.      Details of U.S. Patent No. 7,010,536**

The '536 patent contains four independent claims (1-2 and 15-16) and twelve dependent claims.  Claim 1 is representative:

| '536 Patent Claim 1 |
|---|
| 1. An apparatus for transmitting, receiving and manipulating information on a computer system, the apparatus including a plurality of containers, each container being a logically defined data enclosure and comprising: |
| an information element having information; |
| a plurality of registers, the plurality of registers forming part of the container and including |
| a first register for storing a unique container identification value, |
| a second register having a representation designating time and governing interactions of the container with other containers, systems or processes according to utility of information in the information element relative to an external-to-the-apparatus event time, |
| an active time register for identifying times at which the container will act upon other containers, processes, systems or gateways, |
| a passive time register for identifying times at which the container can be acted upon by other containers, processes, systems or gateways, and |

| '536 Patent Claim 1 |
|---|
| a neutral time register for identifying times at which the container may inter[a]ct with other containers, processes, systems or gateways; and |
| a gateway attached to and forming part of the container, the gateway controlling the interaction of the container with other containers, systems or processes. |

'536 patent at Claim 1 (emphasis added).  Claim 15 is identical to Claim 1 except that the "active," "passive," and "neutral" registers are deleted and replaced with:

| at least one acquire register for controlling whether the container adds a register from other containers or adds a container from other containers when interacting with them[.] |
|---|

*Id.* at Claim 15.  Claims 2 and 16 are essentially identical to Claims 1 and 15, respectively, except "time" is replaced with "space."  *Id.* at Claims 2, 16.

Dependent claims 3-14 add conventional components or processes to the information, registers, gateways and containers encompassed by the independent claims:

| Claim Limitation | Claim Number(s) |
|---|---|
| Additional registers (container and system history registers; predefined, user-created, and system-defined registers; and an acquire register) | Claims 3-8 |
| Means-plus-function limitations for interactions among components | Claims 9-12 |
| Unspecified and non-enumerated rules inside an "expert" system | Claim 13 |
| The information element contains text, graphic images, video, audio, a digital pattern, a process, a nested container, a bit, natural number, or a system | Claim 14 |

*Id.* at Claims 3-14.

In claiming an "apparatus for transmitting, receiving and manipulating information on a computer system" that includes "a plurality of containers," the specification explains that

[a] container 100 **at minimum includes in its construction a logically encapsulated portion of cyberspace, a register and a gateway**.  A container 100 at minimum encapsulates a single digital bit, a single natural number or the logical description of another container, **and at maximum all defined**

**cyberspace, existing, growing and to be discovered, including but not limited to all containers, defined and to be defined in cyberspace.**

'682 patent at 9:7-14 (emphasis added).

The claims of the '536 patent are directed to a generic computer system that manipulates information using basic programming tools—containers, registers, and gateways, which are defined only functionally in the claims.[5]   The claims describe no field of use narrower than that common to all computer systems: "transmitting, receiving and manipulating information."   *See* '536 patent at Claims 1-2 & 15-16.

## III.   LEGAL STANDARDS

### A.   Motions under Federal Rules of Civil Procedure 12(b)(6) and 12(c)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual detail to "state a claim to relief that is plausible on its face."   *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).   The complaint must include sufficient "factual content allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009).

A motion for judgment on the pleadings is a "means to challenge the sufficiency of the complaint after an answer has been filed."   *Rohm v. Homer*, 367 F. Supp. 2d 1278, 1281 (N.D. Cal. 2005) (quoting *New.Net, Inc. v. Lavasoft,* 356 F. Supp. 2d 1090, 1115 (C.D. Cal. 2004)). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6)[.] . . . [U]nder both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'"   *Shortridge v. Found. Constr. Payroll Serv., LLC*, No. 14-CV-04850-JCS, 2015 WL 1739256, at *6 (N.D. Cal. Apr. 14, 2015) (citing *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)).   On such motions, the court generally considers the complaint, the answer, any written documents attached to them, and any matter of which the court

---

[5]    The containers described in the claims include an "information element."   *See, e.g.*, '536 patent at Claim 1.   According to the patent, the "information element" has "information" of unspecified "utility" that "govern[s] interactions of the container with other containers." *Id.*   The registers identify "times" at which (or "space" in which) the container "will," "can," or "may" interact with other containers.   *Id.* at Claims 1-2.   The gateway "control[s]" the interaction of the container with other containers."   *Id.*

1   can take judicial notice for the factual background of the case.  *Moore v. Kroger Co.*, No. C-13-

2   04171 DMR, 2014 WL 825428, at *2 (N.D. Cal. Feb. 28, 2014).  In motions at the pleading stage

3   challenging patent eligibility under Section 101, it is the "sufficiency of the patent—rather than of

4   the complaint itself—that is at issue."  *Shortridge*, 2015 WL 1739256, at *6.  Defendant, as the

5   moving party, bears the burden of establishing that the claims at issue are patent ineligible under

6   Section 101.  *Id.* at *7.

7          The issue presented on this motion—whether Evo Intel's patents are directed to ineligible

8   subject matter under Section 101—is a "threshold test," *Bilski v. Kappos*, 561 U.S. 593, 602

9   (2010), and a "primal inquiry, one that must be addressed at the outset of litigation," *Ultramercial*

10  *v. Hulu, LLC*, 772 F.3d 709, 718 (Fed. Cir. 2014) (Mayer, J., concurring).  Because patent

11  eligibility under Section 101 is a question of law, *In re BRCA1- & BRCA2-Based Hereditary*

12  *Cancer Test Patent Litig.*, 774 F.3d 755, 759 (Fed. Cir. 2014), courts around the country—

13  including the Federal Circuit and this Court—have routinely recognized the propriety of disposing

14  of a case on Section 101 grounds at the pleading stage.  *See, e.g.*, *Ultramercial*, 772 F.3d at 711-12

15  (affirming dismissal of patent claims for a method of monetizing and distributing copyrighted

16  products over the Internet on a 12(b)(6) motion); *Content Extraction & Transmission LLC v. Wells*

17  *Fargo Bank, Nat'l Assoc.*, 776 F.3d 1343, 1351 (Fed. Cir. 2014) (affirming 12(b)(6) dismissal of

18  patent claims over a method of recognizing and storing data); *buySAFE, Inc. v. Google, Inc.*, 765

19  F.3d 1350, 1351 (Fed. Cir. 2014) (affirming district court's granting of motion for judgment on the

20  pleadings that the asserted claims covered ineligible subject matter under Section 101); *Gametek*

21  *LLC v. Zynga, Inc.*, No. CV 13-2546 RS, 2014 WL 1665090, at *7 (N.D. Cal. Apr. 25, 2014)

22  (granting motion for judgment on the pleadings under Section 101).

23         For purposes of a motion under Rules 12(b)(6) and 12(c), the Court may take judicial

24  notice of the prosecution history and prior art cited therein.  *See, e.g.*, *Applied Materials, Inc. v.*

25  *Adv. Semiconductor Materials Am., Inc.*, No. C-92-20643 RMW, 1994 U.S. Dist. LEXIS 17569,

26  at *5 (N.D. Cal. 1994); Fed. R. Evid. 201 (judicial notice may be taken of adjudicative facts that

27  "can be accurately and readily determined from sources whose accuracy cannot reasonably be

28  questioned").

Claim construction is not necessary prior to determining patent eligibility under Section 101.  *See, e.g.*, *Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101."); *Cogent Medicine, Inc., v. Elsevier Inc.*, Nos. C-13-4479-RMW, 2014 WL 4966326, at *3 (N.D. Cal. Sept. 30, 2014) (same).  As Judge Mayer explained in the concurrence in *Ultramercial*, "resolving subject matter eligibility at the outset provides a bulwark against vexatious infringement suits" and deters the practice of filing "nearly identical patent infringement complaints against a plethora of diverse defendants," with the idea of quickly resolving them by settlement.  *Ultramercial*, 772 F.3d at 719 (citation omitted).

In examining a patent under Section 101, a district court may analyze certain claims as representative; it need not address the patent eligibility of each claim individually if the claims of the asserted patents are "substantially similar in that they recite little more than the same abstract idea[.]"  *See Content Extraction*, 776 F.3d at 1348.

### B.    Ineligible Subject Matter under 35 U.S.C. § 101

Section 101 of the Patent Act defines the four categories of subject matter eligible for patent protection: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101.  The Supreme Court has long recognized an exception to this provision: "Laws of nature, natural phenomena, and abstract ideas are not patentable."  *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014).  A claim that, on its face, falls within one of the four statutory categories is nevertheless ineligible if it encompasses any of the excepted categories.  *Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014) (citing *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980)).

The Supreme Court has repeatedly distinguished between patents that claim the "'buildin[g] block[s]' of human ingenuity and those that integrate the building blocks into something more," emphasizing a concern that patentability of the former "'would risk disproportionately tying up the use of the underlying' ideas," preempting a field of study and inhibiting further discovery.  *See Alice*, 134 S. Ct. at 2354 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294, 1303 (2012)).  The Court "has unequivocally

1   repudiated the overly expansive approach to patent eligibility that followed in the wake of" the

2   Federal Circuit's decision in *State Street Bank*.[6]  *Ultramercial*, 772 F.3d at 720 (Mayer, J.,

3   concurring).  A claim directed to an abstract idea does not become patent-eligible merely because

4   it is limited to "a particular technological environment" or recites "insignificant post-solution

5   activity" or "well-understood, routine, conventional activity."  *Mayo*, 132 S. Ct. at 1294, 1297-98.

6   Instead, for the claim to be patent-eligible, it must include limitations such that it does not "pre-

7   empt use of [an] approach in all fields, and . . . effectively grant a monopoly over an abstract

8   idea."  *Bilski*, 561 U.S. at 612.  Otherwise, allowing the "monopolization" of "the basic tools of

9   scientific and technological work" will "'tend to impede innovation more than it would tend to

10  promote it,' thereby thwarting the primary object of the patent laws."  *Alice*, 134 S. Ct. at 2354

11  (quoting *Mayo*, 132 S. Ct. at 1293).

12       The Supreme Court has defined a two-part test to determine whether a patent is invalid for

13  claiming ineligible subject matter.  First, this Court must "determine whether the claims at issue

14  are directed to a patent-ineligible concept," such as an abstract idea.  *Alice*, 134 S. Ct. at 2355-56.

15  The goal of this step is to identify the "basic concept," or " "heart" of the claims.  *See id.* (holding

16  the claims at issue were "drawn to the concept of intermediated settlement"); *id.* at 2356 (stating

17  that claims in *Bilski* described "the basic concept of hedging, or protecting against risk"); *Content*

18  *Extraction*, 776 F.3d at 1347 (reducing claim elements to the "basic concept of data recognition

19  and storage"); *Ultramercial*, 772 F.3d at 714-15 (determining "heart" of patent-in-suit was abstract

20  idea); *DealerTrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (finding claim explained

21  "basic concept" that was abstract).

22       If the claims are directed to an abstract idea, the Court must then consider the elements of

23  each claim at issue, both individually and as an ordered combination, to determine whether they

24  "transform the nature of the claim into a patent-eligible application" through an "inventive

25  concept."  *Alice*, 134 S. Ct. at 2355 (internal quotation marks omitted).  The goal of this two-step

26

27  [6]     *State Street Bank & Trust Co. v. Signature Fin. Group, Inc.*, 149 F.3d 1368 (Fed. Cir.
           1998).

28

inquiry is to ensure that the patent "amounts to significantly more" than a patent on the ineligible

concept itself. *Mayo*, 132 S. Ct. at 1294.[7]

## IV.   ARGUMENT

### A.   The '682 Patent Claims Unpatentable Subject Matter Under Section 101

#### 1.   Step 1: The '682 Patent Claims an Abstract Idea

The first step of the *Alice* test is satisfied here.  The '682 patent claims the abstract idea of

searching historical data, which is an idea "devoid of a concrete or tangible application."

*Ultramercial*, 772 F.3d at 715.  The claims of the '682 patent include the unremarkable steps of

"receiving a search query," "searching" registers,[8] placing the identified responsive containers in a

new container, "updating" registers, and "providing a list."  *E.g.*, '682 patent at Claim 1.  The

claims of the '682 patent have no specific application other than to "identify" results responsive to

a query, and "provid[e] a list" of those results." '682 patent at Claim 1.

Indeed, according to the specification, the '682 patent extends to all defined—and

**undefined**—"cyberspace." '682 patent at 9:7-14.  The generic search process that it purports to

describe thus threatens to preempt **countless** fields.  Searching data is a basic tool of nearly all

scientific and technological work.  The '682 patent thus meets the first prong of the *Alice* test.

*See, e.g.*, *Cogent Medicine*, 2014 WL 4966326, at *4 (finding abstract a patent claiming the idea

of "maintaining and searching a library of information," even through a "computerized method").

#### 2.   Step 2: The Claims of the '682 Patent Contain No "Inventive Concept"

The '682 patent contains no inventive concept amounting to "significantly more" than the

claimed abstract idea itself.  *See Mayo*, 132 S. Ct. at 1294.  The elements of the '682 patent claims

are individually conventional and routine.  Read separately, the steps of the claimed process in the

'682 patent comprise 1) receiving a search query, 2) searching, 3) encapsulating responsive

---

[7]   For process claims, although not determinative, the "machine-or-transformation test"
serves as another "useful and important clue" for patent eligibility under Section 101.
*Bilski*, 561 U.S. at 604.  To satisfy this test, an invention must either be tied to a particular
machine or apparatus, or transform a particular article into a different state or thing.  *Id.* at
602.

[8]   Certain claims alternatively require "polling" gateways.  *See, e.g.*, '682 patent at Claim 18.

containers in a new container, 4) updating registers, and 5) generating a list.[9]  *See* Section II.B, *supra*, quoting '682 patent at Claim 1.  These steps provide no inventive concept because "the function performed by the computer at each step of the process" of the '682 patent is "'[p]urely conventional.'"  *Alice*, 134 S. Ct. at 2359 (quoting *Mayo*, 132 S. Ct. at 1298) (alteration in original); *see also Ultramercial*, 772 F.3d at 716 ("[T]he claimed sequence of steps comprises only 'conventional steps, specified at a high level of generality,' which is insufficient to supply an 'inventive concept.'") (quoting *Alice*, 134 S. Ct. at 2357).

The attempt to capture an abstract idea through conventional steps is confirmed by a review of the patent's file history.  As originally filed, claim 1 simply recited the act of searching:

> A method comprising:
> receiving a search query;
> searching container registers encapsulated and logically defined in a plurality of containers to identify one or more containers responsive to the search query; and providing a list characterizing the identified containers.

King Decl. Ex. C, at 63.  On May 1, 2009, the U.S. Patent and Trademark Office ("PTO") examiner rejected this claim, among others, noting the "lack of a physical hardware to carry out the invention," and finding that the claims failed to qualify for patentability under Section 101.  *Id.* at 106.  In response to the Section 101 rejection, claims 1-18 and 23 were amended in November 2009 to specify that the invention was "computer-implemented."  *Id.* at 125-34.[10]  In December 2009, the examiner further amended independent Claims 1, 18, and 23 to include the language "using the computer" and the claims were finally allowed under Section 101.  *Id.* at 150-53.[11]

---

[9]  Independent Claims 19 and 20 merely restate these limitations while claiming "[a] computer program product, tangibly embodied on computer-readable media" that presumably practices the "computer-implemented method" of claims 1 and 18. Similarly, Claim 21 repackages the method as an apparatus claim.  Each of these claims rises or falls with the method claims.  *See Alice*, 134 S. Ct. at 2360.  Independent Claim 23 merely substitutes "search query templates" for the "containers" in Claim 1, and is therefore also indistinguishable.

[10]  Issued claim 23 was originally filed and prosecuted as claim 30.

[11]  Although the applicant included additional claim language with this amendment, such as "searching container registers" and "encapsulating the identified containers," nothing indicates that the applicant added these further limitations to overcome the Section 101 rejection.  Indeed, the original claims already included limitations directed towards containers and container registers, and the Examiner still found these claims invalid.  *Id.* at

But the law is now clear that simply adding "computer-implemented" and "using a computer" is not enough to confer patent eligibility.  As the Court in *Alice* held:

> [T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention.  Stating an abstract idea "while adding the words 'apply it'" is not enough for patent eligibility. . . .  Stating an abstract idea while adding the words "apply it with a computer" simply combines those two steps, with the same deficient result.  Thus, if a patent's recitation of a computer amounts to a mere instruction to "implemen[t]" an abstract idea "on . . . a computer," that addition cannot impart patent eligibility.

134 S. Ct. at 2358 (citations omitted).  Post-*Alice*, the later addition of a computer during patent prosecution is insufficient to render an abstract idea patent-eligible.  *See Bascom Research, LLC v. LinkedIn, Inc.*, No. 12-CV-06293-SI, 2015 WL 149480, at *3, *9-10 (N.D. Cal. Jan. 5, 2015) (holding that while patentee overcame Section 101 rejections "by adding the words 'computer-implemented' into the claims," the "generic computer implementation" language from *Alice* dictated that the patent was ineligible under Section 101).  Here, the '682 patent's conventional steps cannot be saved by the fact that the claimed search method is implemented using generic computer components and programming tools.

Methods which can be performed mentally, or which are the equivalent of human mental work, have consistently been held patent ineligible.  *See, e.g., CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011); *Compression Tech. Solutions LLC v. EMC Corp.*, No. C–12–01746 RMW, 2013 WL 2368039, at *5 (N.D. Cal. May 29, 2013) ("A claim that merely requires using a 'computer to execute an algorithm that can be performed entirely in the human mind' or using pencil and paper is impermissibly abstract.") (quoting *CyberSource*, 654 F.3d at 1375); *Planet Bingo, LLC v. VKGS LLC*, 576 Fed App'x 1005, 1007 (Fed. Cir. 2014) ("The district court correctly concluded that managing the game of bingo 'consists solely of mental steps which can be carried out by a human using pen and paper.'").  The '682 patent claims nothing more than what humans have been doing mentally or with pencil and paper for generations—using "historical data" to organize search results.

---

125-34.  Applying the current Section 101 inquiry under *Alice* does not save these claims, as shown in the analysis in this section.

Any number of examples illustrates this point.  Libraries provide lists of popular books, shelved together in special locations, based upon the staff's review of information associated with the number of times the books were checked out.  Records managers identify files for destruction based upon the infrequency of access to those containers, and move those boxes to another location to await disposal.  Investigators may determine whether employees have absconded with confidential information by reviewing access logs, and may secure those files for later use as evidence.  In fact, this Court has declared patent-ineligible similar inventions that "maintain[] and search[] a library of information . . . and set[] aside particular information that may be especially relevant based on the particular user."  *Cogent Medicine*, 2014 WL 4966326, at *4.  Such claims simply fail to provide any inventive element to the abstract idea.[12]

3.   The Dependent Claims of the '682 Patent Add Only Trivial Limitations Insufficient to Confer Patentability

The limitations provided by the dependent claims add nothing inventive to the fatally abstract independent claims on which they depend—they merely add additional conventional concepts and components.  For instance, a data tree with parent-child relationships (Claim 2) is a common structure in computer programming.  *See* King Decl. Ex. B (U.S. Patent No. 6,173,280) at Figs. 4-5, 9:26-46 (cited during prosecution of the '682 patent and teaching data tree structures).  Similarly, Claims 3, 5, 6, and 10 relate to the abstract idea of searching data, providing results, and encapsulating identified containers or queries into new containers.  They "recite little more than the same abstract idea" of Claim 1.  *Content Extraction*, 776 F.3d at 1348.

Providing a title and short description of a container's contents (Claim 7) is no different than headline-writing for newspapers or creating dust jackets for books.  Setting restriction parameters on a search (Claims 8 and 9) is unsurprising to anyone who has ever looked for

---

[12]   The '682 patent also fails to pass muster under the machine-or-transformation test.  It fails the transformation prong because the claimed methods do not transform a particular article into a different state or thing.  The mere manipulation of intangible information is insufficient to meet the test.  *See Ultramercial*, 772 F.3d at 717.  The patent also fails the machine prong because the method claims of the '682 patent merely recite the use of a generic computer and are therefore not tied to a particular machine or apparatus.  *Id.* ("[A]dding a computer to otherwise conventional steps does not make an invention patent-eligible.") (*citing Alice*, 134 S. Ct. at 2357).

1    specific information.  For instance, someone looking for *To Kill A Mockingbird* in a library would

2    go to the fiction section, and not begin by perusing books in the travel section.  Similarly, a

3    scientist researching articles on the marine biology of sharks would not begin by looking through

4    information on terrestrial mammals.

5         The rest of the claims, 4 and 11-17, simply relate to data storage and management,

6    something several courts have found to fall far short of the inventive concept requirement of

7    Section 101.  *See, e.g.*, *Alice*, 134 S. Ct. at 2360 ("Nearly every computer will include a . . . 'data

8    storage unit' capable of performing . . . basic calculation, storage, and transmission

9    functions . . . ."); *Bascom Research,* 2015 WL 149480, at *9 (holding patent was directed to

10   abstract idea of "classifying and organizing data"); *Cyberfone Sys., LLC v. CNN Interactive Grp.,*

11   *Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) (holding ineligible under Section 101 a patent

12   directed to the abstract idea of "using categories to organize, store, and transmit information").

13        Therefore, reading the claim elements of the '682 patent individually and as an ordered

14   combination reveals nothing inventive.  When one takes away the generic computer functionality,

15   all that remains is the abstract idea of searching historical data, which is ineligible for patentability

16   under Section 101.

17        **B.    The '536 Patent Claims Unpatentable Subject Matter Under Section 101**

18             1.    Step 1: The '536 Patent Claims an Abstract Idea

19        The basic concept of the '536 patent is nothing more than the age-old abstract idea of

20   organizing and managing information in containers according to certain rules and instructions.

21   *See Alice*, 134 S. Ct. at 2355 (first step is to identify whether claims are directed to patent-

22   ineligible concept, such as an abstract idea).  The independent claims of the '536 patent are

23   directed to "containers … comprising" (1) "an information element having information," (2)

24   various "registers," and (3) a "gateway" controlling interaction of the container with other

25   containers, systems or processes. '536 patent at Claims 1-2 & 15-16.  At their core, these claims

26   are directed to the abstract idea of storing information in labeled containers with rules and

27   instructions on how the container or contents may be used.  *See, e.g.*, *Content Extraction*, 776 F.3d

28   at 1347 (reducing claim elements to their fundamental abstract ideas); *Ultramercial*, 772 F.3d at

714-15 (same).  The idea is no less abstract merely because Evo Intel attempts to narrow this idea to "transmitting, receiving and manipulating information **on a computer**."  *See* '536 patent at Claims 1-2 & 15-16 (emphasis added); *Alice*, 134 S. Ct. at 2358 (a patent must do more than simply state an abstract idea while adding the words "apply it with a computer").

The scope envisioned by the patent is stunning.  The specification states that a claimed container "at minimum encapsulates a single digital bit . . .  and at maximum **all defined cyberspace, existing, growing and to be discovered,**" including "all containers, **defined and to be defined in cyberspace**."  '682 patent at 9:7-14 (emphasis added).  Based on the specification's description of a "container," it is difficult to ascertain the scope of the element—and  the '536 patent threatens to preempt any field that touches computers or uses data structures anywhere in the digital world, known or yet to be devised.  *See Alice*, 134 S. Ct. at 2354; *Compression Tech.*, 2013 WL 2368039, at *7 (looking to whether claims are "so abstract and sweeping as to cover both known and unknown uses" in determining whether subject matter is patent ineligible) (citing *Gottschalk v. Benson*, 409 U.S. 63, 68 (1972)).  Such breadth denotes a lack of concrete or tangible application.[13]  *See Ultramercial*, 772 F.3d at 715.

The "registers" and "gateways" in the '536 patent claims are nothing more than the labels, rules and instructions that have been used with containers for generations.  Labels identifying containers or their contents were ubiquitous long before Evo Intel's alleged invention.  Similarly, instructions have long been employed to direct when and where a container or its contents may be used.  Labels governing the timing of a container's use are very familiar: a gift marked "Do not open until January 1"; a file labeled "archive after review"; and canned goods that include suggested recipes and instructions to "use before the date stamped above."  As stated in Evo Intel's claims, these are examples of labels and instructions governing **when** a container is acted

---

[13]     Indeed, in suing nine different defendant groups and accusing wholly unrelated products and services, Evo Intel's Complaints showcase that the '536 and '682 patents have no concrete or tangible application.  The very fact that Evo Intel believes the very same claims of its patents cover such dissimilar implementations as Apple's proprietary operating system, Yelp's online urban city guide and business review product, and Facebook's social networking and advertising product, to name a few, brings into stark relief the preemption concerns articulated by the Supreme Court in *Alice*.

1   upon, acts upon, and interacts with other containers, respectively (*i.e.*, the so-called gateways and

2   passive, active and neutral time registers).

3         Containers have for ages also included instructions or labels governing where the container

4   or its contents are used.  For example, a library book marked "Reference" or "Restricted" may

5   only be used in the designated portions of the library; a letter marked with a particular zip code

6   will be sorted and sent to a particular geographic area; and a bottle may be labeled "Refrigerate

7   after opening."  Again, as stated in Evo Intel's claims, these are examples of labels and

8   instructions about **where** the container is acted upon, acts upon, and interacts with other

9   containers, respectively (*i.e.*, the so-called gateways and passive, active and neutral space

10  registers).

11        Moreover, the '536 patent does nothing more than claim a data structure without reciting

12  how that data structure is used or describing which applications use it.  The only limitations placed

13  on the claims are conditional registers and a gateway governed by unspecified, external time or

14  space parameters and the undefined utility of the enclosed information.  '536 patent at Claims 1-2

15  & 15-16.  The indeterminate nature of the claims highlights their potential to significantly preempt

16  any activity using containers with time- or space-based rules, even if implemented on a computer,

17  as the claims merely use running software and the basic building blocks of computing.  *See*

18  *Shortridge, LLC*, 2015 WL 1739256, at *12 ("[T]he fact that the . . . patent describes a wide

19  variety of alternative configurations of such components only underscores its potential to preempt

20  virtually any use of relational databases (a standard method of organizing computer-based data) in

21  the public works labor context."); *Compression Tech.*, 2013 WL 2368039, at *8 ("Nothing in the

22  claims provides specific applications or other limitations that would prevent the patent from

23  including unknown future uses."); *see also Intellectual Ventures II LLC v. JP Morgan Chase &*

24  *Co.*, No. 13-cv-3777 (AKH), 2015 U.S. Dist. LEXIS 56092, at *30 (S.D.N.Y. Apr. 28, 2015)

25  (holding patent ineligible under Section 101 where patent was "not limited to a particular

26  application but, rather, covers *all* network filtering by *any* firewall on *any* computer network

27  where an access rule is chosen based upon the data of multiple packets.") (emphasis in original).

28

1   Allowing Evo Intel to enforce a patent on these abstract activities "'risk[s]

2   disproportionately tying up the use of the underlying' ideas," making the '536 patent ineligible

3   for patent protection under *Alice*. *See Alice*, 134 S. Ct. at 2354.  Cases from the Federal Circuit

4   and this District also consistently guard against this very concern.  *See Bascom Research,* 2015

5   WL 149480, at *8, *9 (holding a patent ineligible under Section 101 that described the abstract

6   idea of "creating, storing and using relationships between objects," something that "is not

7   meaningfully different from classifying and organizing data"); *Cyberfone Sys.*, 558 F. App'x at

8   992 ("[U]sing categories to organize, store, and transmit information is well-established.  Here, the

9   well-known concept of categorical data storage . . . is an abstract idea that is not patent-eligible.");

10   *Content Extraction*, 776 F.3d at 1347 (holding that the "concept of data collection, recognition,

11   and storage is undisputedly well-known"); *Digitech*, 758 F.3d at 1350 (holding method recited in

12   patent was directed to an abstract idea "because it describes a process of organizing information

13   through mathematical correlations").

14   The '536 patent thus meets the first prong of the *Alice* test.

15       2.   Step 2: The Claims of the '536 Patent Contain No "Inventive Concept"

16   When, as here, the claims recite an abstract idea, the second step in the *Alice* analysis is to

17   "examine the elements of the claim to determine whether it contains an 'inventive concept'

18   sufficient to 'transform' the claimed abstract idea into a patent-eligible application."  *Alice*, 134 S.

19   Ct. at 2357 (quoting *Mayo*, 132 S. Ct. at 1294, 1298).  "A claim that recites an abstract idea must

20   include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to

21   monopolize the [abstract idea].'"  *Id.* (quoting *Mayo*, 132 S. Ct. at 1297) (alterations in original).

22   But "[t]hose 'additional features' must be more than 'well-understood, routine, conventional

23   activity.'" *Ultramercial*, 772 F.3d at 715 (quoting *Mayo*, 132 S. Ct. at 1298).

24   The '536 patent contains no inventive concept amounting to "significantly more" than the

25   claimed abstract idea itself.  The specification confirms that the alleged invention is to be

26   implemented with conventional and routine computer components, including: "an input device 24,

27   an output device 16, a processor 18, a memory unit 22, a data storage device 20, and a

28

communication device 26 operating on a network 201." '682 patent at 7:36-38.[14] Well-understood, routine, and conventional components, alone, cannot form the basis for patentability. *See Alice*, 134 S. Ct. at 2360 ("Nearly every computer will include a 'communications controller' and 'data storage unit' capable of performing the basic calculation, storage, and transmission functions required by the method claims."). Where such "standard technology" is used, it is indisputable that the claims' "implementation . . . has nothing inventive whatsoever about it." *Open Text S.A. v. Box, Inc.*, No. 13-CV-04910-JD, 2015 WL 269036, at *1 (N.D. Cal. Jan. 20, 2015).

The specific elements recited in the claims—containers, registers, and gateways—are basic tools of computer design that have been used for decades. *See, e.g.*, King Decl. Ex. E (U.S. Patent No. 5,768,510) at 22:13-15 (cited during prosecution of the '536 patent and describing digital containers); *id.* Ex. F (U.S. Patent No. 6,198,738) at 3:1-7, 3:37-43 (cited during prosecution of the '536 patent and describing registers and gateways).[15] Organizing information in logical objects based on a system of rules is a standard process in software programming, where the basic building block is data acting, being acted upon, or interacting with other data.

While the claims of the '536 patent create the illusion of an inventive feature by naming registers as "active," "passive," or "neutral" "time" or "space" registers, or by adding an "acquire" register, these registers are nevertheless described purely as age-old functions. *See, e.g.*, '536 patent at Claim 1 ("an active time register for identifying times at which the container will act upon other containers"). Labeling registers in the '536 patent only serves to provide

---

[14] Any further details in the specification only reinforce the conclusion that the claimed invention is providing nothing inventive. *See, e.g.*, *id.* at 7:50-52 ("output device" as "a computer monitor . . . and speakers"); *id.* at 7:67-8:3 ("processor" as a conventional microprocessor "such as the Motorola 680(x)0, the Intel 80(x)86 or Pentium, Pentium II" or "processors made by AMD, or Cyrix CPU of the any [sic] class"); *id.* at 8:4-6 ("memory unit" as "dynamic random access memory [DRAM], a read-only memory [ROM], or both"); *id.* at 8:17-18 ("input device" as "a keyboard, microphone, and mouse type controller").

[15] Evo Intel conceded during the *inter partes* review (now a part of the prosecution history of the '536 patent) that containers and registers are generic computer components. *See* King Decl. Ex. G (Paper No. 6, Preliminary Response by Patent Owner, IPR 2014-00086, Jan. 29, 2014) at 23, 25.

1  "idiosyncratic names to identify what are actually 'generic computer structures'"—exactly the sort

2  of drafting ploy that courts in this District have rejected.  *See Hewlett Packard Co. v. ServiceNow,*

3  *Inc.*, No. 14-CV-00570-BLF, 2015 WL 1133244, at *7, *9 (N.D. Cal. Mar. 10, 2015) (holding that

4  the terms "container definition node" and "derived container" were "nothing more than a data

5  structure containing information for accessing the information repository hierarchically and a data

6  structure for using that information"); *see also Jericho Sys. Corp. v. Axiomatics, Inc. et al.,* No.

7  3:14-CV-2281-K, 2015 WL 2165931 (N.D. Tex. May 7, 2015), at *4 (holding that while the

8  "wording of the claim appears to present a complex method that uses attributes, rules, connectors,

9  classifications, and remote data sources," the claim nevertheless involved nothing more than the

10  abstract idea).

11        Thus, the '536 patent claims basic elements of containers, registers, and gateways that do

12  not go beyond "generic computer components configured to implement the [abstract] idea."

13  *Hewlett Packard*, 2015 WL 1133244, at *8 (quoting *Alice*, 134 S. Ct. at 2360) (alteration in

14  original).  There is simply nothing inventive about implementing on a computer the ancient

15  practice of organizing information or materials in containers according to rules and instructions.[16]

16  *See Alice*, 134 S. Ct. at 2358 (a patent must do more than simply state an abstract idea while

17  adding the words "apply it with a computer"); *see also MyMedicalRecords, Inc. v. Walgreen Co.*,

18  No. 2:13-CV-00631-ODW (SHx), 2014 WL 7339201, at *5 (C.D. Cal. Dec. 23, 2014) (holding

19  claims invalid that were directed to "nothing more than the performance of a long-known abstract

20  idea 'from the pre-Internet world' . . . on the Internet or using a conventional computer"); *Open

21  Text S.A. v. Alfresco Software Ltd.*, No. 13-CV-04843-JD, 2014 WL 4684429, at *4 (N.D. Cal.

22  Sept. 19, 2014) (holding as ineligible claims that were directed to a "computer-driven method to

23  engage in [a] commonplace and time-honored practice"); *Jericho*, 2015 WL 2165931, at *6

24  (finding claims ineligible where the patent addressed a "problem [that] existed before modern

25  computing and the internet existed and the claimed invention simply use[d] standard computing

26  and communication equipment and procedures to implement the abstract idea").

---

27  [16]     Indeed, the organizational practices claimed pre-date both the Internet and computers.  *Cf.*
        *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) (analyzing

28        patent addressing challenge "particular to the Internet").

---

3.      The Dependent Claims of the '536 Patent Add Only Trivial Limitations
Insufficient to Confer Patentability

The various dependent claims of the '536 patent also fail the Section 101 test because they do not add meaningful limitations that either remove the claims from the realm of abstract ideas or impart an inventive concept.

The limitations added by dependent Claims 3-8 do nothing more than identify additional generic registers, and Claims 9-12 merely add means-plus-function limitations for conventional interactions among components ("acting upon," "allowing interaction," "gathering information," and "reporting information").  Similarly, Claim 13 recites a system of rules that define the interactions among containers, but it does not define the system or the rules.  And finally, Claim 14 specifies the items that can be contained in the information element—generic components such as text, graphic images, audio, video, bits, and numbers—none of which is inventive or unconventional.  Again, the addition of such generic computer components and functions does not result in an inventive concept for the purposes of patent eligibility.  *See Alice*, 134 S. Ct. at 2358. Moreover, the claims are so vague and broad that they again underscore the preemption concern raised by the Supreme Court.  *Id.* at 2354-55.

Reading the '536 patent claim elements both individually and as an ordered combination, they merely describe a computer-implemented way of organizing information according to certain rules and instructions—an unpatentable abstract idea under Section 101.  *See Hewlett Packard*, 2015 WL 1133244, at *8 (holding that when the structures "are merely generic computer components, [the claim] of the patent recites nothing more than organizing the information in a repository into a hierarchy and allowing the user to access it that way.  Undoubtedly, this would be an unpatentable abstract idea").  The Court should therefore hold that the claims of the '536 patent are invalid because they are directed to ineligible subject matter.

V.      **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss these cases with prejudice because, as a matter of law, under the controlling precedent of the Supreme

Court and Federal Circuit, the patents-in-suit claim ineligible subject matter under 35 U.S.C. § 101.

Dated: June 1, 2015

Respectfully submitted,

_____ /s/ Patrick E. King _____

PATRICK E. KING

PATRICK E. KING (CA Bar No. 211975)
pking@stblaw.com
JEFFREY E. DANLEY (CA Bar No. 238316)
jdanley@stblaw.com
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, California 94304
Telephone: (650) 251-5000
Facsimile:  (650) 251-5002

*Attorneys for Defendant Apple Inc.*

_____ /s/ Beth A. Larigan _____

Jamie H. Kitano (SBN: 268078)
jkitano@shb.com
Andrew Chang (SBN: 222309)
achang@shb.com
SHOOK, HARDY & BACON L.L.P.
One Montgomery, Suite 2700
San Francisco, California 94104-4505
Telephone:     415.544.1900
Facsimile:      415.391.0281

B. Trent Webb (*Pro Hac Vice*)
bwebb@shb.com
John D. Garretson (*Pro Hac Vice*)
jgarretson@shb.com
Chrissie Guastello (*Pro Hac Vice*)
cguastello@shb.com
Beth A. Larigan  (*Pro Hac Vice*)
blarigan@shb.com

SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone:     816.474.6550
Facsimile:      816.421.5547

Attorney for Defendants
SPRINT NEXTEL CORPORATION,
SPRINT COMMUNICATIONS COMPANY
L.P., SPRINT SPECTRUM, L.P., AND
SPRINT SOLUTIONS, INC.

1

                                        _____*/s/ Christopher Stretch*_____

2       Christopher Stretch
        CHRISTOPHER STRETCH
3       cstretch@ksrh.com
        KELLER, SLOAN, ROMAN & HOLLAND
4       LLP
        555 Montgomery Street, 17th Floor
5       San Francisco, CA  94111
        Tel.    (415) 249-8330
6       Fax:    (415) 249-8333

7       ATTORNEYS FOR DEFENDANT
        FACEBOOK, INC.
8

9                                       _____*/s/ Eric P. Carnevale*_____
        Karen Boyd (State Bar No. 189808)
10      TURNER BOYD LLP
        2570 W. El Camino Real
11      Suite 380
        Mountain View, CA 94040
12      Tel:  (650) 521-5930
        Fax:  (650) 521-5931
13              boyd@turnerboyd.com

14
        Craig R. Smith (*pro hac vice*)
15      William J. Seymour (*pro hac vice*)
        Eric P. Carnevale (*pro hac vice*)
16      LANDO & ANASTASI, LLP
        Riverfront Office Park
17      One Main Street – 11th Floor
        Cambridge, MA 02142
18      Tel:  (617) 395-7000
        Fax: (617) 395-7070
19              csmith@lalaw.com
                wseymour@lalaw.com
20              ecarnevale@lalaw.com

21      *Attorneys for Defendant Foursquare Labs, Inc.*

22

23

24

25

26

27

28

1

*/s/ Thomas L. Duston*

2

Thomas L. Duston (admitted *pro hac vice*)
Scott Sanderson (admitted *pro hac vice*)

3

Tron Fu (admitted *pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP

4

233 S. Wacker Drive
6300 Willis Tower

5

Chicago, IL  60606
(312) 474-6300

6

TDuston@marshallip.com
SSanderson@marshallip.com

7

TFu@marshallip.com

8

*Attorneys for Defendant, GROUPON, Inc.*

9

*/s/ Jordan A. Sigale*

10

JORDAN A. SIGALE

11

JORDAN A. SIGALE (admitted pro hac)
jsigale@dunlapcodding.com

12

DUNLAP CODDING, P.C.
222 Merchandise Mart Plaza, Suite 1225

13

Chicago, Illinois 60654
Telephone: 312- 651-6744

14

Facsimile:  312-546-6284

15

LAURA A. WYTSMA (Cal. Bar No. 189527)

16

lwytsma@loeb.com
LOEB & LOEB LLP

17

10100 Santa Monica Boulevard, Suite 2200
Los Angeles, CA 90067

18

Telephone: 310.282.2000
Facsimile: 213.947.4561

19

20

*Attorneys for LivingSocial, Inc.*

21

22

23

24

25

26

27

28

1

        */s/ Nathan K. Cummings*

2

Matthew J. Brigham (CA State Bar No. 191428)
mbrigham@cooley.com

3

COOLEY LLP
Five Palo Alto Square

4

3000 El Camino Real
Palo Alto, CA 94306-2155

5

Telephone:  (650) 843-5000
Facsimile:     (650) 857-0663

6

Christopher C. Campbell (*pro hac vice*)

7

ccampbell@cooley.com
Nathan K. Cummings (*pro hac vice*)

8

ncummings@cooley.com
COOLEY LLP

9

One Freedom Square – Reston Town Center
11951 Freedom Drive

10

Reston, Virginia 20190-5656
Telephone:  703 456-8000

11

Facsimile:  703 456-8100

12

*Attorneys for Defendant Millennial Media, Inc.*

13

        */s/ Jeffrey M. Connor*

14

ROBERT J. ARTUZ (State Bar No. 227789)

15

rartuz@kilpatricktownsend.com
MATTHEW J. MEYER (State Bar No. 284578)
mmeyer@kilpatricktownsend.com

16

KILPATRICK TOWNSEND & STOCKTON
LLP

17

1080 Marsh Road
Menlo Park, CA 94025

18

Telephone: 650-326-2400
Facsimile: 650-326-2422

19

JEFFREY M. CONNOR (pro hac vice)

20

jmconnor@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON

21

LLP
1400 Wewatta Street, Suite 600

22

Denver, CO 80202
Telephone: 303-571-4000

23

Facsimile: 303-571-4321

24

Attorneys for Defendants

25

YELP INC. and TWITTER, INC.

26

27

28

1      Pursuant to Civil Local Rule 5-1(i)(3), all signatories concur in the filing of this

2  document.

3  Dated:  June 1, 2015                          By:    /s/ Patrick E. King

4                                                       Patrick E. King

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28