1   PATRICK E. KING (CA Bar No. 211975)
    pking@stblaw.com
2   JEFFREY E. DANLEY (CA Bar No. 238316)
    jdanley@stblaw.com
3   BRANDON C. MARTIN (CA Bar No. 269624)
    bmartin@stblaw.com
4   SIMPSON THACHER & BARTLETT LLP
    2475 Hanover Street
5   Palo Alto, California 94304
    Telephone: (650) 251-5000
6   Facsimile:  (650) 251-5002

7   *Attorneys for Defendant Apple Inc.*

8   [See signature block for list of additional counsel]

9

10              UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                  SAN JOSE DIVISION

13

14   EVOLUTIONARY INTELLIGENCE, LLC,        Case No. 13-cv-04513-RMW

                         Plaintiff,          **DEFENDANTS' REPLY IN SUPPORT**
15                                           **OF MOTION TO DISMISS AND**
                                             **MOTION FOR JUDGMENT ON THE**
16              v.                           **PLEADINGS**

17   SPRINT NEXTEL CORPORATION, *et al.*,    Date:    July 28, 2015
                                             Time:    10:00 a.m.
18                        Defendants.        Judge:   Honorable Ronald M. Whyte
                                             Room:    Courtroom 6, 4th Floor
19

20

21   EVOLUTIONARY INTELLIGENCE, LLC,        Case No. 13-cv-04201-RMW

                         Plaintiff,
22

23              v.                           Related with 13-cv-04513-RMW

24   APPLE INC.,

                         Defendant.
25

26

27

28

| | |
|---|---|
| EVOLUTIONARY INTELLIGENCE, LLC, | Case No. 13-cv-04202-RMW |
| Plaintiff, | |
| v. | Related with 13-cv-04513-RMW |
| FACEBOOK, INC., | |
| Defendant. | |
| EVOLUTIONARY INTELLIGENCE, LLC, | Case No. 13-cv-04203-RMW |
| Plaintiff, | |
| v. | Related with 13-cv-04513-RMW |
| FOURSQUARE LABS, INC., | |
| Defendant. | |
| EVOLUTIONARY INTELLIGENCE, LLC, | Case No. 13-cv-04204-RMW |
| Plaintiff, | |
| v. | Related with 13-cv-04513-RMW |
| GROUPON, INC., | |
| Defendant. | |
| EVOLUTIONARY INTELLIGENCE, LLC, | Case No. 13-cv-04205-RMW |
| Plaintiff, | |
| v. | Related with 13-cv-04513-RMW |
| LIVINGSOCIAL, INC., | |
| Defendant. | |
| EVOLUTIONARY INTELLIGENCE, LLC, | Case No. 13-cv-04206-RMW |
| Plaintiff, | |
| v. | Related with 13-cv-04513-RMW |
| MILLENNIAL MEDIA, INC., | |
| Defendant. | |

EVOLUTIONARY INTELLIGENCE, LLC,

                        Plaintiff,

            v.

TWITTER, INC.,

                        Defendant.

Case No. 13-cv-04207-RMW

Related with 13-cv-04513-RMW

EVOLUTIONARY INTELLIGENCE, LLC,

                        Plaintiff,

            v.

YELP, INC.,

                        Defendant.

Case No. 13-cv-03587-RMW

Related with 13-cv-04513-RMW

## <u>TABLE OF CONTENTS</u>

ARGUMENT ........................................................................................................................ 1

I.      THE PATENTS FAIL THE *ALICE* TEST FOR ELIGIBILITY UNDER § 101 ................. 1

        A.      Step One: The Patents Are Directed to the Abstract Idea of Processing Data .......... 1

        B.      Step Two: The Claims Contain No Inventive Concept ............................................. 3

                1.      Evo Intel's "Dynamic" Information Model Theory Does Not Describe
                        an Inventive Concept ...................................................................................... 3

                2.      The Taylor Declaration Should Be Disregarded ......................................... 6

                3.      The Claims Recite Generic Computer Functions That Do Not Make the
                        Abstract Idea Patentable ................................................................................ 8

II.     POST-*ALICE*, THE APPLICANT'S "COMPUTER-IMPLEMENTED"
        AMENDMENT DOES NOT RENDER THE CLAIMS PATENT ELIGIBLE .................. 9

III.    THE § 101 ISSUE IS RIPE FOR RESOLUTION ............................................................ 10

CONCLUSION ................................................................................................................... 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alice Corp. Pty. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ................................................................ passim

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
    No. 2014-1139, 2015 WL 3634649 (Fed. Cir. June 12, 2015) ................................ 6

*Aristocrat Techs. Austl. Pty. Ltd. v. Int'l Game Tech.*,
    709 F.3d 1348 (Fed. Cir. 2013) .............................................................. 7

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
    133 S. Ct. 2107 (2013) ..................................................................... 5

*Bancorp Servs., LLC v. Sun Life Assur. Co. of Can. (U.S.)*,
    687 F.3d 1266 (Fed. Cir. 2012) ............................................................. 4

*Bascom Research, LLC v. LinkedIn, Inc.*,
    No. 12-CV-06293-SI, 2015 WL 149480 (N.D. Cal. Jan. 5, 2015) ....................... 7, 8, 9, 10

*Bilski v. Kappos*,
    561 U.S. 593 (2010) ..................................................................... 1, 2

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014) ........................................................... 5, 9

*Cal. Inst. of Tech. v. Hughes Commc'ns Inc.*,
    59 F. Supp. 3d 974 (C.D. Cal. 2014) .................................................... 1, 3, 4

*Cogent Med., Inc. v. Elsevier Inc.*,
    No. C-13-4479-RMW, 2014 WL 4966326, (N.D. Cal. Sept. 30, 2014) ...................... 3, 5, 11

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) .......................................................... passim

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ........................................................ 3, 4, 5, 8

*Dealertrack, Inc. v. Huber*,
    674 F.3d 1315 (Fed. Cir. 2012) ............................................................. 1

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
    758 F.3d 1344 (Fed. Cir. 2014) ............................................................. 2

*Enfish v. Microsoft Corp.*,
    56 F. Supp. 3d 1167 (C.D. Cal. 2014) ....................................................... 7

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
    896 F.2d 1542 (9th Cir. 1989) .............................................................. 8

*Hewlett Packard Co. v. ServiceNow, Inc.*,
    No. 14-CV-00570-BLF, 2015 WL 1133244, (N.D. Cal. Mar. 10, 2015) ............................. 9

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
No. 2014-1506, 2015 WL 4068798 (Fed. Cir. July 6, 2015) ........................................... passim

*Internet Patents Corp. v. Active Network, Inc.*,
No. 2014-1048, 2015 WL 3852975 (Fed. Cir. June 23, 2015) ................................................. 5

*Jericho Sys. Corp. v. Axiomatics, Inc., et al.*,
No. 3:14-CV-2281-K, 2015 WL 2165931 (N.D. Tex. May 7, 2015) ..................................... 9

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
132 S. Ct. 1289 (2012) ............................................................................................... 3, 6, 9

*Morsa v. Facebook, Inc.*,
No. SACV 14-161-JLS (JPRx), 2014 WL 7641155 (C.D. Cal. Dec. 23, 2014) ..................... 11

*Multicare Health Sys. v. Lexington Ins. Co.*,
539 F. App'x 768 (9th Cir. 2013) .......................................................................................... 7

*OIP Techs., Inc. v. Amazon.com, Inc.*,
No. 2012-1696, 2015 WL 3622181 (Fed. Cir. June 11, 2015) ........................................ 4, 11

*Pillsbury, Madison & Sutro v. Lerner*,
31 F.3d 924 (9th Cir. 1994) .................................................................................................... 7

*Regents of Univ. of N.M. v. Knight*,
321 F.3d 1111 (Fed. Cir. 2003) .............................................................................................. 6

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*,
No. 1:14-cv-08053, 2015 WL 4184486 (N.D. Ill. July 10, 2015) ......................................... 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ............................................................................................................... 8

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) .............................................................................................. 11

*Ultramercial, LLC v. WildTangent, Inc.*,
No. 14-1392, 2015 WL 2457913 (U.S. June 29, 2015) ....................................................... 11

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
520 U.S. 17 (1997) ............................................................................................................... 10

*Wolf v. Capstone Photography, Inc.*,
No. 2:13-CV-09573, 2014 WL 7639820 (C.D. Cal. Oct. 28, 2014) ...................................... 5

## <u>FEDERAL STATUTES</u>

35 U.S.C. § 101 ............................................................................................................... passim

35 U.S.C. § 102 ..................................................................................................................... 5

35 U.S.C. § 103 ................................................................................................................... 10

37 C.F.R. § 42.104 ................................................................................................................. 5

## ARGUMENT

### I.    THE PATENTS FAIL THE *ALICE* TEST FOR ELIGIBILITY UNDER § 101

#### A.    Step One: The Patents Are Directed to the Abstract Idea of Processing Data

Evo Intel characterizes its patents as "cover[ing] particular types of computerized systems and methods for ***processing containerized data***." Opp'n at 19:17-18 (emphasis added). Defendants described Evo Intel's patents in very similar terms, characterizing the patents as claiming the abstract ideas of using a processor to search historical data (the '682 patent) and to organize and manage data in containers according to certain rules and instructions (the '536 patent). Mot. at 12:6-7, 16:19-20. Under either characterization, the patents are directed to abstract ideas.

Contrary to Evo Intel's criticism, Defendants have not "mischaracteriz[ed]" and "oversimpl[ified]" the invention in connection with step one of the *Alice* analysis. Opp'n at 19:19-20:2. Even *California Institute of Technology v. Hughes Communications Inc.*, 59 F. Supp. 3d 974 (C.D. Cal. 2014) ("*Caltech*"), a case relied upon by Evo Intel, does not support Evo Intel's position. As that court noted: "The characterization of the claim is essential to the § 101 inquiry. . . . ***Courts should recite a claim's purpose at a reasonably high level of generality***. Step one is a sort of 'quick look' test, the object of which is to identify a risk of preemption and ineligibility." *Id.* at 991-92 (emphasis added). Courts use this "quick look" test to determine the "basic concept" of the patent. *See, e.g.*, *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2356 (2014) (stating that the claims in *Bilski v. Kappos*, 561 U.S. 593, 611 (2010), described "the basic concept of hedging, or protecting against risk"); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (stating the claims were drawn to the "concept of data collection, recognition, and storage"); *see also Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (reducing claimed process to its "simplest form"). In defining, the "basic concept" of a patent, courts routinely use language not found in the claims.[1]

---

[1]   In fact, Evo Intel's own characterization of the patents' basic concepts also uses terms—"processing containerized data," "processing constantly changing information," "processing of dynamic information regarding external time and location," "dynamic modifications," and "processing of dynamic information relating to search queries"—found nowhere in the claims. Opp'n at 4:19, 7:23, 4:22, 15:15, 19:19. The patents and claims never use "constant,"

*See, e.g.*, *Alice*, 134 S. Ct. at 2352 (holding that "the claims at issue are drawn to the abstract idea of intermediated settlement," where none of the asserted claims used that term); *Bilski*, 561 U.S. at 611-12 (holding that the patent application's concept was "hedging," a word that never appeared in the claims).

Evo Intel fails to explain how its own characterization—"processing containerized data"—is not itself abstract.  *See* Opp'n at 18:34-21:4 (addressing *Alice* step one); *see also id.* at 1:1-2:9, 4:19-10:18.  Processing data is unquestionably abstract, as humans were processing data long before computers were invented.  *See Content Extraction*, 776 F.3d at 1347 (storing and collecting data is a function that humans have always performed); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) (process of gathering and combining data is abstract).  "Containers" such as ledgers, files, books, and libraries have stored data for centuries.  Computer technology has allowed for the more efficient processing of electronic versions of these "containers" using well-known methods and concepts.  Thus, processing containerized data is also abstract.

Evo Intel repeatedly invokes the notion of "dynamic" processing, as if it were a sufficient talisman to ward off patent ineligibility.  But processing of changing, dynamic data is hardly new to computing.  In fact, last week the Federal Circuit found strikingly similar claims directed to processing "dynamic information" ineligible for patenting.  In *Intellectual Ventures I LLC v. Capital One Bank (USA)*, No. 2014-1506, 2015 WL 4068798 (Fed. Cir. July 6, 2015), the Federal Circuit invalidated claims directed to providing "dynamic" data by "customizing web page content as a function of navigation history and information known about the user."  *Id.* at *4-5.  Notwithstanding an explicit "dynamic limitation" in the claims, the Federal Circuit held that "tailoring content based on the viewer's location or address" and "[t]ailoring content based on the time of day" of viewing were no more than abstract ideas.  *Id.*

---

"constantly," "constantly changing," or "dynamic modification"; and "containerized," "containerized data," and "dynamic information" are found nowhere in the patents' claims.

Similarly, in *Cogent Medicine, Inc. v. Elsevier Inc*., No. C-13-4479-RMW, 2014 WL 4966326, at *1 (N.D. Cal. Sept. 30, 2014), this Court granted a motion to dismiss invalidating patent claims directed to the dynamic process of "***automatically updating*** [an electronic] folder with the latest information." *Id.* (emphasis added).  The Court compared the patent's claims to the "longstanding practice of keeping an ***updated*** set of folders." *Id.* at *4 (emphasis added). Reasoning that the asserted patent merely "describe[d] a computerized method of performing the same task," this Court found the claimed invention abstract under the first step of *Alice*. *Id.* The same result is called for here: Updating information based on past search results or based on an external time or location is abstract under step one of *Alice*.  Thus, under both *Intellectual Ventures* and *Cogent*, Evo Intel's patents are directed to abstract ideas.

**B.    Step Two: The Claims Contain No Inventive Concept**

Evo Intel focuses its Opposition almost exclusively on step two of the *Alice* analysis—whether its patents supply an "inventive concept."  *Alice*, 134 S. Ct. at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)).  They do not.

1.    Evo Intel's "Dynamic" Information Model Theory Does Not
          Describe an Inventive Concept

Evo Intel argues that the patents disclose an invention for overcoming purported problems associated with something it calls the "static information model."  Opp'n at 2:11-4:18. Evo Intel contends that its claims, therefore, embody a patent-eligible "inventive concept" that improves the functioning of computers, citing *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), and *Caltech*.

Specifically, Evo Intel states that its invention "could enable a computer to provide a user a dynamically changing list of restaurants that depends on the user's location, the time of day, ratings provided by other users, and the user's browsing history," as well as "store historical information to ensure that future processing for that user and other users is handled even more efficiently."  Opp'n at 4:3-7.

Neither *DDR Holdings* nor *Caltech* renders claims directed to such mundane, routine operations of a computer patent eligible.  In *DDR*, the Federal Circuit stated that "the

1   claims at issue . . . specify how interactions with the Internet are manipulated to yield a desired

2   result" in a way "that overrides the routine and conventional sequence of events ordinarily

3   triggered by the click of a hyperlink." 773 F.3d at 1258-59.  Thus, as the Federal Circuit recently

4   noted, "[t]he patent at issue in [*DDR*] dealt with a problem ***unique*** to the Internet." *Intellectual*

5   *Ventures*, 2015 WL 4068798, at *6 (emphasis added) (citation omitted).  Similarly, in *Caltech* the

6   district court held that the problem addressed by the patents was unique to computing—providing

7   error correction capabilities to data transmissions over a network. *See* 59 F. Supp. 3d at 1000-01.

8   The court emphasized the distinction between patentable "computing solutions to today's

9   computer problems" and non-patentable "inventions that simply apply longstanding ideas to a

10  computer environment." *Id.* at 1000.

11          In contrast, Evo Intel's patents, directed to employing time, location and history

12  information in connection with data processing, encompass nothing more than the long-standing

13  and routine activities of searching, updating, and modifying data on a "computer network

14  operating in its normal, expected manner" using conventional computers and computer

15  components. *DDR*, 773 F.3d at 1258 (concluding that such subject matter is not patent eligible).

16  Searching for a nearby place to eat, or for a list of restaurants open at a particular hour, or for those

17  most frequented by others, does not solve a problem unique to any field of computing.

18          People have long used printed restaurant guides (*e.g.*, Zagat guides) that organize

19  restaurants by, for example, cuisine, city, and neighborhood.  Such sources have long provided

20  ratings and reviews.  That Evo Intel's patents use a computer to facilitate the process does not

21  make them patent eligible. *See, e.g.*, *Bancorp Servs., LLC v. Sun Life Assur. Co. of Can. (U.S.)*,

22  687 F.3d 1266, 1278 (Fed. Cir. 2012) ("[T]he fact that the required calculations could be

23  performed more efficiently via a computer does not materially alter the patent eligibility of the

24  claimed subject matter."); *Intellectual Ventures*, 2015 WL 4068798, at *3 ("Nor, in addressing the

25  second step of *Alice*, does claiming the improved speed or efficiency inherent with applying the

26  abstract idea on a computer provide a sufficient inventive concept."); *OIP Techs., Inc. v.*

27  *Amazon.com, Inc.*, No. 2012-1696, 2015 WL 3622181, at *3 (Fed. Cir. June 11, 2015) ("[R]elying

28

on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible."); *Cogent*, 2014 WL 4966326, at *4 (holding that "using a computer to identify and supply new medical literature merely automates what was previously done manually" and is not inventive); *Wolf v. Capstone Photography, Inc.*, No. 2:13-CV-09573, 2014 WL 7639820, at *13 (C.D. Cal. Oct. 28, 2014) ("That generic computer technology allows for a more efficient process does not confer patent eligibility.").

In *DDR*, the Federal Circuit found the challenged claims patent eligible because they "***specif[ied] how*** . . . to yield a desired result" by "overrid[ing] the routine and conventional" operation of the claimed technology.  773 F.3d at 1258-59 (emphasis added).  Evo Intel nowhere shows that its claims specify any particular solution, let alone one that "overrides . . . routine and conventional" computer operations.  *Id.*  Evo Intel touts the alleged advances embodied in its claims, then cites to a conclusory declaration of its expert that fails to address the specific language of the claims.  Nowhere does Evo Intel point to claim language that is anything other than a purely functional description of conventional concepts of data processing (*e.g.*, using data labels to govern the interaction of various data).  The Federal Circuit has made clear that such claims are not patent eligible.  *See Internet Patents Corp. v. Active Network, Inc.*, Nos. 2014-1048, 2014-1061, 2014-1062, 2014-1063, 2015 WL 3852975, at *5 (Fed. Cir. June 23, 2015) (invalidating claims as not directed to patent-eligible subject matter that fail to describe how to accomplish the result intended by "the essential innovation" identified by the patentee).

Evo Intel appeals to this Court, asking it to allow Evo Intel to retain its claims because infringement is not ***inevitable***.  Opp'n at 22:10-11 ("There are many ways to process containerized data without infringing the claims.").[2]  The Federal Circuit, however, has recently

---

[2]   Evo Intel's repeated references to the *inter partes* review ("IPR") proceedings, *see, e.g.*, Opp'n at 2:6, 10:19-12:19, 18:17-22, 19:11-18, 22:12-22, 25:7-21, are not relevant to the patentability of the asserted claims for several reasons.  As an initial matter, Section 101 challenges cannot be brought before the Patent Trial and Appeal Board, so the PTAB never considered the issues before the Court in this Motion.  *See* 37 C.F.R. § 42.104.  Further, the PTAB's inquiry under 35 U.S.C. § 102 is not relevant because, contrary to Evo Intel's argument, a "[g]roundbreaking, innovative, or even brilliant discovery does not by itself satisfy the [Section] 101 inquiry."  *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2117 (2013); *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014).

emphasized that "[w]hile preemption may signal patent ineligible subject matter, ***the absence of complete preemption does not demonstrate patent eligibility.***" *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, No. 2014-1139, 2015 WL 3634649, at *7 (Fed. Cir. June 12, 2015) (emphasis added).  The Supreme Court recognized that a "wholly generic computer implementation is not generally the sort of 'additional featur[e]'" that would allay a court's preemption concern or "provide[] any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" *Alice,* 134 S. Ct. at 2358 (quoting *Mayo*, 132 S. Ct. at 1297) ("abstract idea" bracketed in original).  The ability to process data in an adaptable manner is a "building block[] of human ingenuity" that this Court should not "improperly t[ie] up." *Alice*, 134 S. Ct. at 2354.[3]  Evo Intel's vague references to the "significant limitations," Opp'n at 9:6, 18:16, in the patent claims and its rote recitation of claim elements that consist of fundamental computer components, Opp'n at 3:11-23, 5:10-7:19, 8:14-10:14, 17:13-18, fall woefully short of defining the inventive concept required by *Alice* and its progeny.  This deficiency is especially true given that Evo Intel failed to explain how these claimed fundamental elements, either individually or collectively, perform anything other than their normal and expected functions.  *See, e.g.*, *Content Extraction*, 776 F.3d at 1349 (rejecting argument that inventive concept could be found because additional claim limitations were "well-known, routine, and conventional functions of scanners and computers").

## 2.    The Taylor Declaration Should Be Disregarded

Evo Intel tries to manufacture issues of fact by submitting a Declaration from Scott Taylor (the "Taylor Declaration" or "Taylor Decl.").  Dkt. No. 193-1.  Evo Intel argues that the

---

3    Evo Intel's reliance on the U.S. Patent and Trademark Office's 2014 Interim Guidance on Patent Subject Matter Eligibility is unavailing.  First, the Guidance itself is titled Interim, merely serving as a stop-gap measure after *Alice*.  Second, rules promulgated by an administrative agency are not binding on this Court.  *See, e.g.*, *Regents of Univ. of N.M. v. Knight*, 321 F.3d 1111, 1121 (Fed. Cir. 2003) ("The [Manual of Patent Examining Procedure] sets forth PTO procedures; it is not a statement of law.").  Third, the Interim Guidance states that (1) it is for the use of "USPTO personnel," that is, not the courts, and (2) the Interim Guidance "will be updated in view of developments in the *case law* and in response to public feedback."  *See* USPTO, 2014 Interim Guidance on Patent Subject Matter Eligibility, http://www.uspto.gov/patent/laws-and-regulations/examination-policy/2014-interim-guidance-subject-matter-eligibility-0 (emphasis added).

1    patents-in-suit are inventive because its expert says so.  But the Taylor Declaration is not only

2    improper to consider as part of a FRCP 12(b)(6)-12(c) motion on the pleadings, it is also rife with

3    conclusory statements and unsupported by accompanying facts; few if any of these statements

4    analyze the actual limitations of the claims as distinct from general statements found in the

5    specification.  Simply said, it adds nothing to the analysis of this Motion and is properly

6    disregarded.  *See, e.g.*, Taylor Decl. ¶ 30 ("The dependent claims add significant limitations.").

7    Courts routinely decline to credit such conclusory allegations with regard to the purported

8    inventiveness of the patents and the meaning of the claim terms.[4]

9            The decision in *Bascom Research, LLC v. LinkedIn, Inc.*, supports the conclusion

10   that the Taylor Declaration need not be given any weight.  No. 12-CV-06293-SI, 2015 WL

11   149480 (N.D. Cal. Jan. 5, 2015).  In *Bascom*, the court addressed an expert declaration stating that

12   "separating link relationships from documents allows the documents to be 'more easily located.'"

13   *Id.* at *11.  Aside from the fact that the court found the expert's analysis "largely conclusory," the

14   court also found that the statements by the expert did not demonstrate the existence of inventive

15   elements in the claim because "[e]fficient location of data is an unremarkable feature of a data

16   storage system, especially in the computing age."  *Id.* (quoting *Enfish LLC v. Microsoft Corp.*, 56

17   F. Supp. 3d 1167, 1176 (C.D. Cal. 2014) (invalidating two patents for information management

18   and database system because the "claims are addressed to the abstract purpose of storing,

19   organizing, and retrieving memory in a logical table.  This abstract purpose does not become

20   tangible because it is necessarily limited to the technological environment of computers.")).  Here,

21   the Taylor Declaration similarly asserts that the claims of the patents-in-suit "focus on" processing

22   information or search queries "in order to make future processing . . . by computers more

---

23

24   [4]   *See, e.g., Multicare Health Sys. v. Lexington Ins. Co.*, 539 F. App'x 768, 772 (9th Cir. 2013)
     ("The hospital . . . points us to a declaration from an insurance consultant.  However, the
25   consultant merely offers conclusory statements, unsupported by any facts or examples.")
     (*citing Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994) ("[C]onclusory
26   allegations without more are insufficient to defeat a motion to dismiss for failure to state a
     claim.")); *Aristocrat Techs. Austl. Pty. Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1360 (Fed.
27   Cir. 2013) ("Aristocrat also claims that the district court 'improperly disregarded' its expert's
     declaration as conclusory.  We agree with the district court's characterization of Mr. Crevelt's
28   declaration and see nothing improper in discounting conclusory statements as 'not useful.'").

---

efficient." Taylor Decl. at ¶ 40.  This conclusory statement "does not show that the patents improve the functioning of any computer," *Bascom*, 2014 WL 149480, at * 11, and therefore is not enough to show inventiveness.[5]

### 3. The Claims Recite Generic Computer Functions That Do Not Make the Abstract Idea Patentable

Evo Intel accuses Defendants of analyzing only the individual elements of the claims and argues that the Motion fails to focus on the "specific combinations required by the claims and the manner in which the constituents must interact."  Opp'n at 18:9-22.  Evo Intel, however, fails to explain how the claims as a whole provide any "inventive concept" as defined by *Alice*.  In fact, Evo Intel concedes that the patents are comprised of "fundamental structures" such as "containers, registers, and gateways."  Opp'n at 17:16.  Thus, the individual elements of the claims are simply generic computer components with names that describe the function of the components and impart no inventiveness to the patents.  Because the individual elements function in their ordinary and expected manner, the collection of these individual generic components also provides no inventive concept.  *See DDR*, 773 F.3d at 1258-59.  Evo Intel insists that the claims are inventive because they include "significant structural limitations," Opp'n at 6:17, and "significant limitations" *id.* at 9:6, 18:16, "including the specific types of registers that containers must have," *id.* at 18:17, but then supports this statement only by reciting the limitations of the claims.  *Id.* at 6:17-7:22, 9:6-25.  The combination of the well-understood, routine, and conventional components recited in the claims, taken as a whole, cannot form the basis for patentability.  *See, e.g.,* Mot. at 12:19-16:16; 19:15-22:24.

Moreover, adding adjectives to the names of fundamental computing elements does not make them inventive structures.  The idiosyncratic names used in the claims of the patents-in-

---

[5]   Evo Intel's reliance on the Taylor Declaration is also inappropriate because no other materials beyond the pleadings may be considered here.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).  When reviewing a motion to dismiss, courts may consider the complaint, judicially noticed facts, and documents incorporated by reference in the complaint.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  Evo Intel neither attached the Taylor Declaration to its Complaints nor incorporated it by reference.

suit merely identify functional attributes of what Evo Intel has conceded are generic computer

components.  Opp'n at 17:12-19; *see also Bascom*, 2015 WL 149480, at *7 (holding ineligible

under Section 101 claims that patentee argued "narrowly claim a *specific type* of data structure for

linking data") (emphasis added)*; Hewlett Packard Co. v. ServiceNow, Inc.*, No. 14-CV-00570-

BLF, 2015 WL 1133244, at *7, *9 (N.D. Cal. Mar. 10, 2015); *Jericho Sys. Corp. v. Axiomatics,

Inc., et al.*, No. 3:14-CV-2281-K, 2015 WL 2165931, at *7 (N.D. Tex. May 7, 2015).[6]  "Stripped

of the technical jargon that broadly describe non-inventive elements . . . and further shorn of the

typically obtuse syntax of patents, the patents here," even under Evo Intel's own characterization,

"really only cover an abstract concept" of processing containerized data.  *Smart Sys. Innovations,

LLC v. Chi. Transit Auth.*, No. 1:14-cv-08053, 2015 WL 4184486, at *4 (N.D. Ill. July 10, 2015).

And even if the claims did recite specific types of structures—they do not—the Federal Circuit has

held this is not enough to vest a patent that claims an abstract idea with the inventive concept

required for patentability: "The dependent claims' narrowing to particular types of such

relationships, themselves familiar, does not change the analysis."  *buySAFE*, 765 F.3d at 1355.

Specifically, *buySAFE* held that narrowing a "long-familiar" abstract idea in this manner does not

make it "non-abstract" for Section 101 purposes.  *Id.* (citing *Mayo*, 132 S. Ct. at 1301).  Similarly

here, incorporating generic, well-known components into otherwise abstract claims cannot save

them from invalidity under Section 101.

## II.    POST-*ALICE*, THE APPLICANT'S "COMPUTER-IMPLEMENTED" AMENDMENT DOES NOT RENDER THE CLAIMS PATENT ELIGIBLE

Evo Intel argues that during prosecution of the '682 patent, limitations were made

to the claims to overcome the Section 101 objection.  *See* Opp'n at 23:9-24:6.  Where the patent

holder is unable to establish the reason behind an amendment, the court should presume that the

---

[6]  The analysis of the patents-in-suit rises and falls with the independent claims because Evo Intel's Opposition lacks any detailed analysis of the dependent claims other than a conclusory recitation of the "significant limitations" in their dependent claims. Opp'n at 6:17-7:22, 9:6-10:18.  Accordingly, it is sufficient to look to the independent claims as representative with respect to the Section 101 analysis. *See Content Extraction*, 776 F.3d at 1348 (The court need not address the patent eligibility of each claim individually if the claims of the asserted patents are "substantially similar in that they recite little more than the same abstract idea.").  As explained in Defendants' Motion, none of the asserted claims contains an inventive concept.

1   purpose was substantially related to the rejection requiring the amendment.  *See Warner-Jenkinson*

2   *Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40-41 (1997).  Here, the record is clear that the

3   examiner allowed the claims only after amending the claims to recite "using the computer" in a

4   December 2009 examiner's amendment.  The Section 101 rejection was the only issue remaining

5   in December 2009, and the "using the computer" limitation was the only change made to the

6   claims at that time.  Declaration of Patrick E. King, Ex. C (Dkt. Nos. 188-4, 188-5) ("Ex. C") at

7   150-53.  While this amendment may have been enough at the time, merely citing a generic

8   computer is no longer sufficient under *Alice* and its progeny.  *See Alice*, 134 S. Ct. at 2358;

9   *Bascom*, 2015 WL 149480, at *9-10.

10          The prosecution history also shows that the amendments Evo Intel identifies in its

11   Opposition as supposedly overcoming the Section 101 rejection were suggested by the applicant in

12   a Request for Continued Examination ("RCE") submitted in November 2009, a month ***before*** the

13   examiner's amendment that finally overcame the Section 101 rejection.  Ex. C at 121, 124-33.

14   The applicant specifically explained that the amendments—such as "searching the historical data"

15   and "encapsulating the identified containers in a new container"—sought to overcome the

16   rejection of several claims based on Section 103 as "unpatentable over Donohue in view of

17   Nizzari" and, additionally for some claims "further in view of Walker."  *Id.* at 135-40.  Contrary to

18   Evo Intel's argument, the applicant did ***not*** argue that the amendments helped the claims

19   overcome the Section 101 rejection and did ***not*** explain how the amendments "further enable[d]

20   the claim to overcome drawbacks associated with the static information model."  Opp'n at 24:2-6.

21   Put simply, Evo Intel's interpretation of the prosecution history stands contrary to the plain

22   language of the record and clear statements made by the examiner and applicant.

23   **III.    THE § 101 ISSUE IS RIPE FOR RESOLUTION**

24          Evo Intel argues that the Court may defer ruling on Defendants' motion until after

25   claim construction.  Opp'n at 24:18-25:21.  This argument should be rejected for the

26   straightforward reason that neither side has raised a claim construction dispute relevant to this

27   Motion.  In the absence of a claim construction dispute relevant to the Section 101 analysis, the

28

1    Court should proceed with determining whether the asserted patents are directed to patent-eligible

2    subject matter.  *See, e.g.*, *Content Extraction*, 776 F.3d at 1349; *Ultramercial, Inc. v. Hulu, LLC*,

3    772 F.3d 709, 714-15 (Fed. Cir. 2014) *cert. denied sub nom. Ultramercial, LLC v. WildTangent,*

4    *Inc.*, No. 14-1392, 2015 WL 2457913 (U.S. June 29, 2015).  Disagreements about how to express

5    the basic concepts of the patents under *Alice* step one do not constitute claim construction

6    disputes.  *See* Opp'n at 25:3.  For purposes of this Motion, Defendants do not dispute the only

7    claim constructions Evo Intel has mentioned.[7]  Opp'n at 25:7-21.

8           Accordingly, the Section 101 dispute is ripe for resolution now.  *See, e.g.*, *Cogent*,

9    2014 WL 4966326, at *3.  The Court may proceed with determining whether the asserted patents

10   are directed to patent-eligible subject matter based on the pleadings and the patents.  *See Content*

11   *Extraction*, 776 F.3d at 1349; *Ultramercial*, 772 F.3d at 714-15; *Cogent*, 2014 WL 4966326, at *3;

12   *Morsa v. Facebook, Inc.*, No. SACV 14-161-JLS (JPRx), 2014 WL 7641155, at *4-5 (C.D. Cal.

13   Dec. 23, 2014).  Nine different defendants and the Court should not be forced to expend further

14   resources as a result of Evo Intel's attempt to enforce facially invalid patents.  *See OIP Techs*.,

15   2015 WL 3622181, at *4 (Mayer, J., concurring) ("Addressing 35 U.S.C. § 101 at the outset not

16   only conserves scarce judicial resources and spares litigants the staggering costs associated with

17   discovery and protracted claim construction litigation, it also works to stem the tide of vexatious

18   suits brought by the owners of vague and overbroad business method patents.").

19                                    **<u>CONCLUSION</u>**

20          For the foregoing reasons, Defendants respectfully request that the Court dismiss

21   these cases with prejudice because the patents-in-suit claim ineligible subject matter under 35

22   U.S.C. § 101.

23

24

25

26

---

27   [7]    Regardless of the constructions used, Evo Intel's claims are still not patentable under Section
28          101.  Accordingly, for purposes of this Motion only, Defendants do not challenge Evo Intel's
            proposed constructions.

1

Dated: July 14, 2015

2

Respectfully submitted,

3

    _____/s/Patrick E. King_____

4

PATRICK E. KING

5

PATRICK E. KING (CA Bar No. 211975)
pking@stblaw.com
JEFFREY E. DANLEY (CA Bar No. 238316)

6

jdanley@stblaw.com
BRANDON C. MARTIN (CA Bar No. 269624)

7

bmartin@stblaw.com
SIMPSON THACHER & BARTLETT LLP

8

2475 Hanover Street
Palo Alto, California 94304

9

Telephone: (650) 251-5000
Facsimile:  (650) 251-5002

10

*Attorneys for Defendant Apple Inc.*

11

    _____/s/Beth A. Larigan_____

12

Jamie H. Kitano (SBN: 268078)

13

jkitano@shb.com
Andrew Chang (SBN: 222309)

14

achang@shb.com
SHOOK, HARDY & BACON L.L.P.

15

One Montgomery, Suite 2700
San Francisco, California 94104-4505

16

Telephone:     415.544.1900
Facsimile:     415.391.0281

17

18

B. Trent Webb (*Pro Hac Vice*)
bwebb@shb.com

19

John D. Garretson (*Pro Hac Vice*)
jgarretson@shb.com

20

Chrissie Guastello (*Pro Hac Vice*)
cguastello@shb.com

21

Beth A. Larigan  (*Pro Hac Vice*)
blarigan@shb.com

22

SHOOK, HARDY & BACON L.L.P.

23

2555 Grand Blvd.
Kansas City, MO 64108

24

Telephone:     816.474.6550
Facsimile:     816.421.5547

25

Attorneys for Defendants

26

SPRINT NEXTEL CORPORATION,
SPRINT COMMUNICATIONS COMPANY
L.P., SPRINT SPECTRUM, L.P., AND

27

SPRINT SOLUTIONS, INC.

28

1

           */s/Reuben H. Chen*

2

HEIDI L. KEEFE (CA Bar No. 178960)
hkeefe@cooley.com

3

MARK R. WEINSTEIN (CA Bar No. 193043)
mweinstein@cooley.com

4

REUBEN H. CHEN (CA Bar No. 228725)
rchen@cooley.com

5

COOLEY LLP
3175 Hanover Street

6

Palo Alto, CA 94304
Phone:      (650) 843-5000

7

Facsimile:   (650) 849-7400

8

CHRISTOPHER STRETCH
cstretch@ksrh.com

9

KELLER, SLOAN, ROMAN & HOLLAND
LLP

10

555 Montgomery Street, 17th Floor
San Francisco, CA  94111

11

Tel.      (415) 249-8330
Fax:      (415) 249-8333

12

ATTORNEYS FOR DEFENDANT
FACEBOOK, INC.

13

14

           */s/Eric P. Carnevale*

Karen Boyd (State Bar No. 189808)

15

TURNER BOYD LLP

2570 W. El Camino Real

16

Suite 380

Mountain View, CA 94040

17

Tel:  (650) 521-5930

18

Fax:  (650) 521-5931

    boyd@turnerboyd.com

19

20

Craig R. Smith (*pro hac vice*)
William J. Seymour (*pro hac vice*)

21

Eric P. Carnevale (*pro hac vice*)
LANDO & ANASTASI, LLP

22

Riverfront Office Park
One Main Street – 11th Floor

23

Cambridge, MA 02142
Tel:  (617) 395-7000

24

Fax: (617) 395-7070

    csmith@lalaw.com

25

    wseymour@lalaw.com

    ecarnevale@lalaw.com

26

*Attorneys for Defendant Foursquare Labs, Inc.*

27

28

_/s/Thomas L. Duston_

Thomas L. Duston (admitted _pro hac vice_)
Scott Sanderson (admitted _pro hac vice_)
Tron Fu (admitted _pro hac vice_)
MARSHALL, GERSTEIN & BORUN LLP
233 S. Wacker Drive
6300 Willis Tower
Chicago, IL  60606
(312) 474-6300
TDuston@marshallip.com
SSanderson@marshallip.com
TFu@marshallip.com

_Attorneys for Defendant, GROUPON, Inc._

_/s/Jordan A. Sigale_

JORDAN A. SIGALE

JORDAN A. SIGALE (admitted pro hac)
jsigale@dunlapcodding.com
DUNLAP CODDING, P.C.
222 Merchandise Mart Plaza, Suite 1225
Chicago, Illinois 60654
Telephone: 312- 651-6744
Facsimile:  312-546-6284

LAURA A. WYTSMA (Cal. Bar No. 189527)
lwytsma@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Boulevard, Suite 2200
Los Angeles, CA 90067
Telephone: 310.282.2000
Facsimile: 213.947.4561

_Attorneys for LivingSocial, Inc._

_/s/Nathan K. Cummings_

Matthew J. Brigham (CA State Bar No. 191428)
mbrigham@cooley.com
COOLEY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone:  (650) 843-5000
Facsimile:    (650) 857-0663

Christopher C. Campbell (_pro hac vice_)
ccampbell@cooley.com
Nathan K. Cummings (_pro hac vice_)
ncummings@cooley.com

COOLEY LLP
One Freedom Square – Reston Town Center
11951 Freedom Drive
Reston, Virginia 20190-5656
Telephone:  703 456-8000
Facsimile:  703 456-8100

*Attorneys for Defendant Millennial Media, Inc.*

    */s/Jeffrey M. Connor*

ROBERT J. ARTUZ (State Bar No. 227789)
rartuz@kilpatricktownsend.com
MATTHEW J. MEYER (State Bar No. 284578)
mmeyer@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON
LLP
1080 Marsh Road
Menlo Park, CA 94025
Telephone: 650-326-2400
Facsimile: 650-326-2422

JEFFREY M. CONNOR (pro hac vice)
jmconnor@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON
LLP
1400 Wewatta Street, Suite 600
Denver, CO 80202
Telephone: 303-571-4000
Facsimile: 303-571-4321

Attorneys for Defendants
YELP INC. and TWITTER, INC.

1            Pursuant to Civil Local Rule 5-1(i)(3), all signatories concur in the filing of this

2    document.

3    Dated:  July 14, 2015                      By:   */s/Patrick E. King*

4                                        Patrick E. King