GUTRIDE SAFIER LLP
Adam J. Gutride (State Bar No. 181446)
  adam@gutridesafier.com
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
  todd@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
  anthony@gutridesafier.com
Marie McCrary (State Bar No. 262670)
  marie@gutridesafier.com

835 Douglass Street
San Francisco, California 94114
Telephone: (415) 789-6390
Facsimile:  (415) 449-6469

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

EVOLUTIONARY INTELLIGENCE, LLC,

                              Plaintiff,

        v.

SPRINT NEXTEL CORP. et al.,

                              Defendant.

CASE NO. 5:13-4513-RMW

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION BY TWITTER AND YELP OF DOCUMENTS RESPONSIVE TO FIRST SET OF REQUESTS FOR PRODUCTION; INTERROGATORY RESPONSES; DEPOSITION APPEARANCE**

Date: November 6, 2015
Time: 10:00 am
Dept: Courtroom 6, 4h Floor

Judge:  Hon. Ronald M. Whyte

1

2
EVOLUTIONARY INTELLIGENCE, LLC,                    Case No. 5:13-cv-3587-RMW

3
                   Plaintiff,

4
        v.

5

6
YELP, INC.,

                 Defendant.

7
EVOLUTIONARY INTELLIGENCE, LLC,                    Case No. 3:13-cv-4201-RMW

8
                   Plaintiff,

9

10
        v.

11
APPLE INC.,

12
                 Defendant.

13
EVOLUTIONARY INTELLIGENCE, LLC,                    Case No. 3:13-cv-4202-RMW

                   Plaintiff,

14

15
        v.

16
FACEBOOK, INC.,

17
                 Defendant.

18
EVOLUTIONARY INTELLIGENCE, LLC,                    Case No. 3:13-cv-4203-RMW

                   Plaintiff,

19

20
        v.

21
FOURSQUARE LABS, INC.,

22
                 Defendant.

23
EVOLUTIONARY INTELLIGENCE, LLC,                    Case No. 3:13-cv-4204-RMW

24
                   Plaintiff,

25
        v.

26
GROUPON, INC.,

27
                 Defendant.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EVOLUTIONARY INTELLIGENCE,
LLC,
                    Plaintiff,

        v.

LIVINGSOCIAL, INC.,
                    Defendant.

EVOLUTIONARY INTELLIGENCE,
LLC,
                    Plaintiff,

        v.

MILLENNIAL MEDIA, INC.,
                    Defendant.

EVOLUTIONARY INTELLIGENCE,
LLC,
                    Plaintiff,

        v.

TWITTER, INC.,
                    Defendant.

Case No. 3:13-cv-4205-RMW

Case No. 5:13-cv-4206-RMW

Case No. 3:13-cv-4207-RMW

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................... 1

II.  BACKGROUND ................................................................................................... 1

    A.   Case Description. ......................................................................................... 1

    B.   Defendants' Discovery Responses and Failure to Produce Documents or Identify
        30(b)(6) Witnesses and Plaintiff's Meet-and-Confer Efforts. ................................. 2

        1.   Initiation of the Suit and Plaintiff's Service of Infringement Contentions ...... 2

        2.   Plaintiff's Service Of Formal Discovery Requests in the Eastern District of
            Texas ............................................................................................... 4

        3.   Relation of Cases and Stay Pending *Inter Partes* Review ............................... 5

        4.   Plaintiff's Service Of Formal Discovery Requests in the Northern District of
            California ........................................................................................... 5

        5.   Defendants' Refusal to Provide Discovery Responses. ................................... 7

        6.   Plaintiff's Attempts To Meet And Confer. .................................................. 7

III. ARGUMENT ........................................................................................................ 9

    A.   Legal Standard ............................................................................................ 9

    B.   Defendants Should Be Ordered to Produce Information and Documents Responsive
        to Evolutionary's Discovery Requests. .................................................................. 10

        1.   Defendants Failed To Produce Any Responsive Documents or Information. 10

        2.   Evolutionary's Infringement Contentions Satisfy Patent Local Rules 3-1 and
            3-2. ............................................................................................... 10

        3.   Plaintiff Has Agreed to Narrow Discovery Requests Objected to as Overly
            Broad. ............................................................................................ 12

        4.   If Defendants Understood this Case Well Enough to Preserve Relevant
            Documents, They Understand it Enough to Identify Responsive
            Documents. ...................................................................................... 12

        5.   The Interim Protective Order Provides Sufficient Protection. ....................... 13

    C.   All Defendants' Remaining Objections Should Be Overruled And They Should Be
        Ordered To Provide Further Responses To Plaintiff's Remaining Discovery
        Requests and Produce Relevant Documents. ......................................................... 13

        1.   Plaintiff's Interrogatories ...................................................................... 13

        2.   Plaintiff's Remaining Requests for Production. .......................................... 21

1

D.    Defendants Should Be Required To Present Witnesses For Deposition Pursuant To The Rule 30(b)(6) Notice.................................................................................. 25

2

IV.   CONCLUSION................................................................................................................ 26

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**CASES**

*Blue Spike, LLC v. Adobe Sys., Inc.*, No. 14-CV-01647-YGR(JSC), 2015 WL 335842 (N.D. Cal. Jan. 26, 2015) ..................................................................................................................11

*Collins v. Wal-Mart Stores, Inc.*, 2008 U.S. Dist. LEXIS 36343 *8 (D. Kan. Apr. 30, 2008).........13

*Finjan v. ProofPoint Inc.*, No. 13-cv-05808-HSG, 2015 WL 1517920, at *4-5 (N.D. Cal. Apr. 2, 2015) ...................................................................................................................11

*Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ...........................................................................9

*Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311 (Fed. Cir. 2011) ..................................18

*Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D 281, 283 (C.D. Cal. 1998) ............................15

*Panola Land Buyers Assn v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) ....................15

*See Collins v. Wal-Mart Stores, Inc.*, 2008 U.S. Dist. LEXIS 36343 *8 (D. Kan. Apr. 30, 2008) ..................................................................................................................................13

*Theranos, Inc. v. Fuisz Pharma LLC*, No. 11–cv–05236–YGR, 2012 WL 6000798 (N.D.Cal. Nov. 30, 2012) ........................................................................................................11

**RULES**

Civil L.R. 37-1 ....................................................................................................................21

Fed. R. Civ. P. 26(e)(1)(A) ................................................................................................13

Fed. R. Civ. P, Rule 26(b)(1) ...............................................................................................9

Fed. R. Civ. P. 30(a)(1) ......................................................................................................25

Fed. R. Civ. P. 33(b)(3) ......................................................................................................13

Fed. R. Civ. P. 33(b)(4) ......................................................................................................13

Fed. R. Civ. P. 37(a)(2)(A), (B) ......................................................................................9, 21

Fed. R. Evid., Rule 401 ........................................................................................................9

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on November 6, 2015, at 10:00 a.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Ronald M. Whyte, at the United States District Court for the Northern District of California, Plaintiff will (and hereby does) move the Court for an order compelling Defendants to produce within twenty (20) days all documents responsive to Plaintiff's requests for production and responses to Plaintiff's specially prepared interrogatories Additionally, Plaintiff seeks an order deeming waived all of Defendants' general and specific objections.

This Motion is based on Federal Rules of Civil Procedure Rules 37(a)(2)(B) and 37(4)(a), Local Rules 37-1, 37-2 and 37-3, Patent Local Rule this Notice of Motion, the supporting Memorandum of Points and Authorities, the pleadings, other files and records in this action and such other written or oral argument as may be presented to the Court.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

This motion seeks relief from Defendants Twitter Inc.'s and Yelp Inc.'s refusal to produce documents, provide interrogatory responses, or identify witnesses for 30(b)(6) depositions.  Each defendant has essentially one product/service on the market ("Twitter" and "Yelp," respectively). Evolutionary Intelligence's infringement contentions and discovery requests are directed to those products/services.  Despite this clear indication of the subject matter of this litigation, Defendants claim that they cannot identify documents and information relevant to this case because the infringement contentions fail to identify a specific accused instrumentality. Defendants also claim that they are excused from producing documents or information because they do not believe Evolutionary's infringement contentions establish infringement by their products.

Defendant's refusal to provide discovery is indefensible.  The infringement contentions clearly identify the accused instrumentalities, and Defendants have ample notice of what is at issue in this case.  Plaintiff has identified specific portions of each Defendant's source code that are relevant to this litigation, and has offered to accept a limited discovery responses focuses on these "critical features" of the accused systems.  Despite this, of eleven defendants in nine related cases, Twitter and Yelp alone have refused to provide any documents or information in response to discovery.  This Court should order Twitter and Yelp to produce responsive documents and information.

**II.    BACKGROUND**

**A.     Case Description.**

Defendants Twitter Inc. ("Twitter") and Yelp Inc. ("Yelp") each develop, market, sell and distribute an eponymous online marketing product and service. (Decl. of Anthony Patek in Support of Mot. to Compel ("Patek Decl."), ¶ 3.) Twitter provides "Twitter," a social networking service that allows users to broadcast text and images.  (*Id.*) Yelp provides "Yelp," an online service that allows crowd-sourced reviews of businesses.  (*Id.*) Each of these services/products is offered via the respective company's identically named web site (twitter.com and yelp.com, respectively).  (*Id.*) Each is also accessible via software that can be installed on mobile devices such as tablets and smart phones (again, the "Twitter" app and the "Yelp" app). Each allows targeted advertisements by businesses.

(*Id.*)

Plaintiff Evolutionary Intelligence LLC ("Evolutionary") owns U.S. patents 7,010,536 and 7,702,682.  (Patek Decl., ¶ 4.)  The asserted patents generally describe and claim computer-implemented methods and systems for creating and manipulating information containers.  (*Id.*) The '536 patent describes a system of information containers that facilitates presentation of information, such as advertisements, to users based on time and location. (*Id.*) The '682 patent describes processes for tracking searches of information containers and using that information to improve later search queries.  (*Id.*)  Both patents are the product of inventor Michael De Angelo's efforts to create new search interfaces and marketing software in the late 1990s as part of a start-up he founded, called Pattern Intelligence LLC. (*Id.*) After Pattern Intelligence failed (like most start-ups) to transition into a successful operating company, the patents were transferred to Evolutionary, a company Mr. De Angelo formed to monetize the patents. (*Id.*)

**B.    Defendants' Discovery Responses and Failure to Produce Documents or Identify 30(b)(6) Witnesses and Plaintiff's Meet-and-Confer Efforts.**

**1.    Initiation of the Suit and Plaintiff's Service of Infringement Contentions**

Plaintiff sued Yelp and Twitter for patent infringement on October 17, 2012 in the Eastern District of Texas.  (Patek Decl., ¶ 5, Exs. 1-2.) The Complaint against Twitter alleges that Twitter infringes the asserted patents "by making, using, offering to sell, and/or selling its Twitter real-time information network product and service, accessible at least through twitter.com and mobile device applications." [1]  (*Id.*, Ex. 1, ¶¶ 9, 14. ) The Complaint against Yelp alleges that Yelp infringes the asserted patents "by making, using, offering to sell, and/or selling its Yelp online urban city guide and business review product and service, accessible at least through yelp.com and mobile applications." (*Id.*, Ex. 2, ¶¶ 9, 14.)

On May 23, 2013, Evolutionary served infringement contentions on Twitter and Yelp under local Patent Rule 3-1 of the Eastern District of Texas.  (Patek Decl., ¶ 6, Exs. 3-6.) The E.D. Texas

---

[1] Twitter and Yelp (along with the other defendants in this consolidated case) moved for dismissal of the Complaint for failure to state a claim under § 101.  That motion is pending.

1   infringement contentions for Twitter and Yelp identified the same accused instrumentalities as their

2   respective complaints.  (*Id.*, Exs. 3-6 at 1.)

3        The Twitter infringement contentions state that "specific aspects of the Twitter Product's

4   functionality that infringe the ['536/'682] patent include social networking functionality and

5   advertising functionality."  (Patek Decl., ¶ 7, Ex. 3 at 1.) The 274-page Twitter infringement

6   contentions identify at least five putative information containers, including "tweet", "place", "user",

7   "status update", and "search" containers, and provide one example of JSON code reflecting each type

8   of container on the Twitter system.  (*Id.*, Ex. 3 at 2, 4, 9-10, 14.) The Twitter infringement contentions

9   also identify by name at least 23 functions and/or arguments of Twitter's publicly accessible

10   Application Programming Interface ("API"), including "id", "name", "protected", "friends_count",

11   "created_at", "geo_enabled", "coordinates", "place", "place_type", "bounding_box",

12   "georss:polygon," "id_str",  "media_url", "media_url_https"," "url", "display_url", "w", "resize", "h",

13   "type", "completed_in",  "max_id", and "max_id_str." (Patek Decl., ¶ 4,; Ex. 3 at 38-40, 49.)

14        The Yelp contentions identified the accused instrumentality as "the Yelp online urban city

15   guide and business review product and service, accessible at least through yelp.com and the Yelp

16   mobile apps for phones and tablets, including those for Android and iOS, (the "Yelp Product")."

17   (Patek Decl., ¶ 8, Ex. 4 at 1.) The 115-page Yelp infringement contentions identify at least four

18   putative information containers, including "business," "location," "user," and "check-ins." (*Id.*, ¶ 8,

19   Ex. 4 at 2, 4, 7, 23, 34.) The Yelp infringement contentions also identify by name at least 23 functions

20   and/or arguments of Yelp's publicly accessible "Search" Application Programming Interface ("API"),

21   including "id", "is_claimed", "is_closed", "location.coordinate", "location.coordinate.latitude",

22   "location.coordinate.longitude", "location.address", "location.display_address", "location.city",

23   "location.state_code", "location.postal_code," "location.county_code",  "location.country_code",

24   "location.cross_streets," "location.neighborhoods", "Open_Now", "rating", "rating_img-url",

25   "rating-img-url_small", "rating-img-url_large", "review_count",  "check-ins", and "max_id_str."

26   (*Id.*, ¶ 8, Ex. 4 at 10, 21-22, 30.)

27

28

**2.     Plaintiff's Service Of Formal Discovery Requests in the Eastern District of Texas**

On February 28, 2013, in response to a motion to transfer venue by all defendants, Evolutionary served venue discovery, including a set of interrogatories and requests for production directed to the identity and location of potential witnesses for each defendant.  (Patek Decl., ¶ 9, Exs. 7-8.) Each set of venue discovery asked for employees and/or documents relating to THE ACCUSED INSTRUMENTALITIES as defined in the Patent L. Rule 3-1 Disclosures for the respective defendant. (*Id.*, Ex. 7 at 4; Ex. 8 at 4.) Because the Rule 3-1 disclosures had not yet been served, the venue discovery requests also included requests directed to the "Twitter API," "TWITTER PROMOTED PRODUCTS FEATURES", "TWITTER SEARCH FEATURE", and "TWITTER LOCATION FEATURE," each of which was both defined, and each of which was specified by reference to publicly available documentation published by each Defendant to help identify the relevant subject matter.  (*Id.*, Ex. 7 at 15-22; Ex. 8.1 at 3-13.) Twitter and Yelp provided nominal responses to these discovery requests.  (*Id.*, ¶ 6.) For example, Yelp produced a single spreadsheet comprising prepared list of  266 employee, while Twitter produced a single spreadsheet comprising a prepared list of 883 employees.  (*Id.*, ¶ 6, Exs. 9-11, 33.) Neither defendant claimed to be unable to respond to the discovery requests due to a failure to understand what the ACCUSED INSTRUMENTALITY was. (*Id.*)

On June 7, 2013, Evolutionary served its First Set of Common Interrogatories on all the defendants in the E.D. Texas action, including Twitter and Yelp.  (Patek Decl., ¶ 10, Ex. 12.) (Evolutionary did not serve RFPs, because E.D. Texas local rules required Defendants to produce relevant technical documents without formal RFPs.) The common interrogatories relating to infringement are directed to the "ACCUSED INSTRUMENTALITY." (*Id.*, Ex. 12 at 6, 11.)  The "ACCUSED INSTRUMENTALITY" in these discovery requests is the accused instrumentality identified in the Patent L. Rule 3-1 and 3-2 disclosures for each Defendant.  (*Id.*, ¶ 8.)

In response to the common interrogatories, Defendants made general and specific objections. Defendants responded to every interrogatory as follows:

> [Yelp/Twitter] is continuing to investigate the subject matter of this interrogatory and
> reserves the right to supplement its response subsequent to a meet and confer with

– 4 –

EVOLUTIONARY INTELLIGENCE and to the extent Yelp locates any non-privileged, relevant documents or information responsive to this interrogatory.

(Patek Decl., ¶ 9, Exs. 13-14.) Neither defendant provided any meaningful information in response to the interrogatories. [2] (Id.)

Shortly afterward, the cases were stayed pending motions to transfer them from the Eastern District of Texas to this district.  (Patek Decl., ¶ 12.) Those motions were granted. (Id.) No substantive responses were ever provided to the common interrogatories, and no documents were produced under E.D. Texas Patent L. Rule 3-4 (which would have required production of source code and technical documents without service of RFPs). (Id.)

### 3.      Relation of Cases and Stay Pending *Inter Partes* Review

All nine defendants subsequently moved to stay their cases pending eight petitions for *inter partes* review filed by Twitter, Yelp, Apple, and Facebook. (Patek Decl., ¶ 13.) The motions to stay were granted.[3] (Id.) Seven of eight IPR petitions were denied.  (Id.) On July 28, 2014, Judge Whyte related all nine cases for pre-trial purposes and stayed them until a final decision issued in the pending IPR. (Id.) On April 16, 2014, the Patent Trial and Appeal Board ruled against Twitter, Yelp, and Apple in the one *inter partes* review that had been instituted, thereby lifting the stay. (Id.)

### 4.      Plaintiff's Service Of Formal Discovery Requests in the Northern District of California

On April 24 and May 19, 2015, Evolutionary served requests for production ("RFPs") on Yelp and Twitter, respectively. (Patek Decl., ¶ 14, Exs. 17-18.) The RFPs are directed to the "ACCUSED SOFTWARE PRODUCT" of each respective defendant, which is defined by reference to the "ACCUSED INSTRUMENTALITY." (Id., ¶ 14, Ex. 17 at 4, 10-11; Ex. 18 at 4-5, 9-10.) The

---

[2] The Defendants did not provide any information at all, except for interrogatory No. 1, which sought the identity of each person involved in creating the ACCUSED INSTRUMENTALITY.  For that interrogatory, each Defendant identified the witnesses whom they had been forced to identify as evidence for their joint motion to transfer to this venue.

[3] On November 12, 2013, Plaintiff re-served its common interrogatories from the E.D. Texas action as an individualized discovery request on Yelp.  (Patek Decl., Ex. 15.) This First Set of Interrogatories was essentially identical to the First Set of Common Interrogatories, with slight numbering differences. Yelp responded to Evolutionary's First Set of Interrogatories on Dec. 13, 2013, just before the stay went into effect. (Id., Ex. 16.)

1  "ACCUSED INSTRUMENTALITY" is again defined by reference to Evolutionary's Patent L. Rule

2  3-1 and 3-2 disclosures.[4]  (*Id.*, ¶ 14.) The "ACCUSED SOFTWARE APPLICATION" for Twitter is

3  defined by reference to "EACH of YOUR products and/or services that EVOLUTIONARY

4  INTELLIGENCE has identified (or later identifies) as an accused instrumentality in THIS

5  LITIGATION . . . . The terms shall include, by way of example and without limitation, the Twitter

6  real-time information network product and service, accessible at least through twitter.com and mobile

7  device applications." (Patek Decl., Ex. 17 at 4.) The "ACCUSED SOFTWARE APPLICATION" for

8  Yelp is defined as "ALL versions of ANY computer program, software application, Application

9  Programming Interface ("API"), or SOURCE CODE, that was (i) developed by or for YOU and (ii) is

10  part of ANY ACCUSED INSTRUMENTALITY, has been used with ANY ACCUSED

11  INSTRUMENTALITY, and/or has enabled ANY feature of ANY ACCUSED

12  INSTRUMENTALITY." (*Id.*, Ex. 18 at 4-5.) The Yelp RFPs go on to define the "ACCUSED

13  INSTRUMENTALITY" as "the Yelp online urban city guide and business review product and

14  service, accessible at least through yelp.com and mobile applications." (*Id.*)

15      On May 27, 2015, Evolutionary served notices of 30(b)(6) depositions for each Defendant.

16  (Patek Decl., ¶ 16, Exs. 19-20.) The deposition notices identified four topics for deposition including:

17  (1) "the identities of the Persons who designed, developed, tested, and or implemented the

18  [Twitter/Yelp] Product" and their roles , (2) the creation, maintenance, and preservation of source

19  code relating to the [Twitter/Yelp] Product, (3) the names and basic functionality of the Source Code

20  Constructs and Database Columns Relating to Each Critical Feature,[5] and (4) all lawsuits and

21  threatened lawsuits relating to the Twitter Product or other issues in This Matter." (*Id.*)

22

23

24  [4] The RFPs served on Twitter and Yelp differ slightly in that those served on Yelp include an explicit

25  definition for "ACCUSED INSTRUMENTALITY," while those served on YELP do not define
   "ACCUSE INSTRUMENTALITY" formally, but merely refer to the accused instrumentality identified

26  in Evolutionary's infringement contentions.

27  [5] "Critical Feature" is defined in the discovery requests to mean "All Location-Based Features and Search
   Tracking Features of the [accused] Product."  See, e.g., Ex. 17 at 5; Ex. 20 at 2.

28

1

### 5.   Defendants' Refusal to Provide Discovery Responses.

2      Yelp responded to Evolutionary's RFPs on May 29, 2015.  (Patek Decl., ¶ 16, Ex. 21.) Twitter

3   responded on July 2, 2015.  (*Id.*, Ex. 22.) Both Defendants made general and specific objections and

4   non-committal statements about being willing to meet and confer regarding the relevancy of the

5   information sought.  (*Id.*, ¶ 13.) Neither defendant produced any documents. (Id.) In response to the

6   notices of 30(b)(6) deposition, Defendants stated that they would identify witnesses only "[a]fter

7   Evolutionary provides a disclosure of asserted claims that comply with Patent L.R. 3-1 and Patent

8   L.R. 3-2."[6] (Patek Decl., ¶ 13, Exs. 23-24.)

9      On June 19, 2015, Evolutionary served amended infringement contentions under this Court's

10  Patent L.R. 3-1 and 3-2. (Patek Decl., ¶ 17, Exs. 25-28.) The identification of accused

11  instrumentalities did not change substantively from those served in the E.D. Texas.  (*Id.*) Evolutionary

12  clarified the identification of accused instrumentalities for Yelp, adding the phrase "the Yelp system

13  that implements" before "the Yelp online urban city guide."  (*Id.*, Exs. 27 & 28 at 1) (emphasis

14  added).  The identification of accused instrumentalities for Twitter contained a similar clarification.

15  (*Id.*, Exs. 25 & 26, at 1.)

16

### 6.   Plaintiff's Attempts To Meet And Confer.

17     On July 6, 2015, Plaintiff sent Twitter and Yelp an email outlining deficiencies in their

18  discovery responses.  The email identified their failure to produce any documents or substantive

19  interrogatory responses.[7]  (Patek Decl., ¶ 18, Ex. 29.) Evolutionary also requested to meet and confer

20  regarding production of source code and 30(b)(6) witnesses and regarding Twitter and Yelp's initial

21  disclosures under Rule 26, which failed to identify any employees that Defendants believed had

22  knowledge relevant to the case. (*Id.*)

23  _____

24  [6] This district's local patent rules differ from those in E.D. Texas in that they require identification of the
    priority date of each claim and explicit identification of indirect infringement allegations.  Evolutionary's
25  2013 infringement contentions otherwise satisfied the N.D. California Local Patent Rules.

26  [7] Twitter and Yelp's responses to interrogatories Nos. 9-11 and Yelp RFPs 18-27 and 77-85 [Twitter
    RFPs 19-28 and 75-83], which are directed to damages, are not at issue in this motion.  The parties have
27  agreed that no response is due for those interrogatories and RFPs until damages discovery opens.

28

On July 16, 2015, Twitter sent a letter alleging deficiencies in Evolutionary's Patent Local Rule 3-1 and 3-2 disclosures. (Patek Decl., ¶ 19, Ex. 30.) That letter alleged (i) that the identification of "accused instrumentalities" was "vague," because "the Twitter real-time information network product and service" encompassed Twitter's entire business, (ii) that Evolutionary's identification of "examples" was evidence that it had knowledge of other accused instrumentalities that it was not identifying, (iii) that Evolutionary's infringement contentions failed to identify where each limitation of the claims was present in the "Twitter" product, and (iv) that Evolutionary's reservation of the right to assert the doctrine of equivalents and willfulness was impermissible. (*Id.*)

On July 22, 2015, Evolutionary met and conferred with Twitter and Yelp regarding the Defendants' deficient discovery responses.  (Patek Decl., ¶20.) Defendants refused to produce anything, repeating their previous objections. (*Id.*) Plaintiff noted that each defendant makes and sells basically one product/service—the Yelp.com online business review guide and the "Twitter" product/service, respectively—and that Plaintiff's identification of those products/services satisfies Patent Local Rules 3-1 and 3-2. (Patek Decl., ¶ 21.) Evolutionary clarified that it did not wish for Twitter or Yelp to produce every document in its possession, but wished to focus first on source code and documentation for the specific APIs and features explicitly identified in the infringement contentions and RFPs. (*Id.*) Evolutionary also noted that its ability to identify portions of relevant code was limited, since it did not have access to the Defendants' source code.  (*Id.*) Evolutionary suggested that it could provide better guidance as to which documents and source code were most relevant if Twitter and Yelp would provide an initial production of source code and documents focusing on the application programming interfaces ("APIs") and "CRITICAL FEATURES" explicitly identified in the infringement contentions for each defendant. (*Id.*) Defense counsel responded that it would not produce documents or source code in a piecemeal fashion, as a rolling production was overly expensive and burdensome.  (*Id.*)

Evolutionary further noted that its identification of "LOCATION-BASED FEATURES" and "SEARCH TRACKING FEATURES" were good-faith efforts to narrow the scope of discovery regarding each Defendants' sole product, not evidence that there were additional, unnamed accused instrumentalities. (Patek Decl., ¶ 22.) Evolutionary also noted that Twitter/Yelp's dissatisfaction with

1  Evolutionary's infringement contentions was not a basis for refusing to provide discovery, and that

2  this Court's Interim Protective Order provided sufficient protection for any source code. (*Id.*) After

3  discussing these matters for approximately 40 minutes, the parties acknowledged that further

4  discussion was futile. (*Id.*)

5         Having been rebuffed in its attempts to obtain responses to its discovery requests,

6  Evolutionary sent Defendants a comprehensive letter that day setting forth the problems with

7  Defendants' basis for refusing to respond to discovery.  (*Id.*, ¶ 23, Ex. 31.)

8         During this same period, Plaintiff met and conferred with the other defendants in the case

9  regarding similarly deficient responses to discovery. (*Id.*, ¶ 24.) In every other case, the defendant

10  agreed to produce some documents and source code in response to Evolutionary's discovery requests.

11  (*Id.*) Only Twitter and Yelp refused to provide any responsive information. (*Id.*)

12         On August 25, 2015, following this Court's hearing on Defendants' motion to dismiss for

13  failure to state a claim under § 101, Evolutionary met and conferred with Twitter and Yelp a third

14  time.  (*Id.*, ¶ 25.) Defendants again refused to produce any documents on the ground that they did not

15  understand what the accused instrumentality was. (*Id.*, Ex. 32)

16  **III.**    **ARGUMENT**

17      **A.**    **Legal Standard**

18      Under the Federal Rules of Civil Procedure, Rule 26(b)(1),

19      [p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the
20      claim or defense of any party . . . For good cause, the court may order discovery of any matter
    relevant to the subject matter involved in the action. Relevant information need not be
21      admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of
    admissible evidence.

22  Fed. R. Civ. P. 26(b)(1).  Evidence is relevant if it has "any tendency to make the existence of any fact

23  that is of consequence to the determination of the action more probable or less probable than it would

24  be without the evidence."  *See* Federal Rules of Evidence, Rule 401.

25         Motions to compel are authorized by Rule 37 of the Federal Rules of Civil Procedure.  *See*

26  Fed. R. Civ. P. 37(a)(2)(B).  Discovery under the Federal Rules of Civil Procedure is to be "accorded

27  a broad and liberal treatment."  *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

28

**B.     Defendants Should Be Ordered to Produce Information and Documents Responsive to Evolutionary's Discovery Requests.**

**1.     Defendants Failed To Produce Any Responsive Documents or Information.**

Although production was due May 27, 2015, Defendants have delivered absolutely nothing. (Patek Decl. ¶¶ 10, 22.)  They have not produced a single document or meaningful interrogatory response. Indeed, they have not even provided technical documents regarding the APIs explicitly identified as relating to infringement in Evolutionary's infringement contentions.

Although Evolutionary will discuss individual objections to its discovery requests in detail below in section C, there are two overarching objections that apply across most of the discovery requests: (i) the alleged insufficiency of Evolutionary's Patent L. Rule 3-1 and 3-2 disclosures and (ii) the alleged insufficiency of this Court's interim protective order.  These objections are discussed first in detail below.

**2.     Evolutionary's Infringement Contentions Satisfy Patent Local Rules 3-1 and 3-2.**

Twitter and Yelp are unique in their inability to comprehend what the accused instrumentality is; every other defendant in the related cases has produced or agreed to produce at least some source code and/or documentation in response to parallel RFPs.

Defendants' assertion that they do not understand the metes and bounds of this case well enough to determine what documents and information are relevant is disingenuous.  Plaintiff has stated clearly at several hearing that the patents relate to technology for facilitating the presentation of information such as advertisements at appropriate times and locations.  The infringement contentions for each defendant identify specific APIs and interfaces used by the Defendants' computer systems to implement their products and services, including presentation of advertisements and other business-related information.  Moreover, Defendants Twitter and Yelp pursued two *inter partes* reviews in which they argued that the E.D. Texas infringement contentions encompassed software structures that were disclosed in the prior art.  Despite this, Defendants now claim that they have no idea which aspects of their systems are even relevant to this case.

Evolutionary's identifications of the accused instrumentalities are clear. The Defendants' contention that they cannot identify relevant documents is indefensible.  This is not a case where a

1   manufacturer makes dozens of different products, and needs to know which is accused to avoid

2   collecting irrelevant information.  Nor is it a case where the Plaintiff has identified dozens of distinct

3   products in a single set of infringement contentions without identifying allegations particular to each

4   individual product. *Cf. Finjan v. ProofPoint Inc.*, No. 13-cv-05808-HSG, 2015 WL 1517920, at *4-5

5   (N.D. Cal. Apr. 2, 2015). Here, each defendant produces essentially one product, which is a software

6   system run on each Defendant's computer system. For each defendant, Evolutionary's infringement

7   contentions explicitly identify that product and detailed portions of code relating to that product.  This

8   is more than sufficient to put Twitter and Yelp on notice of what is at issue in this case.  Indeed, the

9   falseness of Twitter and Yelp's claimed ignorance is demonstrated by the fact that, of all nine

10  defendants accused in these related cases, only they were incapable of understanding the allegations

11  against them well enough to identify some relevant documents and source code.

12          The Defendants' assertion that they are exempt from discovery because they believe the

13  infringement contentions to be deficient is untenable.  As an initial matter, the contentions are not

14  deficient; they involve hundreds of pages of detailed analysis.  Any deficiencies or lack of specificity

15  asserted by Defendants is solely a product of the fact that Plaintiff has been forced to rely on publicly

16  available evidence, and thus does not have a complete understanding of the accused products.  The

17  Patent Local Rules provide leeway for a plaintiff when the defendant has sole possession of

18  information plaintiffs need to complete infringement contentions.  *See, e.g., Blue Spike, LLC v. Adobe*

19  *Sys., Inc.*, No. 14-CV-01647-YGR(JSC), 2015 WL 335842, at *5 (N.D. Cal. Jan. 26, 2015).  "This is

20  particularly true in cases involving allegedly-infringing source code."  *Id.* (citing *Theranos, Inc. v.*

21  *Fuisz Pharma LLC*, No. 11–cv–05236–YGR, 2012 WL 6000798, at *6 n.7 (N.D.Cal. Nov. 30, 2012).

22  Given that Evolutionary has not had an opportunity to review Defendants' source code, the

23  infringement contentions are more than sufficient.  Moreover, to the extent Defendants allege the

24  contentions are deficient (e.g., by arguing that the positions set forth improperly construe the claims),

25  they are actually arguing the merits of Evolutionary's infringement case.  This is untenable.  If a

26  defendant's mere disagreement with a plaintiff's claims were a basis for refusing to participate in

27  discovery, no discovery would ever occur.

28

1

### 3.    Plaintiff Has Agreed to Narrow Discovery Requests Objected to as Overly Broad.

2

3    Defendants' ubiquitous objections to the interrogatories and RFPs as overly broad is not a

4    basis for categorically refusing to produce any documents.  Evolutionary's discovery requests range

5    from being relatively broad (e.g., RFP 1, directed to "ALL SOURCE CODE of EACH ACCUSED

6    SOFTWARE APPLICATION) to relatively narrow (e.g., Yelp RFP 66, directed to "ALL

7    DOCUMENTS RELATING TO implementation of searches using "Nearby," "Recents," and "check-

8    in" functions of ANY ACCUSED SOFTWARE APPLICATION").  Defendants' objection to all of

9    these requests as "overly broad" suggests that they would make this objection irrespective of the scope

10   of the requests.

11        Evolutionary has repeatedly stated that its goal is an initial production and responses sufficient

12   to show the structure of those portions of Defendants' systems accused of infringement.  For example,

13   Evolutionary has offered to limit its requests to those aspects of "Twitter" and "Yelp" that are

14   discussed explicitly in the infringement contentions, such location-based selection of advertisements

15   and content, the tracking of searches, and the specific APIs identified for each Defendant.

16   Evolutionary has also made it clear that it has no desire to receive a production that encompasses

17   every aspect of Defendants' products and companies, since many aspects (e.g., development of media

18   for individual web pages and ad campaigns, or the identity of system administrators responsible for

19   mundane maintenance) would not help resolve this dispute.  Defendants have rejected every narrowed

20   scope offered by Evolutionary.

21        Defendants have an obligation to work with Evolutionary to identify a reasonable scope of

22   discovery.  Their complete failure to do so demonstrates that they have no intention of participating in

23   discovery until ordered to do so by this court.

### 4.    If Defendants Understood this Case Well Enough to Preserve Relevant Documents, They Understand it Enough to Identify Responsive Documents.

24

25

26        At the case management conference held on June 5, 2015, Evolutionary raised its concern that

27   Defendants had not preserved evidence relating to this case.  Along with other defendants, Twitter and

28   Yelp assured the Court that they had preserved relevant documents.  Now, they assert that they cannot

1    identify relevant documents, because they do not understand which of their systems or activities are

2    accused of infringement. Twitter and Yelp's positions on these matters are mutually exclusive.  If they

3    understand the subject matter of this case well enough to identify documents to preserve, they also

4    understand it well enough to identify documents responsive to Evolutionary's discovery requests.

5                    **5.      The Interim Protective Order Provides Sufficient Protection.**

6            One of the bases that Defendants asserted as justification for refusing to produce source code

7    is that this Court's Interim Protective Order under Patent L. Rule 2-2 is not sufficient to protect their

8    source code.  This position is also untenable.   Patent L. Rule 2-2 states "[d]iscovery cannot be

9    withheld on the basis of confidentiality absent Court order. The Protective Order authorized by the

10   Northern District of California shall govern discovery unless the Court enters a different protective

11   order."  This rule was implemented specifically to avoid prolonged delays in discovery caused by

12   parties' claims that they could not produce documents until a protective order was in place.  If every

13   defendant could claim an exemption from discovery based on their objection to this Court's interim

14   protective order, the interim protective order would be a dead letter, entirely ineffectual in its goal of

15   facilitating discovery. Furthermore, Defendants have not identified why the interim protective order is

16   insufficient.

17
     **C.     All Defendants' Remaining Objections Should Be Overruled And They Should Be
18          Ordered To Provide Further Responses To Plaintiff's Remaining Discovery
            Requests and Produce Relevant Documents.**

19                   **1.      Plaintiff's Interrogatories**

20           The responding party is obligated to respond to interrogatories to the fullest extent possible,

21   Fed. R. Civ. P. 33(b)(3), and any objections must be stated with specificity, Fed. R. Civ. P. 33(b)(4).

22   The responding party is also obligated to use common sense and reasoning in responding.  *See Collins*

23   *v. Wal-Mart Stores, Inc.*, 2008 U.S. Dist. LEXIS 36343 *8 (D. Kan. Apr. 30, 2008).   Further, the

24   responding party has a duty to supplement any responses if the information sought is later obtained or

25   the response provided needs correction.  *See* Fed. R. Civ. P. 26(e)(1)(A).

26                   **a.      All of Defendants' General Objections Should All Be Overruled.**

27           In their responses to all of the discovery requests, Defendants interposed general objections on

28   the grounds of relevance, work product/attorney client privilege, confidentiality/trade secrets, and

                                                    – 13 –

1 vagueness/ambiguity of defined terms.   Each of Defendants' general objections should be overruled.

2 To begin with, general objections are invalid.  Parties are obligated to interpose specific objections

3 because "general objections are not useful to the court ruling on a discovery motion."  *See Bible*, 246

4 F.R.D. 614 *quoting Chubb*, 103 F.R.D. at 58.   For example, Defendants' general relevance objection

5 is meaningless because Evolutionary cannot ascertain what part of its request(s) is not relevant.  *Id*.

6       With regard to Defendants' general objections on grounds of privilege and work product, it is

7 extremely unlikely that many of the document and information requested by Evolutionary are

8 privileged or attorney work product, since the overwhelming majority of the discovery requests are

9 directed to technical and financial documents.

10       With regard to Defendants' general objections to Plaintiff's defined terms, Defendants

11 improperly object to Plaintiff's definition of "ACCUSED INSTRUMENTALITY."  As noted above,

12 "ACCUSED INSTRUMENTALITY" and "ACCUSED SOFTWARE APPLICATION" are defined

13 by reference to the infringement contentions for each defendant, each of which identifies the

14 respective Defendants' primary, and essentially sole, product (i.e., "Twitter" and "Yelp",

15 respectively). The discovery requests to Twitter further state that the "ACCUSED SOFTWARE

16 APPLICATION"/"ACCUSED INSTRUMENTALITY" is "the Twitter real-time information network

17 product and service," while those for Yelp specify that "ACCUSED SOFTWARE

18 APPLICATION"/"ACCUSED INSTRUMENTALITY" includes, "by way of example and without

19 limitation, the Yelp online urban city guide and business review product, accessible at least through

20 yelp.com and mobile applications."  Defendants must provide whatever responsive information they

21 have about the "Twitter" and "Yelp" software applications respectively, rather than pretending they do

22 not understand what the accused instrumentalities are.

23          **b.**     **Defendants Specific Objections Should Be Overruled.**

24       Twitter and Yelp also specifically objected to each of Plaintiff's interrogatories.  Each of those

25 objections should be overruled and Defendants ordered to further respond.

26       Plaintiff's first interrogatory states: "Separately for EACH of YOUR ACCUSED

27 INSTRUMENTALITIES, IDENTIFY EACH PERSON involved in the ACCUSED

28 INSTRUMENTALITY's design, development, and/or testing, and that PERSON's role in that design,

1  development, and/or testing." In response, Defendants object that "ACCUSED

2  INSTRUMENTALITY" is "vague, ambiguous, overly broad, and unduly burdensome," and the

3  phrase "involved in the ACCUSED INSTRUMENTALITY'S" design, development, and/or testing"

4  is "vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the

5  discovery of admissible information." Yelp then identified three employees: "Toby Waite,

6  Engineering Manager; Ivan Leichtling, Engineering Manager; Jason Fennell, Engineering Director."

7  Twitter responded by referencing a spreadsheet of several hundred employees it had produced. That

8  spreadsheet listed the employee's names, titles, and locations, but had no information regarding what

9  their duties or contributions were in relation. The defendants both indicated they were willing to meet

10  and confer to determine a reasonable limitation on the scope of the request.

11      Defendants objections to Interrogatory No. 1 are improper. Evolutionary has offered to limit

12  the interrogatory to software engineers/programmers involved in the development of the specific

13  "CRITICAL FEATURES" identified in the RFPs (e.g., use of user location in advertisement selection,

14  tracking of searches). There is nothing vague or ambiguous about an interrogatory asking for the

15  identities of the people who designed, developed, and tested the accused software applications. Nor

16  have Defendants established the existence or extent of any burden, which they are obligated to do.

17  *See Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D 281, 283 (C.D. Cal. 1998) ("The party who resists

18  discovery has the burden to show that discovery should not be allowed, and has the burden of

19  clarifying, explaining, and supporting its objections."); *Panola Land Buyers Assn v. Shuman*, 762 F.2d

20  1550, 1559 (11th Cir. 1985) (conclusory recitations of expense and burdensomeness are not

21  sufficiently specific to demonstrate why requested discovery is objectionable). Plaintiff does not have

22  access to the identities of the employees who developed Defendants' products. Defendants rejected

23  every limitation of the scope suggested by Evolutionary (e.g., limitation to employees involved in

24  development of the APIs explicitly identified in the briefs) and were unwilling to identify any

25  limitations on scope.

26      Common Interrogatory No. 2 requests "Separately for EACH ACCUSED

27  INSTRUMENTALITY, IDENTIFY EACH SOURCE CODE CONSTRUCT of that ACCUSED

28  INSTRUMENTALITY designed to create, receive, process, or output data in XML format, JSON

1  format, and/or other format that is substantially similar to XML format or JSON format."[8]  Defendants

2  again objected to the term "EACH ACCUSED INSTRUMENTALITY."  They also objected to the

3  phrase "EACH SOURCE CODE CONSTRUCT" as "vague, ambiguous, overly broad, and unduly

4  burdensome," and the phrase "substantially similar" as "vague and ambiguous." Defendants then

5  responded that a response was impossible in the interrogatory's current form.  But in Yelp's written

6  responses to the same interrogatory served on it individually in November 2013, it stated that it "will

7  make its source code available, subject to agreement on scheduling and protections sufficient to

8  maintain the source code's confidentiality, for inspection pursuant to Rule 33(d) of the Federal Rules

9  of Civil Procedure." (*Id.*, Ex. 16 at 4-5.)  As discussed above, Yelp later reneged on this promise when

10  meeting and conferring with Evolutionary, stating that it could not identify relevant source code and

11  that it did not believe this Court's Interim Protective Order provided sufficient protection.  (Patek

12  Decl., ¶ 20.) Defendants' objections are unfounded.  The interrogatory is clear.  It is basically a

13  request for a list of the components of the accused software products, which is reasonable.

14  Furthermore, Evolutionary offered to narrow its scope to the "CRITICAL FEATURES" such as APIs

15  and SDKs identified in the infringement contentions, which Defendants still rejected. Finally, as

16  discussed above, the interim protective order provides ample protection for Twitter and Yelp's source

17  code, and Patent L. Rule 2-2 prohibits withholding information in patent cases on grounds of

18  confidentiality without .

19      Common Interrogatory No. 3 requests "Separately for EACH SOURCE CODE CONSTRUCT

20  that YOU have been asked to IDENTIFY in Common Interrogatory No. 2, IDENTIFY, by full name,

21  place of residence, and position and/or title, EACH current or former employee of YOU, independent

22  contractor, and third party entity who authored, designed, developed, edited, tested, contributed to,

23  and/or supervised the creation, design, development, testing, and/or editing, of that SOURCE CODE

24  CONSTRUCT." Defendants incorporated and/or repeated their objections to the interrogatories

25  identified above; those objections are baseless for the same reasons described above.  Again,

26

27  [8] The Interrogatories define "SOURCE CODE CONSTRUCT" to mean "any class, function, routine, subroutine, procedure, method, or subprogram of SOURCE CODE, designed to perform one or more

28  tasks or operations and that has been assigned a name or title by which it can be identified"

1   Evolutionary is willing to narrow this interrogatory to software developers responsible for the code

2   that implements critical features such as selection of content based on geographic location and

3   tracking of searches.  Evolutionary has also made it clear that it does not actually require the identity

4   of every employee at Twitter or Yelp, nor every employee involved in developing software.

5          Common Interrogatory number 4 states, "Separately for EACH ACCUSED

6   INSTRUMENTALITY, IDENTIFY EACH DATABASE COLUMN used at ANY time since March

7   7, 2006 to carry out ANY functionality of that ACCUSED INSTRUMENTALITY. A complete

8   response must IDENTIFY, for EACH DATABASE COLUMN, the name of the table and database (or

9   other parent structure) that contains that DATABASE COLUMN and/or to which the DATABASE

10  COLUMN belongs." Evolutionary has offered to limit this interrogatory to databases underlying the

11  aspects of the accused systems that are identified in the infringement contentions as infringing.

12  Defendants repeated their earlier objection to the term "ACCUSED INSTRUMENTALITY" and

13  further objected that the interrogatory was "overly broad, unduly burdensome, vague, irrelevant, and

14  unlikely to lead to the discovery of admissible information to the extent it seeks information regarding

15  "ANY functionality" and "ANY time since March 7, 2006." With respect to the scope of "ANY

16  functions," Defendants' objection is misplaced, both because the interrogatory is already directed to

17  functions identified in the infringement contentions, and because Plaintiff offered to accept only

18  information relating to critical features (e.g., named APIs).  With respect to time relevance, the time

19  period is simply the period the Complaint accuses of infringing the patent—i.e., March 7, 2006

20  through the present.

21         Common Interrogatory No. 5 states, "IDENTIFY ALL Application Programming Interfaces

22  ("APIs") that YOU designed, developed, and/or made available for use, that were used by ANY

23  PERSON, at ANY time since March 7, 2006, to send data to, receive data from, or otherwise interface

24  with ANY ACCUSED INSTRUMENTALITY."  Defendants make the same baseless objections to

25  the terms "ACCUSED INSTRUMENTALITY" and the time period of "ANY time since March 7,

26  2006" described above.  In addition, they object to "ALL application Programming interfaces" and

27  "ANY PERSON" as  "overly broad, unduly burdensome, vague, irrelevant, and unlikely to lead to

28  discovery of admissible evidence."  These objections are misplaced because Defendants have not

– 17 –

1    established any burden; in fact, it appears that they each have a relatively limited number of APIs.

2    The interrogatory is also reasonably limited by the definition of "ACCUSED

3    INSTRUMENTALITY," and by the fact that Evolutionary has already identified several relevant

4    APIs in the infringement contentions, thereby providing Defendants with guidance regarding what

5    information is responsive. Despite this, Defendants have produced no information in response to this

6    interrogatory.

7          Common Interrogatory No 6 asks Defendants to "IDENTIFY and describe YOUR policies and

8    practices, if ANY, with respect to the filing, storage, retention, and destruction of DOCUMENTS

9    from March 7, 2006 to the present, including ANY suspension or modification of DOCUMENT

10   destruction or retention policies related to ANY ACCUSED INSTRUMENTALITY, the ASSERTED

11   PATENTS, or THIS MATTER. If YOU do not have such policies or practices, YOUR response

12   should so state."  In addition to their boilerplate objection to "ACCUSED INSTRUMENTATLITY,"

13   Defendants objected on the ground of attorney-client privilege and work product doctrine.  They then

14   responded that they have "taken appropriate steps to meet any preservation obligation under the

15   Federal Rules of Civil Procedure.  The Defendants' objection does not justify this uninformative

16   response.   While any legal advice communicated regarding how to implement a document retention

17   policy may be privileged, the policies themselves and the actions taken to implement them are

18   generally not.  *See, e.g.*, *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1317 (Fed. Cir. 2011).  To

19   the extent that Defendants have preserved information and documents, Plaintiff is entitled to know

20   what records have been maintained.  Furthermore, to the extent that Defendants have standard

21   document retention or destruction policies (e.g., deletion of storage tapes after X years), those are not

22   privileged, and are relevant to the extent they may help identify admissible evidence.

23         Common Interrogatory No. 7 states, "IDENTIFY EACH PERSON to whom YOU sent ANY

24   COMMUNICATIONS regarding the ASSERTED PATENTS and/or EVOLUTIONARY

25   INTELLIGENCE, and/or from whom YOU received ANY COMMUNICATIONS regarding the

26   ASSERTED PATENTS and/or EVOLUTIONARY INTELLIGENCE."  Defendants objected to this

27   interrogatory on the grounds that it seeks privileged information and seeks to have them search

28   custodians' files for email "outside of the procedures required by the Court ESI order." Neither of

– 18 –

1    these objections is justified.  First, the identities of persons involved in communications are never

2    privileged, even when the communication itself is privileged.  Second, asking Defendants to identify

3    persons to whom communications were sent is not a violation of this Court's ESI order.  That order

4    only controls to the extent electronically stored information is requested, and no such information is

5    requested by this interrogatory.  Furthermore, the interrogatory is not limited to emails, so the ESI

6    would not bar identification of persons involved in non-email communications, such as phone calls

7    and face-to-face conversations. Nonetheless, Twitter has not provided any response to this

8    interrogatory.

9          Interrogatory number 8 states, "For EACH year from 2005 through the present, provide a

10   complete organizational tree chart of YOU that identifies by full name and title EACH of YOUR

11   employees, officers, and directors with ANY managerial authority. YOUR response may exclude

12   EACH PERSON whose role was entirely unrelated to ANY ACCUSED INSTRUMENTALITY."  In

13   addition to their standard "ACCUSED INSTRUMENTALITY" objection, Defendants objected to

14   "ANY managerial authority as "vague, ambiguous, overly broad, and unduly burdensome." Twitter

15   then referenced the employee spreadsheet it referred to in those interrogatory responses, which is

16   entirely inadequate because it contains no information regarding which employees are managers, nor

17   what the relative hierarchy and responsibilities of those managers are.  Yelp did not identify any

18   personnel, not even the employees it had identified in response to interrogatory No. 1.  As with their

19   earlier objections, Defendants failed to identify any basis for their assertion of undue burden,

20   particularly given that the interrogatory specifically excludes personnel whose role was unrelated to

21   the ACCUSED INSTRUMENTALITY.   As with earlier interrogatories, Evolutionary proposes that

22   identification of managers involved in development of the APIs referenced in the infringement

23   contentions is a good place to start, but Defendants have rejected this proposal.  Defendants'

24   objections to this interrogatory are baseless.  It is common for organizations to keep organizational

25   charts identifying managers with various responsibilities, and Defendants have not identified any

26   reason why they cannot identify those managers with responsibilities for the development of the

27   Twitter/Yelp systems and services identified in the infringement contentions.

28          Interrogatories numbers 9 through 11 are directed to damages.  The parties have agreed that no

– 19 –

1    response to these interrogatories is due until damages discovery begins.

2          Common Interrogatory No. 12 requests "Separately for EACH ACCUSED

3    INSTRUMENTALITY, IDENTIFY EACH SOURCE CODE CONSTRUCT of that ACCUSED

4    INSTRUMENTALITY designed to use data caching for processing search queries."[9] Defendants

5    again objected to the term "EACH ACCUSED INSTRUMENTALITY."  They also objected to the

6    phrase "designed to use data caching for processing search queries" as "vague and ambiguous" and

7    objected to the interrogatory as a whole as seeking "information that is irrelevant and not reasonably

8    calculated to lead to the discovery of admissible evidence. Again, Defendants' objections are

9    unfounded.  The interrogatory is clear. The inquiry into the Defendants' data caching of searches is

10   likely to lead to relevant information, because the claims of the '682 patent recites "providing

11   information identifying containers that have previously been used to respond to one or more processed

12   queries that are substantially similar to the search query" and the infringement contentions specifically

13   identify portions of the "Twitter" and "Yelp" products that appear to use data caching to suggest

14   pertinent search phrases, which suggests that those products use some form of data caching to

15   facilitate identification of relevant information.  For example, the Twitter contentions state that "on

16   information and belief, the Yelp Product utilizes caching to identify containers with search results that

17   have been previously used to respond to one or more previously processed queries."  They also

18   identify use of saved searches and Twitter's predictive suggestion of the phrase "Oprah Winfrey"

19   based on the partial phrase "Oprah." (Patek Decl, Ex. 26, p. 74.) The Yelp infringement contentions

20   contain a parallel statement and identify predictive suggestions of search phrases utilizing the word

21   "restaurant" in combination with other common search terms. (*Id*., Ex. 27, p. 25.)  Furthermore,

22   Evolutionary proposed a narrowed scope of discovery (e.g., caching of data for the search functions,

23   APIs, and SDKs explicitly identified in the infringement contentions) for an initial production, which

24   Defendants rejected without offering a solution of their own.  Furthermore, as discussed above, the

25   interim protective order provides ample protection.

26   ───────────────

27   [9] "Data caching" is the process of storing data in a location that is easy to access relative to non-cached
     data, so that the cached data can be served quickly.

28

1    All of Defendants' specific objections to interrogatories numbers 1-8 and 12 should be

2    overruled or deemed waived and they should be ordered to provide complete (amended) response

3    within 20 days.

4                    **2.      Plaintiff's Remaining Requests for Production.**

5            A motion to compel document production is appropriate when a party fails to produce

6    relevant, non-privileged documents.  *See* Fed. R. Civ. P. 37(a)(2)(A), (B).  When that happens, prior

7    to filing a motion to compel, the movant must certify that it has in good faith conferred or attempted

8    to confer with the party failing to make discovery in an effort to secure information or material

9    without court action.  *Id*.; Civil L.R. 37-1.  Plaintiff, as set forth above, has complied with this

10   requirement.

11           Each of Plaintiff's document requests seeks documents that undeniably have a "tendency to

12   make the existence of any fact that is of consequence to the determination of the action more probable

13   or less probable than it would be without the evidence."  Plaintiff further narrowed those requests in

14   response to Defendants' objections.  (Safier Decl. Ex. P.)  As with all the discovery requests,

15   Defendants still stated that they were "standing on their objections." (Id. Ex. AA, BB.)  Defendants

16   should be ordered to produce all responsive documents and their objections should be deemed waived.

17           Request for production number 1 seeks "ALL SOURCE CODE of EACH ACCUSED

18   SOFTWARE APPLICATION." Each Defendant objected to this interrogatory as "vague and

19   ambiguous, overly broad, unduly burdensome, and unlikely to lead to the discovery of admissible

20   evidence to the extent it seeks SOURCE CODE that is unrelated to functionality reasonably

21   implicated by the ASSERTED PATENTS . . . and to the extent the request is not specifically limited

22   to any product specifically accused of infringing the asserted claims of the ASSERTED PATENTS."

23           The infringement contentions clearly identify "Twitter" and "Yelp" as the accused

24   instrumentalities. "Twitter" and "Yelp" are software systems run on computers owned by Twitter and

25   Yelp.  The SOURCE CODE for those products is part of the structure of those products and is

26   admissible evidence.  To the extent some portions of the source code for those products are more

27   relevant to this litigation than others, Evolutionary stated that it will accept an initial production that is

28   limited to specific functions and APIs identified in the infringement contentions.  Furthermore,

Evolutionary served RFPs directed to specific portions of Twitter and Yelp's source code cited in the infringement contentions, such as location-based features (RFPs 56-57), search-tracking features (RFPs 58-59), and specific API functions and arguments (RFPs 60-67, 70-76). Defendant still objected to those narrow requests.  Defendant's claim of burden is unsupported.  It is also disingenuous given that Defendants have refused to accept a limited production.  Defendants cannot complain that the RFPs are overbroad while simultaneously complaining that they are not broad enough to avoid further document collections.

Defendants also objected to RFP number 1 as calling for third party and privileged information.  Yet Defendants have produced no evidence that any SOURCE CODE relating to their products is property of third parties, nor have they supplied any basis as to how SOURCE CODE would be privileged as an attorney-client communication or work product.

Finally, Defendants objected to RFP number 1 as overbroad and premature to the extent that Evolutionary has not yet provided infringement contentions under this district's rules.  But Evolutionary served infringement contentions that comply with this Court's local patent rules on June 19, 2015.  As discussed above, Plaintiff cannot provide greater detail until it has had a chance to review Defendants' source code.  Neither defendant produced any documents.  This Court should order them to do so.

RFPs 2-10, 30-31, and 56-57 are directed to source code and technical documentation.   These RFPs range in breadth from RFPs directed to each accused instrumentality as a whole (e.g., RFP 1 ("ALL SOURCE CODE RELATING TO EARCH ACCUSED SOFTWARE PRODUCT"), to specific APIs and functions cited in the brief (e.g., RFP 62 ("ALL DOCUMENTS RELATING TO the "Places" object of ANY ACCUSED SOFTWARE APPLICATION, ANY TWITTER AP and/or ANY TWITTER SDK")). Defendants objected to these RFPs in a manner essentially identical to their response to RFP number 1.  These objections are indefensible, as they indicate that any discovery request served by Evolutionary will be deemed overly broad, even if they are in fact narrowly tailored.

Yelp RFPs numbers 11, 14, and 16-17 [and Twitter RFPs numbers 11-12, 15, and 17-18] seek documents "sufficient to identify" employees and parties involved in development (RFP 11) testing (RFP 14[/15]), marketing (RFP 16[/17]), and distribution (RFP 17[/18]) of "Yelp" and "Twitter."

1  Defendants objected to these RFPs as "vague, ambiguous, overly board, unduly burdensome, and not

2  reasonably calculated to lead to the discovery of admissible evidence.  But there is nothing vague or

3  ambiguous in an RFP asking for documents sufficient to identify employees involved in development,

4  testing, marketing, and distribution of the accused products.  Nor are those requests overly broad or

5  irrelevant, since these employees are likely to have admissible evidence.  Again, Defendants have not

6  supported their claim of undue burden, and Evolutionary is willing to accept an initial production

7  focused on key employees involved in the development of those specific portions of the accused

8  instrumentalities that are cited in the infringement contentions.

9       RFPs 33-34 and 38-39 seek "ALL DOCUMENTS" documents relating to Defendants' notice

10  of the patents and willfulness, including "when and how [each Defendant] first became aware of the

11  ASSERTED PATENTS" (RFP 33),  documents "reflecting COMMUNICATIONS RELATING TO

12  the ASSERTED PATENTS or ANY other EVOLUTIONARY INTELLIGENCE patent, including

13  COMMUNICATIONS with THIRD PARTIES"  (RFP 34), "ANY written or oral opinions received or

14  solicited by YOU RELATING TO the validity, enforceability, infringement, or scope of ANY claims

15  of the ASSERTED PATENTS and (ii) the preparation of ANY such opinions, INCLUDING drafts,

16  notes, and ANY DOCUMENTS relied on in the preparation of ANY such opinions" (RFP 38), and

17  "ALL opinions of counsel RELATING TO the ASSERTED PATENTS" (RFP 39).  Defendants

18  objected to these interrogatories on the grounds of attorney-client privilege and attorney work product

19  doctrine, but that is not a valid objection for any opinion upon which they intend to depend at trial.

20  *See In re Seagate*, 497 F.3d 1360, 1369 (Fed. Cir. 2007). They also failed to establish that any

21  communications with "THIRD PARTIES" are privileged.  Defendants also objected that the RFPS

22  call for documents in the custody and control of THIRD PARTIES, but this objection has no

23  relevance to documents that *are* in the Defendants' control. Defendants further objected to the request

24  for "ALL opinions of counsel," on the ground that it was "vague, ambiguous, overly broad, unduly

25  burdensome, and not reasonably calculated to lead to discovery of admissible evidence."  The vague

26  and ambiguous objections appear to be boilerplate language, as they do not identify which aspect of

27  RFP 39 is vague or ambiguous.  Nor do they provide evidence supporting undue burden or

28  overbreadth.. The relevance objection is also specious, since any communication or opinion regarding

1  the claims and defenses of this case is by its nature likely to lead to relevant and admissible evidence

2  relating to those claims and defenses.

3      RFPs 32, 35-37 and 40-49 seek documents relating to the claims and defenses asserted by

4  Defendants in this litigation, including claim construction (RFP 35), documents relating to invalidity,

5  prior art, and unenforceability (RFPs 37, 40-47), and documents relating to Defendants' non-

6  infringement defense (RFPs 36, 48-49). Defendants objected to these RFPs on the ground of attorney-

7  client privilege and work product doctrine, but they have not explained how documents such as prior

8  art (which is usually published in books or journals) could be privileged.  They also objected to the

9  RFPs as "vague, ambiguous, overly broad, and unduly burdensome," without providing any

10  explanation as to why they were. They again objected to the RFPs as calling for documents not in

11  their possession, or which are privileged or confidential information belonging to third parties, neither

12  of which is relevant to the extent they do have responsive documents in their possession.

13      RFPs 50-55 seek documents relating to the Defendants document management systems and

14  policies. Defendants objected to these RFPs as "vague and ambiguous, overly broad, unduly

15  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   For

16  example, they objected to RFP 50 "to the extent the request seeks documents identifying and

17  describing "ANY" systems or processes for handling or managing documents relating to "ANY of the

18  ACCUSED SOFTWARE APPLICATIONS" and is not limited to a reasonable subset of documents."

19  During the meet and confer, Evolutionary stated that it would accept documents that contain

20  Defendants standard document retention policies in effect during the period of alleged infringement

21  (2007 to today) as a starting point.  Defendants' counsel stated during the meet and confer that they

22  would look into producing such policies.  However, nothing has been produced as of this date.

23      Yelp RFPs 89 and 90 (and Twitter RFPs 87 and 88) are directed to organizational charts and

24  the corporate ownership structure of each defendant.  The Defendants objected to these RFPs as

25  vague, ambiguous, overly broad, and unduly burdensome.  These objections are specious.  The RFPs

26  are straightforward requests for documents outlining the Defendants' internal organization, and

27  defendants likely have easy access to such documents (e.g., through their human resource

28  departments).

– 24 –

1    Yelp RFPs 91-92 and 103-109 [Twitter RFPs 89-90 and 101-107] are directed to documents

2  relied upon in drafting responses to interrogatories (RFP 91[/89]), the Defendants' answers and

3  counterclaims (RFP 104-105[/102-103]), and Rule 26 disclosures (RFP 103[/101]), as well as

4  documents that are relevant to the complaint and the allegations therein (RFPs 106-08[/104-106]).

5  Defendants made the same boilerplate objections (e.g., vague), which are unfounded because there is

6  nothing vague, ambiguous, overbroad, or unduly burdensome in a request for production of

7  documents relied upon when drafting litigation responses.  Defendants also objected to these request

8  as calling for privileged documents.  However, to the extent any document relied upon is not

9  privileged, it is relevant and should be produced.

10    Yelp RFPs 93-102 seek communications with THIRD PARTIES regarding THIS

11  LITIGATION or the IPRS and documents relating to those communications, including any common

12  defense agreement.  Defendants made the same boilerplate objections of vagueness, ambiguity,

13  overbreadth, and undue burden that they had made before, all of which are baseless for reasons similar

14  to those described above in for other RFPs.  Defendants also objected on the ground of privilege and

15  attorney work product.  Even assuming that any communications regarding this litigation within any

16  joint defense group may be privileged, the joint defense agreement itself is not privileged.  Nor is it

17  the case that every communication with a THIRD PARTY is necessarily a communication to a

18  member of that joint defense group.  To the extent any communications regarding this LITIGATION

19  or the IPRs exist that are to or from THIRD PARTIES outside of that group, those communications

20  are relevant not privileged, and must be produced.

21        **D.    Defendants Should Be Required To Present Witnesses For Deposition**
             **Pursuant To The Rule 30(b)(6) Notice.**

22

23      Federal Rule of Civil Procedure 30 governs depositions by oral examination. Specifically, it

     provides that "[a] party may, by oral questions, depose any person, including a party, without leave of

24  court except as provided in Rule 30(a)(2)…." Fed. R. Civ. P. 30(a)(1).  As set forth above, Plaintiff

25  properly noticed Defendants' depositions pursuant to Rule 30(b)(6).   (Patek Decl.,  ¶ 12,  Exs. 19-20.)

26  Defendants have refused to identify any witnesses. (Patek Decl., ¶ 13.) This Court should order

27  Defendants to identify 30(b)(6) witnesses to testify regarding Twitter and Yelp's products.

28

**IV.     CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that the Court (1) order Defendants, within 21 days, to produce interrogatory responses and documents responsive to Evolutionary's RFPs, including source code, (2) order Twitter and Yelp to identify witnesses for 30(b)(6) depositions within 21 days and appear for deposition, and (3) order Defendant to pay Plaintiff's costs, including attorneys' fees, incurred in the course of filing and arguing this Motion and for Defendants' failure to appear at deposition.

Dated:  October 2, 2015                    **GUTRIDE SAFIER LLP**

By: /s/ Anthony J. Patek

Adam J. Gutride
Seth A. Safier
Todd Kennedy
Anthony J. Patek
Marie McCrary
100 Pine Street, Suite 1250
San Francisco, California 94111