1
2
3
4
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

EVOLUTIONARY INTELLIGENCE, LLC

                    Plaintiff,

     v.

SPRINT NEXTEL CORP. et al.,

                   Defendants.

(Proposed caption: In re Evolutionary Intelligence Patent Litigation.)

CASE NO. 5:13-cv-4513-RMW

**PLAINTIFF EVOLUTIONARY**
**INTELLIGENCE LLC'S NOTICE OF**
**MOTION AND MEMORANDUM OF**
**POINTS AND AUTHORITIES IN**
**SUPPORT OF ITS MOTION FOR**
**RELIEF FROM JUDGMENT**

**[Fed. R. Civ. P. 60(b)(6)]**

Hearing Date: February 6, 2019
Time: 10:00 AM
Dept: Courtroom 6, 4th Floor

# TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................................................................iii

I.      INTRODUCTION ........................................................................................................... 1

II.      BACKGROUND ............................................................................................................. 3

III.      PROCEDURAL HISTORY ........................................................................................... 9

IV.      APPLICABLE LAW .................................................................................................... 11

       A.     Ninth Circuit Law Governs This Court's Rule 60(b)(6) Analysis. ...................... 11

       B.     Legal Standard For Relief Under Rule 60(b)(6). ................................................. 12

V.      ARGUMENT ............................................................................................................... 13

       A.     The Federal Circuit's Decisions in *Berkheimer* and *Aatrix* Represent an Intervening Change in the Law of § 101, Holding That § 101 Determinations Involve Questions of Fact, and May Be Resolved at the Rule 12 Stage "Only" Where "There Are No Factual Allegations" That Prevent Resolving § 101 As a Matter of Law........................ 13

       B.     Under *Phelps*' Six-Factor Test for Determining Whether "Extraordinary Circumstances" Exist, Relief from this Court's 2015 Order is Warranted Under Rule 60(b)(6). .............................................................. 15

           1.     Lack of Clarity in the Law at the Time of the Original Decision........................................................................................................ 15

           2.     EI's Manifest Diligence in Pursuing its Claim for Relief. ....................... 16

           3.     Reopening the Case Would Not Upset the Parties' Interest in Finality................................................................................................... 16

           4.     Any Delay Between the Finality of the Judgment and the Instant Motion for Relief Under Rule 60(b)(6) is Minimal....................... 17

           5.     The Close Relationship Between the Original Judgment and the Subsequent Intervening Change in the Law. ....................................... 18

           6.     This Case Raises No Comity Concerns.................................................... 18

           7.     Additional Factors, Such as the "Risk of Injustice" and "Risk of Undermining Public Confidence in the Judicial Process," Warrant Vacatur Under Rule 60(b)(6). ..................................................... 18

       C.     Under *Berkheimer/Aatrix*, This Court Must Vacate Its 2015 Order and Consider EI's Factual Evidence Before Ruling On Subject Matter Eligibility Under § 101. ............................................................................ 19

           1.     Disputed Issue of Fact #1: Whether Statements in the Specification Show That EI's Claims Contain "Inventive Concepts" and Improvements to Computer Functionality,

i

Compared to Conventional Systems Using the "Static
Information Model."................................................................. 19

2.    Disputed Issue of Fact #2: Whether EI's Expert Testimony
Shows That One Skilled in the Art at the Time of Filing
(1998) Would Recognize EI's Claimed Inventions to Be
"Groundbreaking Departures from the Static Information
Model" Used by Conventional Systems.................................... 22

3.    Disputed Issue of Fact #3: Whether the Claim Terms
"Register" and "Gateway," in Combination With Other
Elements, Constitute Inventive Concepts Under § 101, In
Light of Evidence from the Specification, Expert Testimony,
and IPR Proceedings. ............................................................... 24

VI.    CONCLUSION ............................................................................................ 25

1

2

3

4

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,

    882 F.3d 1121 (Fed. Cir. 2018) ............................................................1, 2, 5, 10

*American Axle & Manufacturing, Inc. v. Neapco Holdings LLC*,

    2018 WL 1061371 (D. Del. Feb. 27, 2018) .......................................15

*Ancora Techs, Inc. v. HTC America, Inc.*,

    908 F.3d 1343 (Fed. Cir. 2018) ..................................................20, 21

*Anderson v. Kane*,

    2009 WL 3059122 (D. Ariz. 2009) ................................................15

*Ashland Oil, Inc. v. Delta Oil Prods. Corp.*,

    806 F.2d 1031 (Fed. Cir. 1986) .....................................................11

*Berkheimer v. HP Inc.*,

    881 F.3d 1360 (Fed. Cir. 2018) ..............................................*passim*

*Berkheimer v. HP Inc.*,

    890 F.3d 1369, 1370 (Fed. Cir. May 31, 2018)............................5, 15

*Broyhill Furniture Industries, Inc. v. Craftmaster Furniture Corp.*,

    12 F.3d 1080 (Fed. Cir. 1993) .......................................................12

*Buck v. Davis*,

    137 S.Ct. 759 (2017) ................................................................13, 18

*Connelly v. Hilton Grand Vacations Company*,

    2017 WL 5194598 (S.D. Cal. 2017) ..............................................12

*Enfish LLC v. Microsoft Corp.*,

    822 F.3d 1327 (Fed. Cir. 2016)...........................................7, 20, 21

*Eubank v. Terminix International, Inc.*,

    2016 WL 6277422 (S.D. Cal. 2016) ........................................12, 17

*Evolutionary Intelligence LLC v. Sprint Nextel Corp.*,

iii

138 S.Ct. 521 (2018) ........................................................................................10

*Evolutionary Intelligence LLC v. Sprint Nextel Corp.*,

   677 Fed.Appx. 679 (Fed. Cir. 2017) ...........................................................7, 10

*Gonzalez v. Crosby*,

   545 U.S. 524 (2005) .............................................................................................12

*In re Pacific Far East Lines, Inc.*,

   889 F.2d 242 (9th Cir. 1989).........................................................................3, 12

*Information Systems and Networks Corp. v. United States*,

   994 F.2d 792 (Fed. Cir. 1993)...........................................................................11

*Intellectual Ventures I LLC v. Symantec Corp.*,

   725 Fed.Appx. 976 (Fed. Cir. Mar. 15, 2018).............................................8, 24

*Jones v. Ryan*,

   733 F.3d 825 (9th Cir. 2013) .............................................................................17

*Lazare Kaplan Inter., Inc. v. Photoscribe Technologies, Inc.*,

   714 F.3d 1289 (Fed. Cir. 2013) .........................................................................11

*Local Intelligence, LLC v. HTC America, Inc.*,

   2018 WL 1697127 (N.D. Cal. Apr. 6, 2018)..................................................15

*Lopez v. Ryan*,

   678 F.3d 1131 (9th Cir. 2012) .............................................................12, 13, 15

*Papst Licensing Gmbh & Co. KG v. Xilinx Inc.*,

   2016 WL 4398376 (N.D. Cal. Aug. 18, 2016) ...................................................3

*Phelps v. Alameida*,

   569 F.3d 1120 (9th Cir. 2009)....................................................................passim

*Ritter v. Smith*,

   811 F.2d 1398 (11th Cir. 1987).........................................................................17

*TNS Media Research LLC v. TIVO Research and Analytics, Inc.*,

   223 F.Supp.3d 168 (S.D.N.Y. 2016) .............................................................2, 16

iv

*U.S. v. Colvin*,

    204 F.3d 1221 (9th Cir. 2000)............................................................................17

**Statutes**

35 U.S.C. § 101 .................................................................................................*passim*

**Other Authorities**

*IBG LLC v. Trading Techs. Int'l, Inc.*,

    2017 WL 3394060 (P.T.A.B. Aug. 7, 2017) .........................................................4

**Rules**

Fed. R. Civ. P. 12 ..................................................................................................6

Fed. R. Civ. P. 12(b) ..............................................................................................1

Fed. R. Civ. P. 12(c) ..............................................................................................1

Fed. R. Civ. P. 60(b)(6) .....................................................................................1, 3

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp. et al.*, Case No. 5:13-cv-4513-RMW
Plaintiff's Memorandum of Points and Authorities in Support of Motion For Relief from Judgment

**NOTICE OF MOTION**

NOTICE IS HEREBY GIVEN that on February 6, 2019 at 10:00 AM, or as soon thereafter as counsel may be heard, Plaintiff Evolutionary Intelligence, LLC ("EI") will and hereby does move for an order vacating the Court's Order Granting Defendants' Motion to Dismiss and for Judgment on the Pleadings, Dkt. No. 225 ("the 2015 Order"). This motion is made under Fed. R. Civ. P. 60(b)(6).

**REQUESTED RELIEF**

Pursuant to Fed. R. Civ. P. 60(b)(6), Plaintiff Evolutionary Intelligence, LLC ("EI") hereby moves for relief from this Court's October 6, 2015 Order Granting Defendants' Motion to Dismiss and for Judgment on the Pleadings, Dkt. No. 225 ("the 2015 Order"), on the basis of the intervening change in the law caused by the Federal Circuit's decisions in *Berkheimer v. HP Inc.,* 881 F.3d 1360 (Fed. Cir. 2018) and *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018), and the extraordinary circumstances of EI's case.

**STATEMENT OF THE ISSUES TO BE DECIDED**

Do the extraordinary circumstances of EI's case and the intervening change in the law under *Berkheimer/Aatrix* warrant relief from judgment?

**I.   INTRODUCTION**

Here, two months after EI's petition for certiorari was denied, the Federal Circuit adopted as controlling precedent in *Berkheimer/Aatrix* the very position for which EI had advocated throughout this case—namely, that 35 U.S.C. § 101 involves questions of fact. *Berkheimer/Aatrix* thereby undercut the basis for this Court's 2015 Order, in which the Court decided § 101 as a pure question of law and refused to consider EI's factual evidence or recognize any questions of fact relevant to its § 101 analysis.[1]

---

[1] The Court's 2015 Order granted § 101 motions brought by Defendants in all nine of the related cases (Case Nos. 13-04513, 13-04201, 13-04202, 13-04203, 13-04204, 13-04205, 13-04206, 13-04207, and 13-03587). For the sole purpose of deciding this instant motion for relief from the Court's 2015 Order under Rule 60(b)(6), EI separately moves to consolidate all nine of the related cases under the proposed caption *In re Evolutionary Intelligence Patent Litigation*, and to designate this case (No. 13-04513) as the lead case under that caption. Further, while some Defendants moved to dismiss under Fed. R. Civ. P. 12(b), and others under 12(c), because the

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp. et al.*, Case No. 5:13-cv-4513-RMW
Plaintiff's Memorandum of Points and Authorities in Support of Motion For Relief from Judgment

In dismissing EI's patent infringement suit on the pleadings, the Court held EI's two patents invalid under § 101: "[T]he court finds that both patents fail to claim patent-eligible subject matter, and GRANTS defendants' motion to dismiss and for judgment [of invalidity] on the pleadings." Dkt. No. 225, at 9. With this one order—without discovery or claim construction, much less a trial—the Court eviscerated EI's property rights, the life's work of the inventor, and the capital interests of his investors. To reach its decision, the Court treated the patent-eligibility test under § 101 as one of law with no underlying facts. Based on this understanding, the Court considered only the pleadings and the patents themselves. The Court refused to consider the declaration of EI's technical expert explicating EI's inventions and the improvements to computer processing they represented to a skilled artisan at the time of filing, and pointing out disputed factual issues necessary for the Court's decision. *See* Dkt. No. 225, at 8 n. 5 ("such a declaration is not appropriate for the court to consider"). Finally, the Court dismissed this case without allowing EI to file an Amended Complaint to set forth additional factual allegations in support of its position under § 101. *See* Dkt. No. 225, at 17.

But the Federal Circuit has now reversed course and clarified precedent, holding that § 101 involves issues of fact, and that Rule 12 dismissals such as this Court's 2015 Order are improper where facts supportive of eligibility under § 101 are alleged. As explained more fully *infra* Sec. V.A, in *Berkheimer* the Federal Circuit court held that Step Two of the § 101 analysis involves a question of fact. *See Berkheimer*, 881 F.3d at 1368-69 ("[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact"). In *Aatrix*, the Federal Circuit vacated the "district court's dismissal pursuant to Rule 12(b)(6)" because there were "factual allegations …, which when accepted as true, prevent dismissal pursuant to Rule 12(b)(6)." *Aatrix*, 882 F.3d at 1130. It held that § 101 may be resolved at the Rule 12 stage "**only** when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Id*. at 1125 (emphasis

---

Court did not distinguish between the two standards, EI refers here only to Defendants' "motion to dismiss." *See* Dkt. No. 225, at 8 n. 4.

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp. et al.*, Case No. 5:13-cv-4513-RMW
Plaintiff's Memorandum of Points and Authorities in Support of Motion For Relief from Judgment

added).  In *Berkheimer/Aatrix*, the Federal Circuit has thus clarified that determinations of patent-eligible subject matter under § 101 can no longer be viewed as pure questions of law and, where disputed factual issues are involved, are inappropriate for resolution at the Rule 12 stage.  Had this case been decided under now-controlling caselaw, Defendants' motion to dismiss would have been denied, since EI raised factual issues material to the § 101 determination in its Opposition Brief drawn from the patents' specification and its expert declaration.  *See* Dkt. No. 193; Dkt. No. 193-1.

Not every case warrants vacatur under Rule 60(b)(6) because of an intervening change in the law.[2]  But here, EI argued throughout this case—all the way to the Supreme Court—that factual issues were necessary to a determination of patent-eligible subject matter under § 101, and squarely raised those issues with supporting evidence before this Court, only to have its position adopted by the Federal Circuit less than three months after EI's petition for certiorari in its own case was denied. *See infra* Sec II-III.  EI's case thus presents "extraordinary circumstances" warranting relief under Rule 60(b)(6), and is on all fours with the leading Rule 60(b)(6) case in the Ninth Circuit.  *See infra* Sec V.B-C.  In order to vindicate EI's right to due process, and basic notions of fairness, EI deserves a chance to have its day in Court.  This is the basis for EI's Rule 60(b)(6) Motion.  Moreover, EI's motion is timely brought.  *See* Fed. R. Civ. P. 60(c) (stating that motions brought under Rule 60(b)(6) "must be made within a reasonable time"); *In re Pacific Far East Lines, Inc.*, 889 F.2d 242, 249 (9th Cir. 1989) ("What constitutes a reasonable time [for Rule 60(b)(6) motions] depends on the facts of each case.") (quotation omitted).

## II.    BACKGROUND

On October 6, 2015, this Court granted Defendants' motion to dismiss on the pleadings and held Plaintiff's two patents invalid as a matter of law under 35 U.S.C. § 101—refusing to consider

---

[2] While rare, vacatur under Rule 60(b) has been granted in at least one § 101 case due to intervening developments in § 101 jurisprudence.  *See TNS Media Research LLC v. TIVO Research and Analytics, Inc.*, 223 F.Supp.3d 168, 170-82 (S.D.N.Y. 2016) (granting vacatur of summary judgment of § 101 after "additional opinions issued by the Federal Circuit…further clarified" the "somewhat confused law" of § 101).  And, notably, the PTO has voluntarily sought vacatur of its own decision in at least one case in light of *Berkheimer/Aatrix*.  *See infra* note 13. Vacatur under Rule 60(b)(6) is appropriate here, as well.

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp. et al.*, Case No. 5:13-cv-4513-RMW
Plaintiff's Memorandum of Points and Authorities in Support of Motion For Relief from Judgment

1  factual evidence in the patents themselves and in an expert declaration submitted by Plaintiff,[3] while

2  failing to resolve or acknowledge the factual disputes Plaintiff raised in its Opposition brief.[4]  At the

3  time of this Court's decision, and throughout the history of this case, the state of the law under § 101

4  was in flux.  *See, e.g., Papst Licensing Gmbh & Co. KG v. Xilinx Inc.*, 2016 WL 4398376, at *3

6  (N.D. Cal. Aug. 18, 2016) (noting that § 101 is "a complex and developing area of law").  Indeed,

7  until *Berkheimer/Aatrix* were issued in February 2018, there was no certainty about whether subject

8  matter eligibility under § 101 was itself a pure question of law, or whether it was dependent on

9  underlying factual inquiries.  According to one scholar writing in this period, there were "deep

10  conflicts in the case law about whether eligibility [under § 101] is a question of law, fact, or a little

11  of both."[5]  As recently as December 1, 2017, district courts were imploring the Federal Circuit for

12  guidance on this very issue—guidance that was notably absent when this Court rendered its 2015

13  Order in this case.  *See, e.g., Intellectual Ventures II LLC v. FedEx Corporation*, 2017 WL 6002762,

14  at *2 n. 1 (E.D. Tex. Dec. 1, 2017) ("Guidance from the Federal Circuit regarding the specific factual

15  inquiries underlying a § 101 determination is badly needed.") (citation omitted).  The PTAB, too,

16  was uncertain whether "the question of patent-eligibility is a pure question of law" or "if the question

17  of patent-eligibility is a question of law based on underlying facts…[which] have the potential of

18  controlling the ultimate determination."  *IBG LLC v. Trading Techs. Int'l, Inc.*, 2017 WL 3394060,

19  at *13 (PTAB Aug. 7, 2017).[6]

---

[3] *See* Dkt. No. 225, at 8 n. 5 (refusing to consider Plaintiff's expert declaration from a skilled artisan in the relevant field, which "opines on various aspects of the prior art, and states his opinions regarding the ways in which the asserted patents claim patent-eligible subject matter," and instead deciding the eligibility of Plaintiff's patents under § 101 as a matter of law).

[4] *See* Dkt. No. 193, at 25 ("Plaintiff's 2015 Opposition Brief") (arguing that the court should "delay ruling on the present motions until after claim construction" in "light of" underlying "factual disputes," and noting that the "parties have serious disputes regarding claim construction"); Dkt. No. 193-1 (Declaration of Plaintiff's Expert Scott Taylor or "Taylor Decl."); *see also infra* Sec. V.C (outlining the specific factual issues relevant to the § 101 analysis of Plaintiff's Patents, raised in Plaintiff's 2015 Opposition brief and expert declaration).

[5] Paul R. Gugliuzza, *The Procedure of Patent Eligibility*, at 25, Paper Presented at the Chicago IP Colloquium at the Chicago-Kent College of Law (Jan. 23, 2018), *available at* http://chicagoip.com/files/2018/01/Gugliuzza.pdf

[6] Throughout the period leading up to *Berkheimer/Aatrix*, courts and commentators expressed their misgivings with the practice of deciding § 101 as a pure question of law, as another court's 2015 Order.  *See, e.g., Intellectual Ventures II LLC*, 2017 WL 6002762, at *2 n. 1 (E.D. Tex. Dec. 1, 2017) ("Resolving validity issues at the Rule 12 stage can also tempt courts, sometimes

4

In February 2018, the Federal Circuit issued a pair of watershed decisions that changed all this, and in May 2018 denied en banc rehearing, confirming those decisions as controlling precedent. In *Berkheimer* and *Aatrix*, the Federal Circuit resolved that the analysis of patent-eligible subject matter under § 101 is necessarily dependent on **factual** issues—in direct conflict with this Court's 2015 Order, which treated its § 101 determination as a **purely legal** question and refused to consider Plaintiff's evidence raising disputed issues of fact. *Compare* Dkt. No. 225, at 8 n. 5 (refusing to consider factual disputes raised by EI and factual evidence in EI's expert declaration from a skilled artisan in the relevant field, instead making its determination under § 101 as a matter of law), *with Berkheimer*, 881 F.3d at 1368 (holding that the "question of whether a claim element or combination of elements is well-understood, routine, and conventional to a skilled artisan in the relevant field" at Step Two of the § 101 analysis "is a question of fact"), *and Aatrix*, 882 F.3d at 1125 (eligibility under § 101 may be resolved at the Rule 12 stage "**only** when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law") (emphasis added). In declining to rehear *Berkheimer/Aatrix* en banc, five Federal Circuit judges wrote in concurrence that determining "[w]hether a claim element or combination of elements would have been well-understood, routine, and conventional to a skilled artisan in the relevant field at a particular point in time may require weigh[ing] evidence, mak[ing] credibility judgments, and addressing narrow facts that utterly resist generalization." *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1370 (Fed. Cir. May 31, 2018) ("*Berkheimer II*") (Moore, Dyk, O'Malley, Taranto, & Stoll, JJ., concurring denial of reh'g

---

improperly, to conclude that certain concepts are conventional or routine by way of judicial notice or treating this potentially factual question as a purely legal one…Moreover ignoring the role of factual determinations in the § 101 analysis subjects the resulting decision to de novo review, producing increasing uncertainty in this area of the law and preventing trial courts and juries from serving as frontline adjudicators of facts"); *see also* Timothy R. Holbrook & Mark D. Janis, *Patent-Eligible Processes: An Audience Perspective*, 17 Vand. J. Ent. & Tech. L. Rev. 349, 362, 382 (2015) (observing that courts were deciding § 101 with "virtually nothing to guide and focus the judicial imagination," a "dynamic [that] becomes particularly salient when considering the procedural posture of these cases – motions to dismiss under Rule 12(b)(6) or 12(c)," and arguing against the courts' "problematic" practice of "kick[ing] the hypothetical person of ordinary skill in the art to the curb in favor of a discretionary analysis [by the court] that need not be constrained to establish qualifying prior art evidence"); Raymond A Mercado, *Resolving Patent Eligibility and Indefiniteness in Proper Context: Applying* Alice *and* Aristocrat, 20 Va. J.L. & Tech. 240, 250, 257 (2016) (arguing that "[c]ourts are improperly resolving these cases in a vacuum, substituting their own perspective for that of the skilled artisan and ignoring critical fact issues.").

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp. et al.*, Case No. 5:13-cv-4513-RMW
Plaintiff's Memorandum of Points and Authorities in Support of Motion For Relief from Judgment

en banc).  The concurrence pointed out that the question underlying Step Two of the § 101 analysis "is a question of historical fact."  *Id.* at 1371 n. 3.

In this case, EI raised numerous factual issues and offered factual evidence which—had this Court treated its § 101 determination as dependent on underlying factual inquiries, as required under now-controlling case law—should have led to the denial of Defendants' motion to dismiss.  *See infra* Sec. V.C. (outlining the specific factual issues relevant to the § 101 analysis of EI's Patents, raised in EI's specification, opposition brief, and expert declaration).  Under *Berkheimer/Aatrix*, EI would have had the opportunity to make its case on a more developed evidentiary record, and to amend its complaint to add factual allegations relevant to § 101.  Instead, this Court declared EI's two patents invalid without considering factual evidence in support of their validity, including: 1) statements in the patents themselves supporting the unconventionality of the inventions, such as their use of "**unique**" "value evolving container registers in conjunction with" other components, which "allows the container to establish and evolve its own identity on the system"—enabling the "dynamic governance of information" "**utilized for the first time**" in EI's patents to "**upgrade the utility of, and develop intelligence in, a computer network**" and reduce the "time consuming" search techniques of the prior art[7]; 2) expert testimony from a skilled artisan in the relevant field (EI's expert, Scott Taylor) describing EI's inventions as "groundbreaking departures" from the state of the art in 1998—the year the patents were filed—and comparing EI's claimed uses of "***dynamic*** modifications in order to improve future processing efforts by computers" and make "computers more efficient" than they were the under "static information model" prevailing in conventional systems of the prior art; and 3) evidence from proceedings before the Patent Trial & Appeal Board ("PTAB") bearing on the proper construction of the claim terms "register" and "gateway," and suggesting that these terms (in combination with other claim elements) constitute "inventive concepts."  EI's evidence showed that—in contrast to conventional systems in which data remained "inert, except by direct intervention of users"—EI's "dynamic registers are updated with information

---

[7] *See* Dkt. No. 1-2 ("Exhibit A '536 Patent"), at 12:46-13:2; 13:42-13:44; 1:17-1:47 (emphasis added).  EI's two patents—U.S. 7,010,536 and 7,702,682—share the same specification.

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp. et al.*, Case No. 5:13-cv-4513-RMW
Plaintiff's Memorandum of Points and Authorities in Support of Motion For Relief from Judgment

regarding their use, allowing them to evolve without direct human input." Dkt. No. 193-1 ("Taylor Decl.") ¶ 34; ¶ 18. Thus, EI's evidence showed that its patents, in contrast with conventional systems, improved the functioning of computers processing data by, e.g., allowing improved search queries based on historically successful prior searches, or the relevance of content vis-à-vis time or location. To achieve these improvements, EI's patents employed an unconventional combination of software components: "unique" "value evolving container registers in conjunction with" other components which, together, "allows the container to establish and evolve its own identity on the system." Indeed, EI's specification flatly stated that the "present invention" "upgrade[d] the utility of… computer networks by offering the means to create and manipulate information containers with dynamic registers." Dkt. No. 1-2 at 12:46-13:2; 1:17-1:20. *See infra* Sec. V.C. Regardless of whether Defendants or the Court agreed with EI on the merits, these factual allegations had to be considered in the light most favorable to EI, requiring at the very least, a denial of Defendants' Rule 12 motion. *See* Fed. R. Civ. P. 12. Indeed, any fair and serious consideration of such evidence should ultimately confirm the eligibility of EI's patents under § 101. *See, e.g., Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1355 (Fed. Cir. 2016) (holding patent claiming software improvement to "computer functionality" patent-eligible under § 101).

After this Court's 2015 Order, EI argued strenuously on appeal before the Federal Circuit, in a petition for rehearing, and finally in its petition for certiorari to the Supreme Court, that the determination of patentable subject matter under § 101 was dependent on factual issues, yet it lost at every stage, including the denial of certiorari to the Supreme Court —only to have this same question finally clarified by the Federal Circuit in *Berkheimer/Aatrix* and EI's position vindicated **less than three months after** EI's own petition for certiorari was denied by the Supreme Court. *See Evolutionary Intelligence LLC v. Sprint Nextel Corp.*, 677 Fed.Appx. 679 (Fed. Cir. 2017), *cert. denied*, 2017 WL 4811478 (U.S. Dec. 4, 2017).

That the dismissal and invalidation of EI's patents was based solely on the pleading papers, without consideration of any of the underlying factual issues raised by EI, is precisely the sort of manifest injustice that relief under Rule 60 was designed to redress. As the Ninth Circuit observed

in the *habeas* context, "when a dismissal of a habeas petition rests upon an answer to an open legal question that is promptly rejected and then replaced in a more authoritative opinion by the very answer proposed by a diligent but unsuccessful petitioner, the petitioner is entitled to seek reconsideration of the dismissal entered against him." *Phelps v. Alameida*, 569 F.3d 1120, 1124-1127 (9th Cir. 2009) (reversing denial of Rule 60 motion based on an intervening change in the law, where the legal "position" the movant "had advocated all along" while the legal question was still "open" eventually proved to be "legally correct" once it was adopted it as precedent in another case). That is exactly the case here, in the § 101 context.  And here, relief under Rule 60 is especially warranted because, otherwise, "the true merits of [EI's] case might never be considered." *Phelps*, 569 F.3d at 1140 (quotation omitted).  Unless this Court's 2015 Order is vacated and EI's factual evidence relevant to the § 101 analysis is considered, the true merits of EI's case will not be heard. The Court's 2015 Order, which expressly refused to consider factual evidence submitted by EI, "precludes examination of the full merits" of EI's case, preventing consideration of the specific factual issues relevant to a proper § 101 analysis, and resulting in a judgment of patent invalidity without any consideration of the merits.  *Phelps*, 569 F.3d at 1140 (explaining that relief under Rule 60(b)(6) is especially warranted where "denial of relief [would] preclude[] examination of the full merits" and "that in such instances even a slight abuse of [discretion] may justify reversal.") (quotation omitted).  Indeed, in this case, the invalidation of an inventor's life's work and property, without any consideration of the factual evidence EI submitted in support, contravenes EI's right to due process and cries out for relief under Rule 60(b)(6).

This is particularly so, given that the former Chief Judge of the Federal Circuit has singled out the decision in this case as "difficult, if not impossible, to reconcile" with other Federal Circuit rulings and testified to Congress that it is "[p]articularly troubling . . . when validly issued patent claims are stricken in district court at the pleading stage, without regard to construing the patent claims," as was done here.[8]   Even more importantly, the Federal Circuit itself has, since

---

[8] Paul R. Michel, *The Impact of Bad Patents on American Businesses, Supplemental Statement of Judge Paul R. Michel (Ret.) Before the Subcommittee on Courts, Intellectual Property, and the*

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp. et al.*, Case No. 5:13-cv-4513-RMW
Plaintiff's Memorandum of Points and Authorities in Support of Motion For Relief from Judgment

*Berkheimer/Aatrix*, specifically pointed to the importance of "expert testimony" when determining the "conventionality of [a patent's] components" under § 101.  *See Intellectual Ventures I LLC v. Symantec Corp.*, 725 Fed.Appx. 976, 978 n. 1 (Fed. Cir. Mar. 15, 2018) (affirming district court's holding of ineligibility under § 101 because patent owner "did **not** offer expert testimony to show the lack of conventionality" of its claimed invention) (emphasis added).  In doing so, the Federal Circuit followed the holdings of *Berkheimer/Aatrix* to their logical conclusion, suggesting that the presence of expert testimony attesting to the unconventionality of a claimed invention (as here) might alone be sufficient to preclude resolution of § 101 on a motion to dismiss.  The Federal Circuit's decision in *Symantec* demonstrates that, where a patent owner submits expert testimony "show[ing] the lack of conventionality" of his claimed invention—precisely what EI did here—he has effectively raised a disputed issue of fact sufficient to preclude resolution of § 101 at either the Rule 12 or summary judgment stage.  *Symantec*, 725 Fed.Appx. at 978 n. 1.

As explained below, this Court's 2015 Order Granting Defendants' Motion to Dismiss is in conflict with controlling law in *Berkheimer/Aatrix*.  The "extraordinary circumstances" of EI's case, and the *Phelps* factors for granting relief under Rule 60(b)(6), strongly warrant granting EI's Motion.  Accordingly, this Court should grant EI's instant Motion for Relief, vacate its 2015 Order, and allow EI's case to proceed.

## III.   PROCEDURAL HISTORY

EI filed complaints for patent infringement against Defendants in October 2012.  The Court stayed litigation after Defendants filed <u>eight</u> petitions before the PTO seeking *inter partes* review of EI's two patents.  *See* Dkt. No. 123.  The PTAB rejected seven of those petitions and, as to the eighth, held a trial on the '536 patent, issuing final judgment in EI's favor affirming every claim at issue as valid.  Following the confirmation of validity by the PTAB, the parties jointly filed a status report requesting a case management conference, and the stay was lifted.  *See* Dkt. No. 185.

---

*Internet*, at 18 (Sep. 12, 2017), *available at* http://www.ipwatchdog.com/wp-content/uploads/2017/09/Supplemental-Statement-ofPaul-R-Michel-Sept-12-2017.pdf

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp. et al.*, Case No. 5:13-cv-4513-RMW
Plaintiff's Memorandum of Points and Authorities in Support of Motion For Relief from Judgment

Defendants then moved to dismiss EI's complaints under Rule 12, arguing that EI's two patents were invalid for failure to claim patent-eligible subject matter under § 101.  *See* Dkt. No. 188.  EI opposed, arguing that "Section 101 analysis is 'rife with underlying factual issues," citing evidence from the specification and submitting expert testimony from a skilled artisan in the relevant field supporting the unconventionality of the patents at Step Two of § 101, and requesting claim construction.  *See* Dkt. No. 193 at 24; Dkt. No. 193-1.  On October 6, 2015, this Court granted Defendants' motion to dismiss and held EI's patents invalid.  *See* Dkt. No. 225.  In doing so, the Court also denied EI's request for claim construction and refused to admit, much less consider, EI's expert testimony.

EI then appealed this Court's 2015 Order to the Federal Circuit, arguing *inter alia* that "the question of patent eligibility under section 101…necessarily depends on underlying factual issues," that this Court had "refused to consider the facts that were set forth in the declaration of [EI's] computer science expert, Scott Taylor," and "relied upon no evidence to support the factual determinations underpinning the court's decision." *See* Ex. 1 at 18, 27-28.[9]  The Federal Circuit affirmed this Court's order on February 17, 2017.  *See Evolutionary Intelligence LLC v. Sprint Nextel Corporation*, 677 Fed.Appx. 679 (Fed. Cir. Feb. 17, 2017).  On April 19, 2017, EI petitioned for rehearing and rehearing *en banc*, arguing *inter alia* that "a 'pleadings invalidation' for failure to satisfy section 101 is improper where conflicting factual issues exist" because "the analysis under § 101…is rife with underlying factual issues." *See* Ex. 2 at 7-8, 13.   On May 24, 2017, the Federal Circuit denied EI's petition in an unreported order.

Undeterred, EI filed a petition for certiorari before the Supreme Court on October 23, 2017, arguing *inter alia* that "[b]oth steps" of the § 101 "analysis frequently involve disputed factual issues," and that here the "district court improperly resolved factual disputes against [EI] by comparing the claimed invention to 'age-old forms of information processing'" refuted by evidence from the specification and EI's expert, and by "determining—necessarily as a factual matter—that

---

[9] EI hereby requests this Court take judicial notice of these and other filings, attached as Exs. 1-3, since they are evidence of EI's diligence and support its Motion. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006).

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp. et al.*, Case No. 5:13-cv-4513-RMW
Plaintiff's Memorandum of Points and Authorities in Support of Motion For Relief from Judgment

the patent's methodology was similar to other previous methods." *See* Ex. 3 at 12 & 17.  Indeed, the first question presented in EI's petition for certiorari asked whether a court is authorized "to invalidate a patent solely on the pleadings based on an abstractness argument that depends upon one view of a disputed question of fact." *Id*. at i.  On December 4, 2017, the Supreme Court denied EI's petition for certiorari.  *See Evolutionary Intelligence LLC v. Sprint Nextel Corp.*, 138 S.Ct. 521 (2018).

Less than three months after this denial, the Federal Circuit finally clarified that, as EI had argued all along, a determination of patent-eligible subject matter under § 101 necessarily involves questions of fact, and that it may be rendered at the Rule 12 stage "**only** when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix*, 882 F.3d at 1125 (emphasis added); *Berkheimer*, 881 F.3d at 1368 (holding that the "question of whether a claim element or combination of elements is well-understood, routine, and conventional to a skilled artisan in the relevant field" at Step Two of the § 101 analysis "is a question of fact"). On May 31, 2018, the Federal Circuit denied en banc rehearing in *Berkheimer* and *Aatrix*.  EI now files the instant Motion for Relief from the Court's 2015 Order under Rule 60(b)(6).

## IV.   APPLICABLE LAW

### A.   Ninth Circuit Law Governs This Court's Rule 60(b)(6) Analysis.

Because Rule 60(b) is "procedural in nature and not unique to patent law," Ninth Circuit law governs this Court's analysis of motions under Rule 60(b), except where "a district court's ruling under Rule 60(b) turns on substantive issues unique to patent law," in which case Federal Circuit law would apply.  *Lazare Kaplan Inter., Inc. v. Photoscribe Technologies, Inc.*, 714 F.3d 1289, 1292 (Fed. Cir. 2013).  Thus, even where the intervening change pertains to patent law, a Rule 60(b) motion merely requires the Court to apply the law of the regional circuit and decide whether relief is warranted.  *See, e.g., Ashland Oil, Inc. v. Delta Oil Prods. Corp.*, 806 F.2d 1031, 1032-33 (Fed. Cir. 1986) (deciding a Rule 60(b) motion under the law of the regional circuit, though the intervening change in the law was a change in obviousness doctrine under 35 U.S.C. § 103).  The leading Ninth Circuit case setting forth factors to guide district courts in granting relief under Rule 60(b)(6) is

*Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009), which governs the Court's analysis here. This case does not require the Court to decide any "substantive issue[] unique to patent law," but simply to assess the intervening change in the law of § 101 and, applying the factors set forth in *Phelps*, to decide whether relief from the Court's 2015 Order is warranted under Rule 60(b)(6). As in *Ashland*, all this Court need do is apply the Ninth Circuit's current test in *Phelps* governing the analysis of a Rule 60(b)(6) motion, in the context of the intervening change in the law of § 101 represented by *Berkheimer/Aatrix*, and in light of the facts of this case. However, even if a "substantive" patent law issue were implicated in this case and Federal Circuit law therefore governed this Court's analysis, the Federal Circuit has not set forth specific factors guiding the analysis of Rule 60 motions. *See, e.g., Information Systems and Networks Corp. v. United States*, 994 F.2d 792, 795 (Fed. Cir. 1993) ("While we have no considered binding case law precedent concerning . . . interpretation of . . . Rule 60(b)(1), we are not unmindful of the actions of our sister circuits that have thoroughly considered this issue."). Thus, the Ninth Circuit's factors in *Phelps* are still the natural starting-point for this Court's analysis. *See Broyhill Furniture Industries, Inc. v. Craftmaster Furniture Corp.*, 12 F.3d 1080, 1083 n. 1 (Fed. Cir. 1993).

### B.     Legal Standard For Relief Under Rule 60(b)(6).

Rule 60(b)(6) "affords courts the discretion and power to vacate judgments whenever such action is appropriate to accomplish justice." *Phelps*, 569 F.3d at 1135. A motion under "Rule 60 (b)(6) must be brought within a reasonable time," and "[w]hat constitutes a reasonable time depends on the facts of each case." *In re Pacific Far East Lines, Inc.*, 889 F.2d 242, 249 (9th Cir. 1989); Fed. R. Civ. P. 60(c). "[T]he exercise of a court's ample equitable power under Rule 60(b)(6) to reconsider its judgment requires a showing of extraordinary circumstances." *Phelps,* 569 F.3d at 1135. In *Phelps*, the Ninth Circuit recognized that a motion for relief under Rule 60(b)(6) may be predicated on an intervening change in the law (as here), and articulated six "factors" intended to provide "useful guidance for courts applying Rule 60(b)(6)." *Id*. at 1137. The "six factors" set forth in *Phelps* "may be considered, among others, to evaluate whether extraordinary circumstances exist" warranting relief under Rule 60(b)(6). *Lopez v. Ryan*, 678 F.3d 1131, 1135 (9th Cir. 2012). Those

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp. et al.*, Case No. 5:13-cv-4513-RMW
Plaintiff's Memorandum of Points and Authorities in Support of Motion For Relief from Judgment

factors have since been applied in many contexts beyond the petition for *habeas corpus* at issue in *Phelps*. *See, e.g., Connelly v. Hilton Grand Vacations Company*, 2017 WL 5194598 (S.D. Cal. 2017) (applying *Phelps* factors and granting Rule 60(b)(6) motion based on intervening change in the law relating to finality of a stipulated dismissal of class action); *Eubank v. Terminix International, Inc*., 2016 WL 6277422 (S.D. Cal. 2016) (applying *Phelps* factors and granting Rule 60(b)(6) motion based on intervening change in the law relating to federal preemption of state rule barring waiver of class actions under PAGA).

These factors include: 1) "the nature of the intervening change in the law," 2) the movant's "exercise of diligence in pursuing the issue," 3) the parties' reliance "interest in finality," 4) the extent of "delay between the finality of the judgment and the motion for Rule 60(b)(6) relief," 5) the "degree of connection" between the original judgment and the subsequent decision embodying the change in the law, and 6) any concerns regarding the impact of the case on "comity" between state and federal judiciaries. *Lopez*, 678 F.3d at 1136-1137 (citing *Phelps*, 569 F.3d at 1135-39). The Supreme Court has added that "[i]n determining whether extraordinary circumstances are present" warranting Rule 60(b)(6) relief, "a court may consider a wide range of factors," including "the risk of injustice to the parties" and "the risk of undermining the public's confidence in the judicial process." *Buck v. Davis*, 137 S.Ct. 759, 778 (2017) (citation omitted).

## V.   ARGUMENT

### A.   The Federal Circuit's Decisions in *Berkheimer* and *Aatrix* Represent an Intervening Change in the Law of § 101, Holding That § 101 Determinations Involve Questions of Fact, and May Be Resolved at the Rule 12 Stage "Only" Where "There Are No Factual Allegations" That Prevent Resolving § 101 As a Matter of Law.

As was immediately recognized throughout the patent law community, the Federal Circuit's decisions in *Berkheimer* and *Aatrix* were watersheds in the development of § 101 jurisprudence since *Mayo/Alice*.[10]  In response, the PTO issued a memorandum to its corps of patent examiners entitled "Changes in Examination Procedure Pertaining to Subject Matter Eligibility, Recent Subject Matter

---

[10] EI requests the Court take judicial notice of the sources cited in this Section, as matters of public record demonstrating the impact of *Berkheimer/Aatrix*. *See Reyn's Pasta,* 442 F.3d at 746 n. 6.

Eligibility Decision (*Berkheimer v. HP, Inc.*)"—the so-called "*Berkheimer* Memorandum."[11]  In that memo, the PTO recognized the Federal Circuit's holding that "[w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination" and sought to provide "additional USPTO guidance" for examiners tasked with reviewing patent applications in accord with the new holding.[12]  And pursuant to *Berkheimer/Aatrix*, the PTO recently requested that the Federal Circuit vacate and remand a pending appeal to allow it to reconsider the § 101 issues there in light of these decisions.[13]  Other informed observers, such as Robert Stoll, the former Commissioner for Patents at the PTO, commented: "[b]oth cases [*Berkheimer* and *Aatrix*] held that there might be factual underpinnings in a Section 101 inquiry, **which heretofore had been considered a legal question for the judge**.  This means that at least those cases with disputed facts regarding eligibility cannot be dismissed on pleadings or summary judgment."[14]  As one journalist assessed the impact of *Berkheimer*, "the ruling [in *Berkheimer*] marks **the first time** the Federal Circuit has held that patent eligibility involves factual questions that could preclude summary judgment, rather than treating it as a legal issue."[15]  The same article quotes a veteran patent practitioner as stating that the "Federal Circuit had **never really said until now** that there are some underlying facts in [Section] 101."[16]  And, noting that, pre-*Berkheimer*, the "ability of judges to decide *Alice* [i.e. Section 101] motions on summary judgment or motions to

---

[11] Robert W. Bahr, Deputy Commissioner for Patent Examination Policy, *Changes in Examination Procedure Pertaining to Subject Matter Eligibility, Recent Subject Matter Eligibility Decision* (Berkheimer v. HP, Inc.), USPTO (Apr. 19, 2018), *available at* https://www.uspto.gov/sites/default/files/documents/memo-berkheimer-20180419.PDF.

[12] *Id*. at 2 (quoting *Berkheimer*, 881 F.3d at 1369).  The PTO also issued a request for comments from the public regarding the impact of *Berkheimer/Aatrix* on determining whether a claim element is "conventional" under § 101.  *See Request for Comments on Determining Whether a Claim Element Is Well-Understood, Routine, Conventional for Purposes of Subject Matter Eligibility*, 83 Fed. Reg. 17536 (Apr. 20, 2018).

[13] See Gene Quinn, *USPTO Asks Federal Circuit to Vacate, Remand 101 Case to Board in Light of Berkheimer*, IPWATCHDOG (Jun. 6, 2018), *available at* https://www.ipwatchdog.com/2018/06/06/uspto-federal-circuit-vacate-remand-101/id=98140/

[14] Robert Stoll, *Alice Angst Intensifies*, LAW360 (Mar. 23, 2018) (emphasis added), *available at* https://www.law360.com/articles/1025590/alice-angst-intensifies

[15] Ryan Davis, *Quick Alice Wins May Be Tougher After Fed. Circ. Ruling*, LAW 360 (Feb. 13, 2018), *available at* https://www.law360.com/articles/1011140/quick-alice-wins-may-be-tougher-after-fed-circ-ruling

[16] *Id*. (emphasis added)

14

dismiss without fact-finding had made it difficult for patent owners to demonstrate that their claimed invention covers something more than what was routine or conventional," that article quotes the same patent attorney as saying that "[u]p until now, that evidence was almost inadmissible in these cases, so **this is a big change.**"[17]   Another patent attorney is quoted as saying that "**[t]his opinion [in Berkheimer] is such a shift in how people have been understanding [Section] 101**."[18]   Yet another practitioner referred to "this change in the law."[19]   The Federal Circuit's Judge Reyna referred to the "**profound change**" of *Berkheimer/Aatrix* while dissenting from the court's denial of rehearing en banc. *Berkheimer II*, 890 F.3d at 1377 (Reyna, J., dissenting from denial of reh'g en banc) (emphasis added).   District courts, too—including this Court—have since recognized the changes wrought by *Berkheimer/Aatrix*. *See, e.g., Local Intelligence, LLC v. HTC America, Inc.*, 2018 WL 1697127, at *6 (N.D. Cal. Apr. 6, 2018); *American Axle & Manufacturing, Inc. v. Neapco Holdings LLC*, 2018 WL 1061371, at *6 n. 2 (D. Del. Feb. 27, 2018).[20]   It is beyond dispute, therefore, that the decisions in *Berkheimer/Aatrix* represent an intervening change in the law of § 101.   Prior to those decisions, the law was anything but clear as to whether § 101 involved questions of fact.

   **B.**   **Under *Phelps*' Six-Factor Test for Determining Whether "Extraordinary Circumstances" Exist, Relief from this Court's 2015 Order is Warranted Under Rule 60(b)(6).**

        **1.**   **Lack of Clarity in the Law at the Time of the Original Decision.**

   In *Phelps*, the Ninth Circuit found that, where the state of the law is "decidedly unsettled," this "necessarily cuts *in favor* of granting a motion for relief under Rule 60(b)(6)." *Phelps,* 569 F.3d

---

[17] *Id*. (emphasis added)

[18] *Id*. (emphasis added)

[19] Ryan Davis, *Getting Juries to Ax Patents Under Alice May Be Hard Sell*, LAW360 (Mar. 5, 2018) (emphasis added), *available at* https://www.law360.com/articles/1017998/getting-juries-to-ax-patents-under-alice-may-be-hard-sell

[20] Just what a significant change this represented is evident not only from contemporaneous reactions, but also from pre-*Berkheimer* statements.   As recently as December 1, 2017—69 days before *Berkheimer*—district courts were imploring the Federal Circuit for guidance on this issue. *See, e.g., Intellectual Ventures II LLC v. FedEx Corporation*, 2017 WL 6002762, at * 2 n. 1 ("Guidance from the Federal Circuit regarding the specific factual inquiries underlying a § 101 determination is badly needed . . .") (citation omitted).   Scarcely two weeks before *Berkheimer*, one scholar referred to the "deep conflicts in the case law about whether eligibility is a question of law, fact, or a little of both." *See* Gugliuzza, *supra* note 5, at 25.

15

at 1136 (emphasis added); *see also Anderson v. Kane*, 2009 WL 3059122, at *1 (D. Ariz. 2009) (granting Rule 60(b)(6) motion and noting that since the issue was "not settled in the Ninth Circuit" prior to the intervening change in law, this weighed in favor of Rule 60(b)(6) relief). Even where the law is "settled" prior to an intervening change, however, this can still cut in favor of granting relief under Rule 60(b)(6). *See Lopez*, 678 F.3d at 1136 (noting that even where the law is "settled" prior to the intervening change, where the change in law is "remarkable"—even if "limited"— "development," it can "weigh slightly in favor of reopening [plaintiff's]…case."). Here, as indicated *supra* Sec. II & V.A., the issue of whether § 101 is a question of law or fact, or a question of law with factual underpinnings, was anything but "settled" at the time this Court issued its 2015 Order. And from the reaction of the PTO and patent bar, it is clear that the changes brought about by *Berkheimer/Aatrix* were "remarkable." *See supra* Sec V.A. As such, this factor weighs in favor of granting EI's motion.

### 2.  EI's Manifest Diligence in Pursuing its Claim for Relief.

In *Phelps*, the court found a "sterling example of diligence" where the movant had pressed his legal theory "[a]t every stage of this case." *Phelps*, 569 F.3d at 1137. Here, EI has been similarly diligent throughout this case. Like the movant in *Phelps*, EI has maintained in this Court, on appeal to the Federal Circuit, on petition for rehearing, and on petition for certiorari, that § 101 determinations involved issues of fact and required consideration of the factual evidence EI submitted. *See supra* Sec. III. And, much as in *Phelps*, the Federal Circuit adopted EI's position only **after** EI's petition for certiorari was denied. *See Id*. at 1123. ("shortly after Phelps advanced the precise interpretation of the law that would soon be adopted, his position was vindicated in a case other than his own."). EI's clear diligence here weighs in favor of granting its motion.

### 3.  Reopening the Case Would Not Upset the Parties' Interest in Finality.

Although Defendants no doubt would prefer not to be parties to a live patent infringement case, reopening this case would present less of a burden to Defendants than denial of the instant motion would present to EI. EI has borne the burden of the wrongful outcome in this case, with its two patents invalidated under no-longer-controlling law without the opportunity to have factual

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp. et al.*, Case No. 5:13-cv-4513-RMW
Plaintiff's Memorandum of Points and Authorities in Support of Motion For Relief from Judgment

disputes resolved or its evidence considered.  This contravenes basic notions of fairness and due process, and effectively deprived EI of free and fair access to the courts.  Moreover, any interest in finality did not prevent the court in *TNS Media* from vacating a § 101 decision when "justice" required it, even though *TNS Media* was at a later stage than this case (summary judgment, compared to the Rule 12 posture here), and the change in the law of § 101 there was arguably less significant than *Berkheimer/Aatrix*.  *See TNS Media*, 223 F.Supp.3d at 171.  Accordingly, this factor should weigh in favor of granting EI's motion or, at worst, be found neutral.

### 4.   Any Delay Between the Finality of the Judgment and the Instant Motion for Relief Under Rule 60(b)(6) is Minimal.

Under this factor, the Court considers "the delay between the finality of the judgment and the motion for Rule 60(b)(6) relief" and "emphasize[s] the petitioner's diligence in challenging" the "judgment he now seeks to overturn." *Phelps*, 569 F.3d at 1138.  In *Phelps*, the Ninth Circuit held that a delay of "four months" "weighs strongly in Phelps' favor." *Id.*  In *Eubank v. Terminix International, Inc.*, 2016 WL 6277422, at *5 (S.D. Cal. Oct. 27, 2016), the court found a "nine month period between the date Plaintiff learned of" the intervening change in the law "and the date he filed the motion for reconsideration [under Rule 60(b)(6) is reasonable."  In *Ritter*, deemed an "instructive" decision by the Ninth Circuit in *Phelps*, a period of nine months was described as "only a very brief delay." *Phelps*, 569 at 1137-38 (quoting *Ritter v. Smith*, 811 F.2d 1398, 1402 (11th Cir. 1987)).  In *Jones v. Ryan*, 733 F.3d 825, 829 (9th Cir. 2013), the court held even a seventeen-month delay between the intervening change in the law and the Rule 60(b)(6) motion had "little weight in either direction."

EI is filing this motion seven months since the May 31, 2018 denial of en banc rehearing on the intervening change in the law represented by the Federal Circuit's decisions in *Berkheimer/Aatrix*, ten months since the February 2018 panel decisions in *Berkheimer/Aatrix*, and just over one year since the judgment in its case became final with the denial of EI's petition for certiorari on December 4, 2017.  *See U.S. v. Colvin*, 204 F.3d 1221, 1223 n. 2 (9th Cir. 2000) (judgment becomes final upon denial of petition for certiorari by Supreme Court).  EI could not have challenged the judgment in this case on this basis until after February 8, 2018 (the date of the panel

17

decision in *Berkheimer*) at the earliest, and arguably would have been ill-advised to do so until the denial of en banc rehearing in May 2018.  Here, the ten-month delay since the panel decisions in *Berkheimer/Aatrix*, and the twelve months since judgment became final in EI's case, is scarcely longer than the nine months deemed "brief" in *Ritter* and "reasonable" in *Eubank*, and weighs in EI's favor.

### 5.   The Close Relationship Between the Original Judgment and the Subsequent Intervening Change in the Law.

Here, the relationship between this Court's 2015 Order and the subsequent changes in the law represented by *Berkheimer/Aatrix* could hardly be closer.  As discussed *supra*, this Court expressly declined to consider the factual evidence submitted by EI, resolving the § 101 as a matter of law.  *See* Dkt. No. 225, at 8 n. 5.  Subsequently, *Berkheimer/Aatrix* clarified that Step Two of the § 101 analysis involves issues of fact.  Thus, this Court's 2015 Order resolving § 101 as a matter of law was improper under *Berkheimer/Aatrix* at least because EI raised "genuine issue[s] of material fact regarding whether the claim element or claimed combination is well-understood, routine, [or] conventional to a skilled artisan in the relevant field."  *Berkheimer*, 881 F.3d at 1368.  Accordingly, this factor weighs heavily in favor of granting EI relief.

### 6.   This Case Raises No Comity Concerns.

Under this factor, courts must consider the implications on "comity" between "independently sovereign state and federal judiciaries" in granting Rule 60(b)(6) relief.  *Phelps*, 569 F.3d at 1339. Here, however, there would be no impact on the comity between state and federal courts by vacating this Court's 2015 Order in a federal patent case.

### 7.   Additional Factors Warrant Vacatur.

The factors identified by *Buck* also weigh in favor of granting EI's Motion.  *Buck*, 137 S.Ct. at 778.  Here, the "risk of injustice" to EI is plain. Now that the factual underpinnings of § 101 are recognized under *Berkheimer/Aatrix*, it would be unjust to deny EI the chance to make its case and marshal all the factual evidence it can for the eligibility of its patents, given EI's diligent advocacy. Similarly, "the risk of undermining the public's confidence in the judicial process" warrants granting EI's Motion as well.  To leave the Court's 2015 Order in place would be to affirm the decision of a

lay judge which failed to acknowledge disputed issues of fact and improperly substituted speculation for evidence.  *See Intellectual Ventures II LLC*, 2017 WL 6002762, at *2 n. 1 ("Resolving validity issues at the Rule 12 stage can also tempt courts, sometimes improperly, to conclude that certain concepts are conventional or routine by way of judicial notice").  This can only undermine confidence in the judiciary's handling of § 101.

**C.    Under *Berkheimer/Aatrix*, This Court Must Vacate Its 2015 Order and Consider EI's Factual Evidence Before Ruling On Subject Matter Eligibility Under § 101.**

**1.    Disputed Issue of Fact #1: Whether Statements in the Specification Show That EI's Claims Contain "Inventive Concepts" and Improvements to Computer Functionality, Compared to Conventional Systems Using the "Static Information Model."**

In opposing Defendants' motion to dismiss, EI argued that its patents claim inventions "for improving the computerized processing of 'containerized' data" which, quoting the specification, involve "manipulating information containers with dynamic interactive registers in a computer, media or publishing network in order to manufacture information on, **upgrade the utility of, and develop intelligence in, a computer network**."  Dkt. 193, at 2 (quoting Dkt. No. 1-2, at 1:14-20) (emphasis added).  Under *Berkheimer/Aatrix*, this statement alone should be sufficient to raise an issue of fact as to whether EI's claims "according to the specification, provide[] benefits that improve computer functionality" sufficient for eligibility under § 101.  *Berkheimer*, 881 F.3d at 1370.  But EI's specification contains a host of other evidence in support of eligibility.  For example, EI cited portions of the specification describing numerous technical problems with the "static informational model" of the prior art, *see* Dkt. No. 193, at 4 (citing Dkt. No. 1-2, at 1:58-2:48), such as the "time consuming" nature of conventional search techniques.  *See* Dkt. No. 1-2, at 1:43-1:54.  Although the Court's 2015 Order dismissed "the failure of the prior art to dynamically update data structures over time and by location, or based on search history" as "not even a computing problem, but an information organization problem," Dkt. No. 225 at 13, EI's specification provides evidence directly refuting the Court's assertion.  After outlining the problems of the prior art, the specification states that:

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp. et al.*, Case No. 5:13-cv-4513-RMW
Plaintiff's Memorandum of Points and Authorities in Support of Motion For Relief from Judgment

> "there is a need for a system and methods for creating and manipulating information containers with dynamic interactive registers…in order to manufacture information on, **upgrade the utility of, and develop intelligence in, a computer network <u>by providing</u> a searching user the means to utilize the searches of other users or the historically determined and compiled searches of the system,** [and] a means to containerize information with multiple registers governing the interaction of that container…" (2:49-60) (emphasis added)

*See* Dkt. No. 193, at 8 (citing Dkt. No. 1-2, at 1:63-2:58; 2:41-63).  Thus, contrary to the Court's 2015 Order, EI's specification states that "there is a need for" an invention that "**upgrade[s]** the utility" of "a computer network" by **<u>providing</u>** the very software functionality claimed in EI's patents.  An "upgrade" to the "utility" of "a computer network," as described in EI's specification and claims, is virtually the definition of an "improvement to computer functionality itself," in contrast to merely "economic or other tasks for which a computer is used in its ordinary capacity." *Enfish*, 822 F.3d at 1336.  There is no basis for disputing EI's specification at the Rule 12 stage. *See, e.g., Ancora Techs, Inc. v. HTC America, Inc.*, 908 F.3d 1343, 1349 (Fed. Cir. 2018) (reversing Rule 12 dismissal under § 101 because "the patent asserts, and we lack any basis for disputing" a "computer-functionality improvement").  To the extent the Court's 2015 Order ignored or overruled EI's specification on the factual question whether EI's claims contain "inventive concepts" in their improvements to computer functionality, it did so as a matter of improper judicial notice. *See Intellectual Ventures II LLC*, 2017 WL 6002762, at *2 n. 1.

In addition, the specification states that "value evolving container registers"—which it several times calls "**unique**"—used in conjunction with" other components, "allows the container to establish and evolve its own identity on the system," enabling the "dynamic governance of information," which is "**utilized for the first time**" in EI's patents.  Dkt. No. 1-2, at 12:45-13:35 (emphasis added). Thus, the specification provides evidence that EI's patents contain "inventive concepts" under § 101.  Far from being conventional or "practiced by every local barista or bartender who remembers a particular customer's favorite drink" as asserted in the Court's 2015 Order (Dkt. No. 225 at 14), EI's specification explicitly states that the "dynamic governance of information" achieved here was "**utilized for the first time**." Dkt. No. 1-2, at 13:40-44 (emphasis added).  Under

*Berkheimer*, this must be accepted as true at the Rule 12 stage.  *See Ancora*, 908 F.3d at 1349 ("the claim addresses a technological problem with computers…by relying on specific and unique characteristics…that the patent asserts, and we lack any basis for disputing, were not previously used in the way now claimed").  EI's specification also describes other improvements to computer functionality: e.g., that "registers appended to an information container" "accomplish real time information about information usage on a network," (Dkt. No. 1-2, at 13:1-27) thereby overcoming the "time consuming" way search was done under the static information model of the prior art (*id.*, at 1:44-46), clearly showing that EI does more than merely "tak[e] advantage of the conventional advantages of computers in terms of efficiency and speed" (Dkt. 225 at 11, 17) since EI's specification states that conventional search was *more* "time consuming" than its own inventions. Further, EI's specification states that its "system becomes capable of becoming progressively more responsive to the need of the user base" (Dkt. No. 1-2, at 13:32-34), which is clearly an improvement to computer functionality rather than a use of the computer in its "ordinary capacity," *Enfish*, 822 F.3d at 1336.  The Court's 2015 Order did not cite any of the evidence EI submitted from the specification, instead determining that EI claimed "conventional" activity, a factual dispute improper for resolution in this posture.[21]  Thus, this Court's Order, and the Federal Circuit decision affirming on the ground that EI's claims recite "conventional elements," failed to consider evidence that EI claimed specific, unconventional *types* of software structures (e.g., "unique" registers) which, used

---

[21] Somewhat misleadingly, the Court's 2015 Order stated that EI "concedes that the structures recited in the claims are conventional and routine," citing a portion of EI's Opposition arguing that "*[a]lthough* the *fundamental* structures are containers, registers, and gateways,' the claims are patent-eligible because they implement the inventive concepts with 'specific arrangements' of structures (emphasis added)." Dkt. No. 225, at 11 (quoting Dkt. No. 193, at 17). But EI was not conceding that its own inventions were somehow "fundamental" or "conventional" under § 101, though they may involve certain fundamental structures.  Rather, EI was *disputing* that point and pointing out that its inventions improved the functioning of the computer itself.    True, EI did not invent the first "containers, registers, and gateways"—but this does not doom its claims.  Here, EI's specification explicitly states that its use of "**unique**" "value evolving container registers"—in other words a specific, unconventional type of register—"in conjunction with" other components, "allows the container to establish and evolve its own identity on the system," enabling the "dynamic governance of information," which is "**utilized for the first time**" in EI's patents.  Dkt. No. 1-2, at 12:45-13:35. This was an inventive concept, and EI explicitly argued that it claimed "particular *types*" of certain "fundamental structures" "must interact in a specific manner" to achieve its inventions.  Dkt. No. at 193, at 17.

---

in conjunction, achieved an "upgrade" to the functionality of computer networks enabling the "dynamic governance of information" "**utilized for the first time**" in EI's patents. These inventive concepts are captured in the asserted claims. Under *Berkheimer/Aatrix*, EI should be allowed to present this and other evidence from the specification in support of its patents' eligibility under § 101.

> **2.  Disputed Issue of Fact #2: Whether EI's Expert Testimony Shows That One Skilled in the Art at the Time of Filing (1998) Would Recognize EI's Claimed Inventions to Be "Groundbreaking Departures from the Static Information Model" Used by Conventional Systems.**

In opposing Defendants' motion to dismiss, EI argued that "the inventions of the Asserted Patents" were "groundbreaking departures from the static information model" prevailing among conventional prior art systems—the issue squarely identified by *Berkheimer* as a question of fact necessary to a § 101 analysis. Dkt. No. 193, at 4; *see Berkheimer*, 881 F.3d at 1369. In support of its position, EI submitted expert testimony from Scott Taylor, a person of ordinary skill in the art of computer science, who had worked at Cray Research, Prisa Networks, and Sun Microsystems throughout the period leading up to the filing of EI's patents in 1998. *See* Dkt. No. 193-1 at ¶¶ 4-6. EI's expert had worked on products "supporting the static information model," which was the prevailing approach of the prior art at the time EI's patents were filed, making his testimony particularly relevant to the factual question "whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent." *Berkheimer*, 881 F.3d at 1369.

Yet the Court explicitly refused to consider EI's expert declaration, though EI's expert was well-qualified to provide testimony regarding EI's patents vis-à-vis the prior art of the period. EI's expert meticulously set forth the ***reasons*** one of skill in the art would have understood the patents to be "groundbreaking departures from the prior art static information model." Dkt. No. 193-1 at ¶¶ 33-38. It is these dynamic registers, "identifying times" and "identifying space," "relative to" ongoing indeterminable "events" in time and movements in "three-dimensional space," that are claimed as "governing interactions of the container with other containers, systems or processes." Dkt. No. 193, at 6. According to the specification, this was done "for the first time" in EI's patents, and the registers EI used were "unique." Dkt. No. 1-2, at 13:42-44; 13:1-2. As EI's expert explained,

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp. et al.*, Case No. 5:13-cv-4513-RMW
Plaintiff's Memorandum of Points and Authorities in Support of Motion For Relief from Judgment

under the "static information model" prevailing in the prior art by 1998, a "document remain[ed] inert, except by the direct intervention of users, and [was] modified neither by patterns of history of usage on the network, or the existence of other content on the network." Dkt. No. 193-1 at ¶ 18 (quoting Dkt. No. 1-2, at 1:58-62). EI's patents, by contrast, taught a way to manipulate information containers with dynamic registers, which are informed by unpredictable future events in the world outside, e.g., "event times" or movements in "three-dimensional space." Far from being the wholly passive receptacles of "inert" data under the static information model, EI's "unique" *dynamic* registers governed the interactions of information containers according to new or unexpected events. "As users access the information containers, the dynamic registers are updated with information regarding their use, allowing them to evolve without direct human input"—a functionality that was not possible under the static information model of the prior art, in which a "storage medium" was not "altered according to the actual recorded and analyzed hierarchically graded usage of any given information resource residing on that storage medium." Dkt. No. 193-1 at ¶¶34; 18. Among the technical benefits of EI's inventive use of dynamic registers was that they made "future processing of time and location information by computers more efficient." Dkt. No. 193, at 4 (citing Dkt. No. 193-1 ¶ 40). In the '536 Patent, for example, "the dynamic registers are updated with information regarding their use, allowing them to evolve without human input," whereas under the static information model they would have remained "inert." *Id*. at 5. And in the '682 Patent, EI's dynamic registers make "dynamic modifications when processing search queries in order to make future processing of search queries by computers more efficient." *Id*. at 8 (citing Dkt. No. 193-1 at ¶ 37). Thus, whereas under the static information model, "successful search strategies were not available to others," EI's invention allowed the use of "historical data" associated with successful searches to improve future search queries, and hence improved the functioning of a computer employed in performing such searches. *Id*. at 8. Accordingly, EI's expert concluded that "[o]ne of skill in the art at the time the patent application was filed would understand the inventions of the Asserted Patents to be **groundbreaking departures** from the static information model" of the prior art. Dkt.

No. 193-1 at ¶ 38 (emphasis added).[22]  Under *Berkheimer/Aatrix*, and *Symantec*, 725 Fed.Appx. at 978 n. 1, EI's expert testimony is sufficient to raise a question of fact precluding dismissal under § 101 at the Rule 12 stage.

### 3.   Disputed Issue of Fact #3: Whether the Claim Terms "Register" and "Gateway," in Combination With Other Elements, Constitute Inventive Concepts Under § 101, In Light of Evidence from the Specification, Expert Testimony, and IPR Proceedings.

In *Aatrix*, the Federal Circuit vacated a Rule 12 dismissal because there were "factual disputes underlying the § 101 analysis, such as whether the claim term 'data file' constitutes an inventive concept, alone or in combination with other elements, sufficient to survive an *Alice/Mayo* analysis at the Rule 12(b)(6) stage." *Id*. at 1126.  Here, EI argued in its Opposition that the claim terms "register" and "gateway" were far narrower than Defendants asserted and, properly construed, these claim terms in combination with other elements taught inventive concepts.  Dkt. No. 193, at 17 & 25.  EI submitted evidence in which the PTAB rejected Defendants' construction. *Id*. (citing Dkt. No. 193-4, Dkt No. 193-5 at 8, 11).  In addition, EI submitted evidence from its expert "that the Defendants' proposed constructions of these terms are overly broad," maintaining that there were "factual disputes" relevant to this construction. *Id*. (citing Dkt. No. 193-1 at ¶ 48).  EI's expert opined that "registers" and "gateways" were terms "specifically within the context of computer systems" and that "one of skill in the art would understand that tangible labels and corresponding 'rules' and 'instructions' for manipulating physical containers would be **incapable of fulfilling the computer-specific tasks that are required by the claims**."  Dkt. No. 193-1 at ¶ 48 (emphasis added).  For example, EI's expert stated that, as claimed in the patents, "gateways . . . must be capable of 'controlling the interaction of the containers, systems or processes,'" and that "'registers' must be capable of being 'encapsulated and logically defined in a plurality of containers.'" *Id*.  This evidence, together with the specification's statement that the "registers" employed by EI's patents

---

[22] Further demonstrating that EI's patents were "groundbreaking departures" from conventional practice, EI submitted evidence from prior IPR proceedings involving "*fifteen* examples of systems" used in the prior art which the PTO found "process data *without* practicing the patents' claims."  Dkt. No. 193, at 22 (emphasis original) (citing Dkt. No. 193-1 at ¶ 47); *see also* Dkt. No. 193-5 – Dkt. No. 193-12 ("Exs. B-I") (evidence from IPR proceedings upholding the validity of EI's patents over **fifteen** prior art references).

24

are "unique" and enable "the dynamic governance of information" "utilized for the first time" (Dkt. No. 1-2, at 13:42-44; 13:1-2), raises a factual question whether the claim term "register" and "gateway" contain inventive concepts precluding dismissal at the Rule 12 stage under *Aatrix*.

## VI.   CONCLUSION

Given that EI raised factual issues virtually identical to those held in *Berkheimer/Aatrix* to be the factual underpinnings of a proper § 101 determination, and in light of the evidence EI submitted, and the legal position it diligently advocated for—which the Federal Circuit ultimately adopted in *Berkheimer/Aatrix*—this case meets the *Phelps* factors and presents the "extraordinary circumstances" warranting relief from judgment under Rule 60(b)(6).  Accordingly, for the reasons set forth above, this Court's 2015 Order should be vacated under Rule 60(b)(6) so that EI's case can proceed, and EI can present additional evidence relating to eligibility under § 101.

Respectfully Submitted,

*/s/ Nicholas Ranallo*
Nicholas Ranallo
Ranallo Law Office
2443 Fillmore St., #380-7508
San Francisco, CA 94115
Phone: (831) 607-9229
nick@ranallolawoffice.com

*/s/ Isaac Rabicoff*
Isaac Rabicoff
(*Pro Hac Vice Admission Pending*)
isaac@rabilaw.com

*/s/ Kenneth Matuszewski*
Kenneth Matuszewski
(*Pro Hac Vice Admission Pending*)
kenneth@rabilaw.com
Rabicoff Law LLC
73 West Monroe Street
Chicago, IL 60603
Phone: (773) 669-4590

***Counsel for Plaintiff***

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp. et al.*, Case No. 5:13-cv-4513-RMW
Plaintiff's Memorandum of Points and Authorities in Support of Motion For Relief from Judgment