# Exhibit 2

Appeal Nos. 2016-1188, -1190, -1191, -1192, -1194, -1195, -1197, -1198, -1199

# United States Court of Appeals
# for the Federal Circuit

EVOLUTIONARY INTELLIGENCE LLC,

Plaintiff-Appellant,

v.

SPRINT NEXTEL CORPORATION, SPRINT COMMUNICATIONS COMPANY, L.P., SPRINT SPECTRUM L.P., SPRINT SOLUTIONS, INC., APPLE INC., FACEBOOK INC., FOURSQUARE LABS, INC., GROUPON, INC., LIVINGSOCIAL, INC., MILLENNIAL MEDIA, INC., TWITTER, INC., YELP, INC.,

Defendants-Appellees.

Appeals from the United States District Court for the Northern District of California, Senior Judge Ronald M. Whyte

## APPELLANT'S COMBINED PETITION FOR REHEARING AND REHEARING EN BANC

Meredith Martin Addy
 *(Principal Counsel)*
Daniel I. Konieczny
Tabet DiVito & Rothstein LLC
209 S. LaSalle Street, Suite 700
Chicago, Illinois 60604
312.762.9450
maddy@tdrlawfirm.com

*Attorneys for Plaintiff-Appellant
Evolutionary Intelligence, LLC*

April 19, 2017

# CERTIFICATE OF INTEREST

Appellant Evolutionary Intelligence LLC certifies the following:

1.  The full name of every party or amicus curiae represented by me is:

    **Evolutionary Intelligence, LLC**

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by:

    **Evolutionary Intelligence, LLC**

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    **Incandescent, Inc.**

4.  The names of all law firms and the partners or associates that appeared for the party or amicus curiae now represented by me in the trial court or the Federal Circuit are:

    **Tabet DiVito & Rothstein LLC**: Meredith Martin Addy, Daniel I. Konieczny

    **Gutride Safier LLP**: Adam J. Gutride, Seth A. Safier, Todd M. Kennedy, Anthony J. Patek, Marie A. MCrary, and Matthew T. McCrary

    **Parker Bunt & Ainsworth P.C.**: Charles Ainsworth, Robert C. Brunt

    Respectfully Submitted,

    /s/ Meredith Martin Addy

Dated: April 19, 2017              Meredith Martin Addy

i

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ....................................................................i

TABLE OF CONTENTS ............................................................................ii

TABLE OF AUTHORITIES.........................................................................iv

STATEMENT OF COUNSEL PURSUANT TO FEDERAL CIRCUIT
RULE 35(b)...............................................................................................1

POINTS OF LAW OR FACT OVERLOOKED OR
MISAPPREHENDED BY THE PANEL............................................................2

ARGUMENTS IN SUPPORT OF REHEARING.................................................2

I.    The Panel Decision Conflicts with *Alice* by Failing to Properly Limit
      Claim Scope to Improvements in Computer Systems ...............................2

      A.    Application of *Alice* Step 1 Cannot Be Divorced from the
            Claims and the Specification, Which Are Limited to the
            Dynamic Information Model .............................................................3

      B.    The Panel Applied *Alice* Step 2 Without Considering the
            Limitations in Context and Failing to Consider All Limitations ... 4

ARGUMENTS IN SUPPORT OF REHEARING EN BANC..........................6

I.    Introduction.....................................................................................6

II.   Disputed Claim Terms Must Be Construed Before Invalidating a
      Patent on the Pleadings ...................................................................8

      A.    PTAB's BRI Construction Defines the Outer Limit in Claim
            Scope ................................................................................... 8

      B.    Disputed Issues of Claim Construction May Have Disputed
            Factual Underpinnings....................................................... 11

      C.    Comparison of Proposed Constructions May Benefit from
            Expert Testimony.............................................................. 11

III.  When Factual Disputes Exist, the Court Must Apply the Statutory
      Presumption of Validity Before Invalidating a Patent.............................. 12

A.  Once the Court Compares "Age-Old" Processes Incorporated from Outside the Pleadings, It Must Also Consider Patentee's Expert Declaration ........................................................................ 12

B.  A "Pleadings Invalidation" for Failure to Satisfy Section 101 Is Improper Where Conflicting Factual Issues Exist.................... 13

IV.  Patentee's Due Process Rights Prohibit a "Pleadings Invalidation" in the Face of Disputed Claim Terms, Factual Issues, and the Presumption of Validity ............................................................. 14

CONCLUSION........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)................................................................13

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) ..............................................................*passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
  841 F.3d 1288 (Fed. Cir. 2016)..........................................12, 13, 15

*Amgen Inc. v. Sandoz Inc.*,
  794 F.3d 1347 (Fed. Cir. 2015)..............................................................12

*Arrhythmia Research Tech., Inc. v. Corazonix Corp.*,
  958 F.2d 1053 (Fed. Cir. 1992)..............................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................2, 4

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
  135 S. Ct. 1293 (2015) ...........................................................................10

*Bancorp Servs, LLC v. Sun Live Assur. Co. of Canada (U.S.)*,
  687 F.3d 1266 (Fed. Cir. 2012).................................................................6

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016).................................................*passim*

*Berry Sterling Corp. v. Pescor Plastics, Inc.*,
  122 F.3d 1452 (Fed. Cir. 1997).................................................................8

*Content Extraction and Transmission LLC v. Wells Fargo Bank Nat'l
Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)..................................................................7

*Cuozzo Speed Techs., LLC v. Lee*
  136 S. Ct. 2131 (2016) .....................................................................9, 10

iv

*Doyle v. Camelot Care Centers, Inc,*
305 F.3d 603 (7th Cir. 2002)..............................................................15

*Enfish, LLC v. Microsoft Corp.,*
822 F.3d 1327 (Fed. Cir. 2016).....................................................*passim*

*Fla. Prepaid Postsec. Educ. Expense Bd. v. College Sav. Bank,*
527 U.S. 627 (1999).............................................................................14

*Genetic Techs. Ltd. v. Merial LLC,*
818 F.3d 1369 (Fed. Cir. 2016)............................................................6

*Jacobellis v. State of Ohio,*
378 U.S. 184 (1964) (Stewart, J. concurring) ......................................6

*Katz Interactive Call Processing Patent Litig. v. Am. Airlines, Inc.,*
639 F.3d 1303 (Fed. Cir. 2011)..........................................................14

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
566 U.S. 66 (2012)................................................................................7

*Microsoft Corp. v. i4i Ltd. P'ship,*
564 U.S. 91 (2011)........................................................................ 1, 13

*Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.,*
811 F.3d 1314 (Fed. Cir. 2016)..........................................................11

*Teva Pharm. USA, Inc. v. Sandoz Inc.,*
135 S. Ct. 831 (2015) .........................................................................11

*Tex. Instruments, Inc. v. Linear Techs. Corp.,*
182 F. Supp. 2d 580 (E.D. Tex. 2002)................................................15

*Ultramercial, Inc. v. Hulu, LLC,*
722 F.3d 1335 (Fed. Cir. 2013), *vacated on other grounds by
Wildtangent, Inc. v. Ultramercial, LLC,* 134 S. Ct. 2870 (2014)..........................13

## Statutes

35 U.S.C. § 101................................................................................*passim*

35 U.S.C. § 282...................................................................................13

**Other Authorities**

Jason Rantanen, *In a Rush to Invalidate Patents at Pleadings Stage, Are Courts Coloring Outside the Lines?* (July 1, 2015), https://patentlyo.com/patent/2015/07/ invalidate-pleadings-coloring.html....................................................................................6, 8

Fed. R. Civ. P. 12 ...................................................................................*passim*

Fed. R. Civ. P. 12(c)................................................................................2

Fed. R. Civ. P. 56 ....................................................................................13

## STATEMENT OF COUNSEL PURSUANT TO
## FEDERAL CIRCUIT RULE 35(b)

Based on my professional judgment, I believe the panel decision is contrary to the following decisions of the Supreme Court of the United States and the precedents of this Court: *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016); *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016).

Based on my professional judgment, this appeal also requires an answer to these closely related and precedent-setting questions of exceptional importance:

1.      Whether it is proper to grant judgment of invalidity on the pleadings for failure to satisfy Section 101 when disputed claim terms exist that the court fails to resolve favorably to the non-movant patentee.

2.      Whether it is proper to grant judgment of invalidity on the pleadings for failure to satisfy Section 101, after comparing "age-old" processes, taken from outside the pleadings to the patent and resolving the comparison unfavorably to the non-movant patentee?

3.      Whether patentee's due process rights are violated by invalidating patent(s) on the pleadings, in the face of disputed claim terms, a final uncontested BRI, and failing to resolve factual disputes in favor of the non-movant patentee.

1

## POINTS OF LAW OR FACT OVERLOOKED OR
## MISAPPREHENDED BY THE PANEL

1.      Contrary to *Alice*, the panel failed to consider each of the limitations of any of the patent claims, either alone or in combination, or with respect to the specification, which allowed the panel to ignore the proper claim scope set forth in the pleadings and confirmed in a final PTAB decision, and thereby improperly affirm invalidity.

2.      Contrary to Rule 12(c), the panel adopted the district court's improper resolution of factual issues adverse to the non-movant patentee—*e.g.*, comparison of "age-old" external processes to the patents—and refused to consider patentee's expert declaration, causing the panel to improperly affirm invalidity.

Evolutionary Intelligence ("Patentee") respectfully requests the case be reheard.

## ARGUMENTS IN SUPPORT OF REHEARING

**I.   The Panel Decision Conflicts with *Alice* by Failing to Properly Limit Claim Scope to Improvements in Computer Systems**

The panel erred by failing to limit the scope of the claimed invention to improvements in computer systems, despite the clear teaching in the specification and limiting language in the claims. Appx345, 1:11-14, Appx359, 30:6-9; Appx407, 29:51-52. Then contrary to Rule 12, the panel affirmed the district court's judicial notice of allegedly well-known external processes and improperly compared them to the patents in a manner unfavorable to the non-movant patentee. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

A. **Application of *Alice* Step 1 Cannot Be Divorced from the Claims and the Specification, Which Are Limited to the Dynamic Information Model**

Contrary to precedent, the panel's analysis of *Alice* step 1 fails to track either the claim language or the specification. It reads:

> Here the claims are directed to selecting and sorting information by user interest or subject matter, a longstanding activity of libraries and other human enterprises. Slip op. at 4.

However, nothing after "claims" above is found in the patent claims. Appx359-60, Appx407-12. Nor are the terms "selecting and sorting information," "user interest," "libraries," and "human enterprises," even mentioned in the specifications; rather, they are external to the pleadings. Appx314-65. By adopting defendants' disputed description of the invention, the district court and the panel improperly describe the invention "at such a high level of abstraction and untethered from the language of the claims," ensuring "that the exceptions to § 101 swallow[ed] the rule." *Enfish*, 822 F.3d at 1335 (citations omitted). The table below compares the Court's application of *Alice* Step 1 with the '539 patent's "Field of the Invention" and claims preamble:

| *Alice* Step 1 (outside the pleadings) | '539 Patent Specification Field of the Invention and Claim Scope |
|---|---|
| Here the claims are directed to selecting and sorting information by user interest or subject matter, a longstanding activity of libraries and other human enterprises. Slip op. at 4 (no computer). | **Field of The Invention:** "*[C]omputer systems* in a multi-user mainframe or mini computer system, a client server network, or in local, wide area or public networks." Appx345, 1:11-14 (emphasis added). **Claims**: "an apparatus for transmitting, receiving, and manipulating information *on a computer system*," *See, e.g.,* Appx359, 30:6-9 (emphasis added). |

The panel's determination of *Alice* Step 1 does not relate to the Field of the Invention or to the claims. The "plain focus of the claims" is on "an improvement to the computer functionality itself," *Enfish*, 822 F.3d at 1336, namely: overcoming the limitations of the "static information model." Appx345, 1:54-56 ("The utility of wide area public computer networks is thus greatly limited by the *static information model . . . .*") (emphasis added).

In rejecting defendants' same overly broad description that the courts accepted, the PTAB recognized the stated improvement: "[t]he '536 patent is directed to developing intelligence in a computer or digital network by creating and manipulating information containers *with dynamic interactive registers in a computer network*." Appx2868, Appx345-46, 1:11-20; 3:1-5 (emphasis added). Because the specification and the claims teach "improvements to computer functionality" with "dynamic interactive registers," as opposed to undefined concepts of "longstanding activity of libraries and other human enterprises," the panel erred in holding that the patents fail *Alice* Step 1 and also erred by resolving disputed issues about the patent coverage in a manner unfavorable to the non-movant patentee. *See, e.g., Iqbal*, 556 U.S. at 678.

## B. The Panel Applied *Alice* Step 2 Without Considering the Limitations in Context and Failing to Consider All Limitations

Similarly, the panel's *Alice* step 2 analysis fails to consider the claim terms in context, much less in combination with the other limitations in at least claim 1:

> [Patentee] conceded that "containers," "registers," and "gateways" are "conventional and routine" structures. [case citation omitted].

4

> Whether analyzed individually or as an ordered combination the claims recite those conventional elements at too high a level of generality to constitute an inventive concept. Slip op. 4.

However, recognition of "conventional or routine" elements does not resolve *Alice* step two, especially when all inventions result from old elements. *See e.g., Alice*, 134 S. Ct. at 2354. Instead, the panel's analysis of three claim limitations in a vacuum ignores many remaining limitations and context including:

- First register for storing a unique container identification value;
- Second register designating time and governing interactions of the containers;
- Information element;
- External-to-the-apparatus event time;
- Active time register for identifying times for action of one container on another;
- Passive time register for identifying times when the container can be acted upon;
- A neutral time register for identifying times when the container may intersect with other containers;

Analysis, divorced from the specification and the claims, contradicts Supreme Court and this Court's precedent. *See, e.g., Alice*, 134 S. Ct. at 2355; *Enfish*, 822 F. 3d at 1335. By failing to properly apply *Alice* and by resolving disputed information in a manner contrary to the non-movant, the decision improperly affirmed patent invalidity on the pleadings. The case should be reheard.

5

## ARGUMENTS IN SUPPORT OF REHEARING EN BANC

### I.      Introduction

Since *Alice*, district courts are comfortable invalidating patents at the pleading stage (hereinafter, a "pleadings invalidation") without claim construction and based on a theory that "I know it [abstractness] when I see it." *See, e.g., Jacobellis v. State of Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J. concurring) (referring to the obscenity test); *see also* Jason Rantanen*, In a Rush to Invalidate Patents at Pleadings Stage, Are Courts Coloring Outside the Lines?*, (July 1, 2015), https://patentlyo.com/patent/2015/07/invalidate-pleadings-coloring.html. Rule 12 motions, however, come at a time in the case where there is very little information available to the court to make such a drastic determination of invalidity.

This Court's guidance on application of Section 101 at the pleadings stage has been mixed. On the one hand, this Court has held that "[i]n many cases . . . evaluation of a patent claim's subject matter eligibility under § 101 can proceed even before a formal claim construction." *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1374 (Fed. Cir. 2016). On the other hand, this Court also has explained that "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Servs, LLC v. Sun Live Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012). Indeed, in the context of reviewing a dismissal under Rule 12, the Court has

counseled to construe disputed claims in favor of the patentee "as they must be in this procedural posture." *Bascom*, 827 F.3d at 1352; *see also Content Extraction and Transmission LLC v. Wells Fargo Bank Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (affirming dismissal on § 101 grounds at pleading stage because district court construed the claims "in the manner most favorable" to the patentee).

This case presents an ideal vehicle for the Court to provide specific guidance on when a Rule 12 motion for judgment of invalidity under 35 U.S.C. § 101 must be denied. Specifically, where the non-movant patentee raises disputed issues of claim construction and/or disputed factual issues, dismissal and judgment on the pleadings are improper, if resolution of those issues in patentee's favor provides a justiciable controversy. Fed. R. Civ. P. 12. Especially as here, resolution under § 101 should require a scope that is narrower than the undisputed and final BRI.

The large-scale use and improper success of invalidation on the pleadings calls for guidance, lest the Supreme Court's admonition becomes true and the exceptions "swallow all of patent law." *Alice*, 134 S. Ct. at 2354, *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012) ("too broad an interpretation of this exclusionary principle could eviscerate patent law"). Until the proper rubric for deciding such issues is resolved, defendants will continue to propose and courts will continue to grasp for improper shortcuts to dispose of pending patent litigation. These shortcuts are devastating to innovation because

7

they wrongly destroy patent protection, which chills investment in worthy inventions. *See, e.g.,* Rantanen, *supra.*

## II. Disputed Claim Terms Must Be Construed Before Invalidating a Patent on the Pleadings

Where the parties dispute the meaning of certain claim limitations, it is axiomatic that the court must construe those limitations prior to holding claims of a patent invalid under Sections 102 and 103. *Berry Sterling Corp. v. Pescor Plastics, Inc.,* 122 F.3d 1452, 1454 (Fed. Cir. 1997) ("A properly conducted patent analysis, be it for infringement or validity, necessarily requires construing the patent, and more specifically, the claim."). An analysis under Section § 101 should be no different.

### A. PTAB's BRI Construction Defines the Outer Limit in Claim Scope

The very same three limitations the panel broadly considered in a vacuum, the PTAB construed under BRI with reference to the specification and as further defined by surrounding claim limitations:

> **Container**: a logically defined data enclosure which encapsulates any element or digital segment (text, graphic, photograph, audio, video, or other), or set of digital elements. Appx2873, Appx348, 8:64-9:2.

> **Register**: value or code associated with a container. Appx2873; Appx349, 9:14-23.

> **Gateway**: hardware or software that facilitates the transfer of information between containers, systems, and/or processes. Appx2876, Appx346, 4:58-66.

These constructions limit the claims to improvements to the functioning of computers and confirm the structure required to satisfy Section 101.[1] Patentee requested both the district court and the panel consider the final BRI or construe disputed terms prior to holding the patents invalid. However, using their second bite at the apple, defendants persuaded the district court to adopt overly broad interpretations that the PTAB rejected. *See, e.g.,* Appx2793-95, 2995 ("[w]e agree with Patent Owner . . . that the Petition provides insufficient and unpersuasive discussion of the claim limitations . . ."). Defendants' interpretations failed to consider the proper field of invention, the claims, or the improvement resulting in "dynamic registers," which solved the prior art "static information" problem. *See, e.g., supra* Arguments in Support of Rehearing, at 3.

Yet, in a situation such as this, BRI construction is informative because it marks the outer boundary of claim scope and hence preemption:

> [Ensuring precision while avoiding overly broad claims] helps prevent the patent from tying up too much knowledge, while helping members of the public draw useful information from the disclosed invention and better understand the lawful limits of the claim.

*Cuozzo Speed Techs., LLC v. Lee* 136 S. Ct. 2131, 2144-45 (2016). (citations omitted). Where as here, the PTAB's BRI construction is not only final and nonappealable, but also not disputed by the parties, the Court should apply that construction in a

---

[1] Defendant-Petitioners agreed to be bound by estoppel from the IPR proceedings. *See, e.g.,* Appx210, 211, 229, 288, 300, 311.

Section 101 analysis as the outer boundary of what the patent claims cover. *See, e.g., Cuozzo*, 136 S. Ct. at 2129.

It defies common sense to grant defendants an even broader position than BRI as happened here. *Compare, e.g.*, BRI interpretation of "**container**," defendants' proposed construction, and the panel's position:

| Non-Disputed PTAB BRI Construction | Defendants' Proposed DCt. Construction | Panel Position |
| --- | --- | --- |
| "a logically defined data enclosure that encapsulates any element or digital segment (text, graphic, photograph, audio, video, or other), or set of digital segments." Appx2873; *see also, e.g.*, Appx2904 (defendants' proposed construction) | "a logically defined data enclosure which encapsulates its content." Appx3313. | "EI conceded that 'containers' … are 'conventional and routine' structures . . . . the claims recite those conventional elements at too high a level of generality to constitute an inventive concept." Slip op. at 4. |

The interpretation grows broader from left to right. Applying BRI as the outer boundary of claim scope would prevent such inconsistent determinations from different tribunals. *See, e.g., Cuozzo*, 136 S. Ct. at 2144-45; *see also B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1299 (2015) (suggesting issue preclusion should apply at the district court as a result of decisions by the TTAB). At the very least, it is improper for either the district court or the panel to make "pleadings invalidations" based on an even broader interpretation divorced form the intrinsic record.

## B.   Disputed Issues of Claim Construction May Have Disputed Factual Underpinnings

In the context of a Rule 12 motion to invalidate a patent, once a claim construction dispute has been raised, the court must either deny the motion or construe the disputed claim terms, at least because proper construction may require resolution of underlying factual disputes that have yet to be uncovered. *See Teva Pharm. USA, Inc. v. Sandoz Inc.*, 135 S. Ct. 831, 838, 840-40 (2015) (recognizing that "in patent construction, subsidiary factfinding is sometimes necessary" and applying the "clearly erroneous" standard of review to all such findings). Such underlying factual disputes only may become evident when the parties exchange proposed constructions of disputed terms.

## C.   Comparison of Proposed Constructions May Benefit from Expert Testimony

Finally, expert testimony may provide context and help resolve which proposed claim construction to adopt. *Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016) (affirming district court that acknowledged expert declarations but did not rely upon them).  Patentee's proffer of expert testimony here in response to both the disputed claim constructions and the use of extrinsic analogies such as "libraries," removed this case from the ambit of a "pleadings invalidation," yet the court refused to consider the Patentee's proffer, holding instead that "such a[n expert] declaration is not appropriate for the court to consider on a motion to dismiss or motion for judgment on the pleadings.") (Appx008 n.5).

## III.   When Factual Disputes Exist, the Court Must Apply the Statutory Presumption of Validity Before Invalidating a Patent

On Rule 12 review of a pleadings invalidation, "we assume the facts alleged in the complaint are true and draw all reasonable factual inferences in favor of the non-movant." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1293 (Fed. Cir. 2016); *see also Amgen Inc. v. Sandoz Inc.*, 794 F.3d 1347, 1354 (Fed. Cir. 2015) (same); *Bascom*, 827 F.3d at 1352 (construing claims in favor of patentee "as they must be in this procedural posture" based on standard for Rule 12 motion).

### A.   Once the Court Compares "Age-Old" Processes Incorporated from Outside the Pleadings, It Must Also Consider Patentee's Expert Declaration

Here, the non-movant, patentee teed-up the claim construction dispute for the court:

> The parties have serious disputes regarding claim construction. The Defendants assert that "[t]he 'registers' and 'gateways' in the '536 patent claims are nothing more than the labels, rules and instructions that have been used with containers for generations." (Br. at 17). Plaintiff believes these constructions are overly broad. In fact, the USPTO adopted much narrower constructions during the *inter partes* reviews. It found that a "register" is a "value or code associated with a container," and that a "gateway" is "hardware or software that facilitates the transfer of information between containers, systems, and/or processes." [citation omitted] . . . .[The PTAB constructions] are still far narrower than those proposed by Defendants. Evolutionary's expert has testified that the Defendants' proposed constructions of these terms are overly broad. (Taylor Decl. ¶ 48 [A2828]). In light of these factual disputes, the Court may delay ruling on the present motions until after claim construction. Appx2779 Opposition to Defendants' Motion to Dismiss at Appx2807-08 [Citation omitted].

Once presented, the court was required to resolve the claim construction dispute in the light most favorable to the non-movant, defeating the Rule 12 motion, or allow the Patentee's evidence and consider it as a motion brought under Rule 56.

**B.   A "Pleadings Invalidation" for Failure to Satisfy Section 101 Is Improper Where Conflicting Factual Issues Exist**

Recognizing that validity questions involve both legal questions and underlying factual determinations, the Supreme Court held in *i4i* that a patent is entitled to the statutory presumption of validity found in 35 U.S.C. § 282. *i4i*, 564 U.S. at 95, 96-97. And, based on that distinction, the underlying factual issues must be proven by clear and convincing evidence. *Id.* at 98-99. Nothing about Section 282 implies that the presumption of validity should not also apply to Section 101 determinations. *See Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013); *Arrhythmia Research Tech., Inc. v. Corazonix Corp.*, 958 F.2d 1053, 1055-56 (Fed. Cir. 1992); *see also Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013), *vacated on other grounds by Wildtangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014) ("the analysis under § 101, while ultimately a legal determination, is rife with underlying factual issues").

When ruling on invalidity, especially at the pleadings stage, the possibility of such underlying facts cannot be ignored. *Amdocs*, 841 F.3d at 1293; *Bascom*, 827 F.3d at 1352. Otherwise, patentees risk losing their rights without a defense. And, once identified, disputed facts require the court to apply the presumption of validity. At

13

that point, viewing the facts in the light most favorable to the non-movant requires denial of the Rule 12 motion.

### IV. Patentee's Due Process Rights Prohibit a "Pleadings Invalidation" in the Face of Disputed Claim Terms, Factual Issues, and the Presumption of Validity

Failing to recognize disputed claim terms, refusing to consider undisputed BRI, refusing to consider expert testimony proffered to rebut extrinsic to the pleadings comparisons, all caused the courts to deny Patentee's fundamental due process right to present evidence and to fully and fairly litigate the validity of its patents, which are presumed valid.

It is well-settled that a patent is a property right protected by the Due Process Clause and any deprivation thereof requires notice and an opportunity to be heard. *Fla. Prepaid Postsec. Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 642 (1999). A due process violation of patent rights arises when court procedure risks erroneously depriving a patentee of its rights (such as was done here), and the risk outweighs the added costs associated with a substitute procedure (such as construing the patent claims and resolving factual disputes in favor of the non-movant). *Katz Interactive Call Processing Patent Litig. v. Am. Airlines, Inc.*, 639 F.3d 1303, 1309-1311 (Fed. Cir. 2011).

Here, for all the reasons discussed *supra*, the court was required to adopt Patentee's claim construction (and consequently deny the Rule 12 motion), so that Patentee would have the opportunity to resolve the disputed issues of claim

construction and fact in subsequent proceedings. *Amdocs,* 841 F.3d at 1293; *Bascom,* 827 F.3d at 1352. By denying Patentee that opportunity, the court invalidated the patents without due process. *See, e.g., Tex. Instruments, Inc. v. Linear Techs. Corp.,* 182 F. Supp. 2d 580, 589-90 (E.D. Tex. 2002) (holding that due process requires both parties' participation in claim construction prior to adjudication of patent rights).

The panel's adoption of the district court's superficial analysis without considering the parties' disputes cemented the due process violation by confirming the known risk—patent invalidity—that greatly outweighed the negligible "cost" of either denial of the Rule 12 motion or performing a claim construction analysis. *See Doyle v. Camelot Care Centers, Inc,* 305 F.3d 603, 318 (7th Cir. 2002) ("[the due process] right is flexible, requiring different procedural protections depending upon the situation at hand."). The panel's actions here caused precisely the injustice due process seeks to avoid. *See, e.g., Tex. Instruments,* 182 F. Supp. 2d at 589-90.

District courts' predilection to invalidate patents based on external analogies and without claim construction improperly ignores the potential for legitimate claim construction disputes and other factual disputes that have not yet surfaced due to the superficial nature of the pleadings. Evolutionary Intelligence asks the Court to provide such guidance.

## CONCLUSION

The petition should be granted.

15

Respectfully Submitted,

/s/ Meredith Martin Addy

Meredith Martin Addy
Daniel I Konieczny
Tabet DiVito & Rothstein LLC
209 S. LaSalle Street, Suite 700
Chicago, Illinois 60604
312.762.9450
maddy@tdrlawfirm.com

*Attorneys for Plaintiff-Appellant*
*Evolutionary Intelligence, LLC*

# Addendum

NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

———————————

**EVOLUTIONARY INTELLIGENCE LLC,**
*Plaintiff-Appellant*

**v.**

**SPRINT NEXTEL CORPORATION, SPRINT
COMMUNICATIONS COMPANY, L.P., SPRINT
SPECTRUM L.P., SPRINT SOLUTIONS, INC.,
APPLE INC., FACEBOOK INC., FOURSQUARE
LABS, INC., GROUPON, INC., LIVINGSOCIAL,
INC., MILLENNIAL MEDIA, INC., TWITTER, INC.,
YELP, INC.,**
*Defendants-Appellees*

———————————

2016-1188, 2016-1190, 2016-1191, 2016-1192, 2016-1194,
2016-1195, 2016-1197, 2016-1198, 2016-1199

———————————

Appeals from the United States District Court for the
Northern District of California in Nos. 5:13-cv-03587-
RMW, 5:13-cv-04201-RMW, 5:13-cv-04202-RMW, 5:13-cv-
04203-RMW, 5:13-cv-04204-RMW, 5:13-cv-04205-RMW,
5:13-cv-04206-RMW, 5:13-cv-04207-RMW, 5:13-cv-04513-
RMW, Senior Judge Ronald M. Whyte.

———————————

Decided: February 17, 2017

———————————

2    EVOLUTIONARY INTELLIGENCE, LLC v. SPRINT NEXTEL CORP.

TODD KENNEDY, Gutride Safier LLP, San Francisco, CA, argued for plaintiff-appellant.

HEIDI LYN KEEFE, Cooley LLP, Palo Alto, CA, argued for all defendants-appellees. Defendant-appellee Facebook Inc. also represented by REUBEN HO-YEN CHEN, MARK R. WEINSTEIN.

JAY E. HEIDRICK, Polsinelli PC, Kansas City, MO, for defendants-appellees Sprint Nextel Corporation, Sprint Communications Company, L.P., Sprint Spectrum L.P., Sprint Solutions, Inc. Also represented by KAREN ZELLE MORRIS, St. Louis, MO.

PATRICK E. KING, Simpson Thacher & Bartlett, LLP, Palo Alto, CA, for defendant-appellee Apple Inc. Also represented by ELIZABETH HEATHER WHITE; JEFFREY E. DANLEY, SEED Intellectual Property Law Group, PLLC, Seattle, WA.

CRAIG ROBERT SMITH, Lando & Anastasi, LLP, Cambridge, MA, for defendant-appellee Foursquare Labs, Inc. Also represented by ERIC P. CARNEVALE.

THOMAS LEE DUSTON, Marshall, Gerstein & Borun LLP, Chicago, IL, for defendants-appellees Groupon, Inc., LivingSocial, Inc. Also represented by TRON Y. FU.

CHRISTOPHER C. CAMPBELL, Cooley LLP, Reston, VA, for defendant-appellee Millennial Media, Inc. Also represented by NATHAN K. CUMMINGS.

STEVEN MOORE, Kilpatrick Townsend & Stockton LLP, San Francisco, CA, for defendants-appellees Twitter, Inc., Yelp, Inc.

_____

Before LOURIE, MOORE, and TARANTO, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Evolutionary Intelligence, LLC ("EI") appeals from the decision of the United States District Court for the Northern District of California, concluding that all claims of U.S. Patents 7,010,536 ("the '536 patent") and 7,702,682 ("the '682 patent") (collectively, "the asserted patents") are invalid under 35 U.S.C. § 101. *See Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, 137 F. Supp. 3d 1157 (N.D. Cal. 2015) ("*Decision*").

EI owns the asserted patents, which have the same written description and are directed to systems and methods for allowing computers to process data that are dynamically modified based upon external-to-the-device information, such as location and time. *See, e.g.*, '536 patent Abstract.

EI sued Sprint Nextel Corporation and the other Appellees (collectively, "Sprint") for infringement of the asserted patents. The district court granted Sprint's motion to dismiss EI's complaint and for judgment on the pleadings, concluding that all claims of the asserted patents are invalid under § 101 as being directed to the abstract idea of "searching and processing containerized data." The court held that the invention merely computerizes "age-old forms of information processing," such as those used in "libraries, businesses, and other human enterprises with folders, books, time-cards, ledgers, and so on." *Decision*, 137 F. Supp. 3d at 1165.

EI timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1). On appeal, EI argues that the claims are patent eligible because: (1) they are not directed to an abstract idea, but rather to an improvement in the functioning of the computer itself; and (2) even if they were directed to an abstract idea, they are patent eligible as containing an inventive concept because they recite a specific arrangement of particular structures, operating in a specific way.

We disagree on both accounts.  First, the claims at issue here are directed to an abstract idea.  We have held that "tailoring of content based on information about the user—such as where the user lives or what time of day the user views the content—is an abstract idea."  *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016) (describing *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015)); *see Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) ("collecting information, including when limited to particular content," is "within the realm of abstract ideas").  The claims are unlike those in *Enfish, LLC v. Microsoft Corp.*, where "the plain focus of the claims" was on "an improvement to the computer functionality itself," 822 F.3d 1327, 1336 (Fed. Cir. 2016), *i.e.*, "a specific improvement—a particular database technique—in how computers could carry out one of their basic functions of storage and retrieval of data," regardless of subject matter or the use to which that functionality might be put, *Elec. Power*, 830 F.3d at 1354 (describing *Enfish*).  Here, the claims are directed to selecting and sorting information by user interest or subject matter, a longstanding activity of libraries and other human enterprises.

Second, the claims lack an inventive concept to transform the abstract idea into a patent-eligible invention.  EI does not dispute that merely using a computer is not enough.  Moreover, EI conceded that "containers," "registers," and "gateways" are "conventional and routine" structures.  *See Decision*, 137 F. Supp. 3d at 1167.  Whether analyzed individually or as an ordered combination, the claims recite those conventional elements at too high a level of generality to constitute an inventive concept.  *See, e.g., BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350, 1352 (Fed. Cir. 2016) (finding claims patent eligible where they "recite a specific, discrete implementation of the abstract idea," in

EVOLUTIONARY INTELLIGENCE, LLC v. SPRINT NEXTEL CORP.      5

contrast to implementing the abstract idea "on generic computer components, without providing a specific technical solution beyond simply using generic computer concepts in a conventional way").

We have considered EI's remaining arguments, but find them to be unpersuasive.  For the foregoing reasons, we affirm the judgment of the district court.

## AFFIRMED

## **CERTIFICATE OF SERVICE**

I certify that today, April 19, 2017, I electronically filed the foregoing APPELLANT'S COMBINED PETITION FOR REHEARING AND REHEARING EN BANC with the Clerk of the Court for the U.S. Court of Appeals for the Federal Circuit using the appellate CM/ECF system. Counsel of record for all parties will be served by the appellate CM/ECF system.

Dated: April 19, 2017                    By:  __/s/ Meredith Martin Addy_____